# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RYAN MERHOLZ, and MELVYN KLEIN, Derivatively On Behalf Of WORLD WRESTLING ENTERTAINMENT, INC., <br><br>               Plaintiffs, <br><br>         v. <br><br> VINCENT K. MCMAHON, STEPHANIE MCMAHON, PAUL LEVESQUE, FRANK A. RIDDICK, III, STUART U. GOLDFARB, LAUREEN ONG, ROBYN W. PETERSON, MAN JIT SINGH, JEFFREY R. SPEED, ALAN M. WEXLER, GEORGE A. BARRIOS, and MICHELLE D. WILSON, <br><br>               Defendants, <br><br> WORLD WRESTLING ENTERTAINMENT, INC., <br><br>               Nominal Defendant. | Case No.: 3:20-cv-00557-VAB |
| DANIEL KOOI, derivatively on behalf of WORLD WRESTLING ENTERTAINMENT, INC., <br><br>               Plaintiff, <br><br>         v. <br><br> VINCENT K. MCMAHON, FRANK A. RIDDICK, III, JEFFREY R. SPEED, PATRICIA A. GOTTESMAN, STUART U. GOLDFARB, LAUREEN ONG, PAUL LEVESQUE, ROBYN W. PETERSON, STEPHANIE MCMAHON, MAN JIT SINGH, ALAN M. WEXLER, GEORGE A. BARRIOS, and MICHELLE D. WILSON, <br><br>               Defendants, <br><br> WORLD WRESTLING ENTERTAINMENT, INC., <br><br>               Nominal Defendant. | Case No.: 3:20-CV-00743-VAB |

RODNEY NORDSTROM, derivatively on behalf of
WORLD WRESTLING ENTERTAINMENT,
INC.,

                        Plaintiff,

            v.

VINCENT K. MCMAHON, GEORGE A.
BARRIOS, MICHELLE D. WILSON,
STEPHANIE MCMAHON, PAUL LEVESQUE,
FRANK A. RIDDICK III, STUART U.
GOLDFARB, LAUREEN ONG, ROBYN W.
PETERSON, MAN JIT SINGH, JEFFREY R.
SPEED, ALAN M. WEXLER, and PATRICIA A.
GOTTESMAN,

                        Defendants,

WORLD WRESTLING ENTERTAINMENT,
INC.,

                        Nominal Defendant.

Case No.: 3:20-CV-00904-VAB

**ORAL ARGUMENT REQUESTED**

August 28, 2020

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SHAREHOLDER DERIVATIVE COMPLAINTS**

# TABLE OF CONTENTS

**Page**

Table of Authorities ..................................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF RELEVANT FACTS ......................................................................... 4

ARGUMENT .................................................................................................................... 7

I.      PLAINTIFFS HAVE FAILED TO DEMONSTRATE DEMAND FUTILITY ............... 8

      A.      Demand Futility Imposes a Stringent Pleading Standard ...................................... 8

      B.      Plaintiffs Do Not Adequately Plead That Any of WWE's Six Outside Directors Are Interested or Lack Independence from an Interested Person ......... 10

      C.      Plaintiffs Do Not Adequately Plead That Any of the Six Outside Directors Face a Substantial Threat of Personal Liability .................................................... 11

            1.      Breach of Fiduciary Duty ......................................................................... 12

            2.      Waste of Corporate Assets ....................................................................... 17

            3.      Unjust Enrichment ................................................................................... 19

            4.      Section 10(b) of the Exchange Act .......................................................... 20

            5.      Service on the WWE Audit Committee ..................................................... 23

II.      PLAINTIFFS' FAILURE TO PLEAD THEY SATISFY THE CONTEMPORANEOUS AND CONTINUOUS STOCK OWNERSHIP REQUIREMENTS PROVIDES AN ALTERNATIVE, INDEPENDENT BASIS FOR DISMISSAL .......................................................................................................... 24

III.      ALTERNATIVELY, THE COMPLAINTS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RELIEF ............................................................ 26

      A.      The Complaints Fail to State a Claim for Breach of Fiduciary Duty ................... 27

            1.      False Statements ....................................................................................... 28

            2.      Oversight Duties ....................................................................................... 29

      B.      The Complaints Fail to State a Claim for Waste of Corporate Assets .................. 30

      C.      The Complaints Fail to State a Claim for Unjust Enrichment .............................. 32

      D.      The Kooi Complaint Fails to State a Claim for Insider Selling ............................ 33

      E.      The Merholz Complaint Fails to State a Claim for Violations of Sections 10(b) and 20(a) of the Exchange Act ..................................................... 35

            1.      The Outside Directors ............................................................................... 37

            2.      Defendants Sued In Their Capacity As Officers ....................................... 37

                 (a)      S. McMahon, Levesque, and Riddick Did Not "Make" the Challenged Statements ................................................................38

                 (b)      The Challenged Statements Were Not False or Misleading. .........38

i

**TABLE OF CONTENTS**
**(Continued)**

**Page**

(c)     The PSLRA's Safe Harbor Applies to the Challenged
        Statements ........................................................................40

(d)     The Complaint Does Not Plead Scienter with Particularity ..........42

(e)     The Complaint Does Not Plead Reliance with Particularity ........45

(f)     The Complaint Does Not Plead Loss Causation with
        Particularity....................................................................46

3.    The Complaint Fails to State a Claim for a Violation of
      Section 20(a) of the Exchange Act ........................................... 48

CONCLUSION.................................................................................... 49

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.R. Demarco Enters. v. Ocean Spray Cranberries,*
No. Civ. A. 19133–NC, 2002 WL 31820970 (Del. Ch. Dec. 4, 2002)...................................10

*Acito v. IMCERA Grp., Inc.,*
47 F.3d 47 (2d Cir. 1995) ........................................................................................39, 43, 44

*In re Am. Int'l Grp., Inc. Deriv. Litig.,*
700 F. Supp. 2d 419 (S.D.N.Y. 2010)...........................................................................8, 19, 31

*Aronson v. Lewis,*
473 A.2d 805 (Del. 1984) ...................................................................................................8, 11

*Ash v. McCall,*
No. CIV.A. 17132, 2000 WL 1370341 (Del. Ch. Sept. 15, 2000) .........................................25

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)................................................................................................................26

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007)................................................................................20, 26, 36, 49

*In re Bausch & Lomb, Inc. Sec. Litig.,*
592 F. Supp. 2d 323 (S.D.N.Y. 2008)...................................................................................43

*In re Baxter Int'l, Inc. S'holders Litig.,*
654 A.2d 1268 (Del. Ch. 1995)................................................................................................5

*Beam v. Stewart,*
845 A.2d 1040 (Del. 2004) ...................................................................................................10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)................................................................................................................26

*Boeing Co. v. Shrontz,*
Civ. A. No. 11273, 1992 WL 81228 (Del. Ch. Apr. 20, 1992) .......................................18, 32

*Brehm v. Eisner,*
746 A.2d 244 (Del. 2000) ...............................................................................................17, 19

*In re Bridgeport Hldgs., Inc.,*
388 B.R. 548 (D. Del. 2008)..................................................................................................30

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*Brophy v. Cities Service Co.*,
    70 A.2d 5 (Del Ch. 1949)..................................................................................33, 34

*Calma on Behalf of Citrix Sys., Inc.* v. *Templeton*,
    114 A.3d 563 (Del. Ch. 2015).................................................................................32

*In re Caremark Int'l Inc. Deriv. Litig.*,
    698 A.2d 959 (Del. Ch. 1996)................................................................................15

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
    750 F.3d 227 (2d Cir. 2014)...................................................................................46

*Cellucci v. O'Leary*,
    No. 19-CV-2752 (VEC), 2020 WL 977986 (S.D.N.Y. Feb. 28, 2020)...................24

*In re Citigroup, Inc. S'holder Deriv. Litig.*,
    964 A.2d 106 (Del. Ch. 2009)........................................................................ passim

*City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v.*
*Ryanair Holdings plc*,
    No. 18-cv-10330, 2020 WL 2834857 (S.D.N.Y. June 1, 2020) ............................44

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Entertainment, Inc.*,
    20-cv-2031, 2020 WL 4547217 (S.D.N.Y. Aug. 6, 2020) ....................................40

*Clark v. Davenport*,
    C.A. No. 2017-0839, 2019 WL 3230928 (Del. Ch. July 18, 2019).......................14

*In re Clovis Oncology, Inc. Derivative Litig.*,
    No. CV 2017-0222-JRS, 2019 WL 4850188 (Del. Ch. Oct. 1, 2019)...................35

*Collins & Aikman Corp. v. Stockman*,
    Civ. No. 07-265, 2009 WL 1530120 (D. Del. May 20, 2009 .................................30

*Constr. Laborers Pension Tr. for S. California v. CBS Corp.*,
    433 F. Supp. 3d 515 (S.D.N.Y. Jan. 15, 2020) .....................................................40

*In re Delcath Sys., Inc. Sec. Litig.*,
    36 F. Supp. 3d 320 (S.D.N.Y. 2014)......................................................................42

*Desimone v. Barrows*,
    924 A.2d 908 (Del. Ch. 2007)................................................................................15

*Duncan v. Pencer*,
    No. 94 Civ. 0321, 1996 WL 19043 (S.D.N.Y. 1996) ............................................23

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*ECA v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)....................................................................42

*In re Express Scripts Holdings Co. Sec. Litig.*,
    773 F. App'x 9 (2d Cir. 2019) ................................................................22

*In re Facebook Inc. Initial Pub. Offering Derivative Litig.*,
    797 F.3d 148 (2d Cir. 2015)................................................................2, 24

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
    922 F. Supp. 2d 445 (S.D.N.Y. 2013).......................................................8

*S.E.C. v. First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996)..................................................................49

*In re Forest Labs., Inc. Deriv. Litig.*,
    450 F. Supp. 2d 379 (S.D.N.Y. 2006)......................................................34

*Frank v. Elgamal*,
    C.A. No. 6120, 2014 WL 957550 (Del. Ch. Mar. 10, 2014) ...................19

*Freedman v. Value Health, Inc.*,
    Nos. 3:95-cv-2038 JCH, 3:97-cv-2711, 2000 WL 630916 (D. Conn. Mar. 24,
    2000) ...................................................................................................22, 40

*Kandell ex rel. FXCM, Inc. v. Niv*,
    C.A. No. 11812, 2017 WL 4334149 (Del. Ch. Sept. 29, 2017)........18, 31

*Gearren v. The McGraw-Hill Companies, Inc.*,
    660 F.3d 605 (2d Cir. 2011)....................................................................28

*In re Gildan Activewear, Inc. Sec. Litig.*,
    636 F. Supp. 2d 261 (S.D.N.Y. 2009).................................................43, 44

*Glaser v. The9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011).................................................43, 44

*Guttman v. Huang*,
    823 A.2d 492 (Del. Ch. 2003)...........................................................12, 15, 16

*Horman v. Abney*,
    C.A. No. 12290, 2017 WL 242571 (Jan. 19, 2017)................................16

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*In re IAC/InterActiveCorp. Sec. Litig.*,
   478 F. Supp. 2d 574 (S.D.N.Y. 2007).....................................................................16

*Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*,
   620 F.3d 137 (2d Cir. 2010)..................................................................................41

*Janus Capital Grp., Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011)........................................................................................21, 37

*Johnson v. Nextel Commc'ns, Inc.*,
   660 F.3d 131 (2d Cir. 2011)..................................................................................34

*Johnson v. NYFIX, Inc.*,
   399 F. Supp. 2d 105 (D. Conn. 2005)..............................................................22, 43

*In re JPMorgan Chase & Co. Sec. Litig.*,
   No. 12 Civ. 03852, 2014 WL 1297446 (S.D.N.Y. Mar. 31, 2014) .......................38

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)..................................................................................42

*Kaplan v. Bennett*,
   465 F. Supp. 555 (S.D.N.Y. 1979).........................................................................45

*Keystone Assocs. LLC v. Benjamin Fulton*,
   C.A. No. 18-1235, 2020 WL 3432601 (D. Del. June 23, 2020)............................22

*Koplyay v. Cirrus Logic, Inc.*,
   No. 13 Civ. 790, 2013 WL 6233908 (S.D.N.Y. Dec. 2, 2013)...............................44

*Lattanzio v. Deloitte & Touche LLP*,
   476 F.3d 147 (2d Cir. 2007)..................................................................................48

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005)......................................................................45, 46, 47

*Lewis v. Anderson*,
   477 A.2d 1040 (Del. 1984) ..............................................................................24, 25

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014)................................................................21, 35, 44

*Maldonado v. Flynn*,
   597 F.2d 789 (2d Cir. 1979)..................................................................................45

**TABLE OF AUTHORITIES**
**(Continued)**

<u>Page(s)</u>

*Malone v. Brincat,*
    722 A.2d 5 (Del. 1998) ...............................................................................13, 28, 29

*McCrae Assocs., LLC v. Universal Capital Mgmt., Inc.,*
    746 F. Supp. 2d 389 (D. Conn. 2010).......................................................................18

*McElrath v. Kalanick,*
    224 A.3d 982 (Del. 2020) ...........................................................................................9

*In re Merrill Lynch Investment Management Funds Sec. Litig.,*
    434 F. Supp. 2d 233 (S.D.N.Y. 2006).......................................................................11

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.,*
    854 A.2d 121 (Del. Ch. 2004)..............................................................................14, 28

*Morello v. McGee,*
    23 F. Supp. 3d 86 (D. Conn. 2014)...........................................................................15

*Nemec v. Shrader,*
    991 A.2d 1120 (Del. 2010) ..................................................................................20, 33

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000).......................................................................................22

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund,*
    575 U.S. 175 (2015)...................................................................................................40

*Wilkin ex rel. Orexigen Therapeutics, Inc. v. Narachi,*
    C.A. No. 12412, 2018 WL 1100372 (Del. Ch. Feb. 28, 2018)..................................13

*In re Pfizer Inc. S'holder Derivative Litig.,*
    722 F. Supp. 2d 453 (S.D.N.Y. 2010)...................................................................20, 33

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Lundgren,*
    579 F. Supp. 2d 520 (S.D.N.Y. 2008)...................................................................11, 23

*Porwal v. Ballard Power Sys., Inc.,*
    No. 18 Civ. 1137, 2019 WL 1510707 (S.D.N.Y. Mar. 21, 2019) .............................40

*Rahbari v. Oros,*
    732 F. Supp. 2d 367 (S.D.N.Y. 2010)........................................................................13

*Rales v. Blasband,*
    634 A.2d 927 (Del. 1993) .............................................................................................9

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Rombach v. Chang,*
355 F.3d 164 (2d Cir. 2004)........................................................................ passim

*S. Cherry St., LLC v. Hennessee Grp. LLC,*
573 F.3d 98 (2d Cir. 2009)................................................................................42

*In re Sanofi Securities Litigation,*
87 F. Supp. 3d 98 (2d Cir. 2009) .....................................................................41

*Scalisi v. Fund Asset Mgmt., L.P.,*
380 F.3d 133 (2d Cir. 2004).................................................................................8

*Seminaris v. Landa,*
662 A.2d 1350 (Del. Ch. May 2, 1995) .............................................................13

*Slayton v. Am. Exp. Co.,*
604 F.3d 758 (2d Cir. 2010).................................................................36, 41, 42

*Smith v. Stevens,*
957 F. Supp. 2d 466 (S.D.N.Y. 2013)...............................................................25

*Staehr v. Mack,*
No. 07 Civ. 10368, 2011 WL 1330856 (S.D.N.Y. Mar. 31, 2011) ...................19, 32

*Steinberg v. Dimon,*
No. 14 Civ. 688, 2014 WL 3512848 (S.D.N.Y. July 16, 2014) ..........................33

*Stern v. General Elec. Co.,*
924 F.2d 472 (2d Cir. 1991).........................................................................26, 30

*Stone v. Ritter,*
911 A.2d 362 (Del. 2006) .............................................................11, 15, 29, 30

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta,*
552 U.S. 148 (2008)..................................................................................20, 36

*In re Synchrony Fin. Sec. Litig.,*
No. 3:18-cv-1818, 2020 WL 1531297 (D. Conn. Mar. 31, 2020) ..............22, 39, 42

*In re Take-Two Interactive Sec. Litig.,*
551 F. Supp. 2d 247 (S.D.N.Y. 2008)...............................................................47

*In re The Limited, Inc. S'holders Litig.,*
No. Civ. A. 17148, 2002 WL 537692 (Del. Ch. Mar. 27, 2002) ........................9

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Taylor v. Kissner*,
   893 F. Supp. 2d 659 (D. Del. 2012) ...................................................................11

*Tellabs v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ...........................................................................................44

*In re Textron, Inc. S'holder Deriv. Litig.*,
   811 F. Supp. 2d 564 (D.R.I. 2011) .....................................................................18

*Tilden v. Cunningham*,
   C.A. No. 2017-0837, 2018 WL 5307706 (Del. Ch. Oct. 26, 2018) .................34, 35

*TVI Corp. v. Gallagher*,
   C.A. No. 7798, 2013 WL 5809271 (Del. Ch. Oct. 28, 2013) ..............................16

*In re UBS AG Sec. Litig.*,
   No. 07 Civ. 11225, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) .....................38

*In re Walt Disney Co. Deriv. Litig.*,
   906 A.2d 27 (Del. 2006) .............................................................................26, 29, 31

*In Re Walt Disney Co. Deriv. Litig.*,
   731 A.2d 342 (Del. Ch. 1998) ............................................................................17

*Wanamaker v. Westport Bd. of Educ.*,
   899 F. Supp. 2d 193 (D. Conn. 2012) ................................................................27

*White v. Panic*,
   783 A.2d 543 (Del. 2001) ..........................................................................8, 17, 30

*Wood v. Baum*,
   953 A.2d 136 (Del. 2008) ...................................................................................23

*Zucker v. Andreessen*,
   C.A. No. 6014, 2012 WL 2366448 (Del. Ch. June 21, 2012) .............................5

**STATUTES**

8 *Del. C.* § 141(a) ...................................................................................................30

8 *Del. C.* § 102(b)(7) ........................................................................................ passim

8 *Del. C.* § 327 ......................................................................................................24

15 U.S.C. § 78j(b) .............................................................................................. passim

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

15 U.S.C. § 78t(a) ................................................................................................ passim

Private Securities Litigation Reform Act ("PSLRA"),
   15 U.S.C. § 78u–4(b) *et seq*. ..................................................................... passim

## OTHER AUTHORITIES

17 C.F.R. § 240.10b-5 ........................................................................................ passim

Fed. R. Civ. P. 9(b) ............................................................................................ passim

Fed. R. Civ. P. 12(b)(6) ...................................................................................... passim

Fed. R. Civ. P. 23.1 ............................................................................................ passim

Nominal Defendant World Wrestling Entertainment, Inc. ("WWE" or the "Company") and defendants Vincent K. McMahon, George A. Barrios, Michelle D. Wilson, Stephanie McMahon, Paul Levesque, Frank A. Riddick III, Stuart U. Goldfarb, Laureen Ong, Robyn W. Peterson, Man Jit Singh, Jeffrey R. Speed, Alan M. Wexler, and Patricia A. Gottesman, respectfully submit this opening brief in support of their Motion to Dismiss the Verified Second Amended Stockholder Derivative Complaint in *Merholz et al. v. McMahon et al.*, 20-cv-557 (D. Conn. Aug. 13, 2020), ECF No. 43 ("Merholz Compl."),  the Verified Amended Shareholder Derivative Complaint in *Kooi v. McMahon et al.*, 20-cv-743 (D. Conn. July 3, 2020), ECF No. 36 ("Kooi Compl."), and the Verified Amended Shareholder Derivative Complaint in *Nordstrom v. McMahon et al.*, 20-cv-904 (D. Conn. Aug. 14, 2020), ECF No. 45 ("Nordstrom Compl.") (collectively, "the Complaints") under (i) Federal Rule of Civil Procedure 23.1 and Delaware substantive law, for failure to make a pre-suit demand on WWE's Board of Directors ("Board") or adequately plead that demand should be excused as futile; (ii) Federal Rule of Civil Procedure 23.1 and Delaware substantive law, for failure to plead, with particularity, Plaintiffs owned WWE stock continuously from the date of the conduct that is the subject of the Complaints and throughout the litigation; and, in the alternative, (iii) Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b), for failure to state a claim.

## PRELIMINARY STATEMENT

Four WWE shareholders bring these overlapping stockholder derivative lawsuits to challenge WWE's disclosures about media rights in the Middle East.  Plaintiffs purport to act on behalf of WWE itself, seeking to stand in the shoes of the Company and sue its current and former Directors and Officers, but they are not entitled to do so.  Under well-settled law, the

decision to press these claims belongs to WWE's Board, not to its shareholders.  Shareholders who believe a corporation should undertake litigation must either make a demand on the board to pursue those claims or establish that any demand would have been futile.  Here, Plaintiffs have chosen the latter course.  They must therefore allege with particularity facts sufficient to show at least half of WWE's 10 Directors were incapable of exercising their disinterested and independent business judgment on Plaintiffs' lawsuits.  Plaintiffs have failed to satisfy this standard and should not be allowed to divest the Board of its control over WWE's legal claims.  Because Plaintiffs' standing to bring this lawsuit is a threshold issue, this Court may dismiss the Complaints for failure to establish demand futility before addressing the pending remand and Rule 12(b)(6) motions.  *See, e.g.*, Order, *Nordstrom v. McMahon et al.*, No. 20-cv-904, at 2 (D. Conn. Aug. 1, 2020), ECF No. 40; *In re Facebook Inc. Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 155 (2d Cir. 2015).

Specifically, Plaintiffs contend that a majority of WWE's Directors are disabled from considering a demand because they face a substantial threat of personal liability from the claims asserted here.  But none of the Complaints support such a conclusion; they do not even come close.  While the law requires facts pled with particularity, all three Complaints offer only cursory and conclusory allegations, repeatedly in the form of impermissible group pleading.  Thus, Plaintiffs claim a majority of Directors breached their fiduciary duties, but they fail to allege facts showing that the Directors knowingly disseminated false information, deliberately misled shareholders, or consciously failed to monitor the Company's affairs, as the law requires.  Instead, all Plaintiffs offer are vague, conclusory allegations that the Directors were responsible for "approv[ing] and/or permitt[ing]" the allegedly false and misleading statements.  (Merholz Compl. ¶ 214; Kooi Compl. ¶ 87; Nordstrom Compl. ¶ 130.)  Those allegations fall well short of

the strict standard applicable here.

Plaintiffs' demand futility allegations for their other claims are equally deficient. While Plaintiffs' waste claims require specific factual allegations of irrationally squandering corporate assets, Plaintiffs offer only generalities about undeserved director compensation, loss of investor confidence, and the potential cost of defending against Plaintiffs' own legal claims. Plaintiffs' unjust enrichment claims are likewise premised on loose allegations about Director compensation that have been rejected time and again by courts as legally insufficient. The claims Plaintiffs bring under the federal securities laws require well-pleaded allegations of scienter supported by specific facts, but Plaintiffs make only bare assertions that Defendants "had to have known" that the challenged statements were false. Each claim Plaintiffs assert requires specificity and particularity, but all they put forward are generalities and legal conclusions recast as factual allegations. Plaintiffs have fallen woefully short of providing the detail necessary to support their assertion that a majority of WWE Directors face a substantial threat of liability. Accordingly, they have no right to divest the Board of its discretion over these legal claims, and the Complaints should be dismissed.

Plaintiffs also fail to plead, with particularity, that they owned WWE stock continuously from the date of the conduct that is the subject of the Complaints through the filing of the Complaints. And, when Defendants asked Plaintiffs to fix this defect, so the parties would not unnecessarily burden the Court with the issue, they refused.

Alternatively, the Complaints should be dismissed under Rule 12(b)(6) for failure to state a claim. Plaintiffs have failed to state a claim for breach of fiduciary duty, unjust enrichment, or waste for the same reason none of those claims present a substantial threat of liability: they are not supported by adequate factual allegations. Plaintiffs' claims of improper

3

stock sales are equally infirm because they are not supported by concrete factual allegations supporting an inference of impropriety.  Finally, Plaintiffs have failed to state claims under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") because their factual allegations do not support the elements of falsity, scienter, reliance, and loss causation.

Whether for failure to make the threshold showing of demand futility, for failure to satisfy the contemporaneous stockholder rule, or for failure to state a claim upon which relief can be granted, all three Complaints should be dismissed.

## <u>STATEMENT OF RELEVANT FACTS</u>

### A.    The Parties and the Relevant Non-Parties

The plaintiffs are Rodney Nordstrom, Ryan Merholz, Melvyn Klein, and Daniel Kooi.  Each claims, in general and conclusory terms, to have been a WWE shareholder at the time of the matters alleged in the Complaints and when they filed their Complaints.[1]  (Merholz Compl. ¶¶ 4-5; Kooi Compl. ¶ 15; Nordstrom Compl. ¶ 10.)

Nominal defendant WWE is an integrated media and entertainment company incorporated in Delaware and headquartered in Connecticut.  When the Complaints were filed, WWE had 10 Directors, all of whom are named as defendants here.  Four Directors, Defendants Vincent K. McMahon ("V. McMahon"), Stephanie McMahon ("S. McMahon"), Paul Levesque, and Frank A. Riddick III also are or were officers of the Company.  (Merholz Compl. ¶¶ 8-11; Kooi Compl. ¶¶ 17, 18, 23, 25; Nordstrom Compl. ¶¶ 13, 24, 27, 30.)  The remaining six Directors, Defendants Stuart U. Goldfarb, Laureen Ong, Robyn W. Peterson, Man Jit Singh,

---

[1]    Merholz and Klein state only that they are current shareholders and intend to retain ownership of their shares.  *See* discussion *infra* at Part II.

Jeffrey R. Speed, and Alan M. Wexler (the "Outside Directors"), are not employed by WWE. (Merholz Compl. ¶¶ 12-17; Kooi Compl. ¶¶ 19, 20-22, 24, 26, 27; Nordstrom Compl. ¶¶ 39, 42, 45, 48, 51.)  Defendants George A. Barrios and Michelle A. Wilson were Co-Presidents of WWE and members of the Board, who left WWE and ceased serving on the Board in January 2020, before any of the Complaints were filed.  (Merholz Compl. ¶¶ 19-20; Kooi Compl. ¶¶ 28-29; Nordstrom Compl. ¶¶ 16, 20.)  Defendant Patricia A. Gottesman retired from the Board on April 16, 2020, before any of the Complaints were filed.  (Kooi Compl. ¶ 20; Nordstrom Compl. ¶ 51; *see also* Anderson Decl. Ex. 1. [2])

Significantly, WWE's certificate of incorporation provides that all Directors are exculpated from personal liability to the Company for money damages "to the fullest extent" permitted under Delaware's General Corporation Law.[3]  *See* Anderson Decl. Ex. 2 at art. IX(A). As relevant here, WWE's Directors therefore face personal liability only for:  (i) breaches of the fiduciary duty of loyalty; (ii) acts or omissions not in good faith or involving intentional misconduct or a knowing violation of law; or (iii) transactions in which they derived an improper personal benefit.  *See* 8 *Del.C.* § 102(b)(7).

B.   **WWE's Business Dealings in the MENA Region**

These lawsuits all principally concern statements WWE made regarding the status of its media rights distribution agreements in the Middle East and North Africa ("MENA"). According to the Complaints, Orbit Showcase Network ("OSN"), a Kuwaiti-controlled direct-broadcast satellite provider serving the MENA region, announced in July 2014 that it had entered

---

[2]   Citations to "Anderson Decl." refer to the Declaration of Justin Anderson in Support of the Memorandum of Law in Support of Defendants' Motion to Dismiss Shareholder Derivative Complaints, filed herewith.

[3]   Courts have long recognized that it is appropriate to take judicial notice of a company's certificate of incorporation in connection with a motion to dismiss. *See Zucker v. Andreessen*, C.A. No. 6014, 2012 WL 2366448, at *1 n.1 (Del. Ch. June 21, 2012); *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995).

into a five-year media agreement with WWE, under which OSN had exclusive subscription TV broadcasting rights for WWE content in the MENA region.[4]  (Merholz Compl. ¶ 39; Kooi Compl. ¶ 42; Nordstrom Compl. ¶¶ 80-82.)  In November 2018, OSN informed WWE it intended to terminate the agreement early because it was closing its sports channels.  (Merholz Compl. ¶ 80; Kooi Compl. ¶ 52; Nordstrom Compl. ¶ 91.)  Following negotiations between WWE and OSN, the parties agreed in December 2018 to terminate their relationship as of March 31, 2019.  OSN agreed to make all payments owed under its agreement with WWE through the termination date.  (*See* Merholz Compl. ¶ 81; *Cf.* Kooi Compl. ¶ 53; Nordstrom Compl. ¶ 91.)

In 2018, WWE began working on a new MENA media rights distribution deal with the Saudi General Sports Authority ("GSA"), building on the prior year's agreement to form a 10-year partnership to hold live wrestling events in the Kingdom of Saudi Arabia ("KSA"). (Merholz Compl. ¶ 85; Kooi Compl. ¶¶ 45, 61; Nordstrom Compl. ¶ 93.)  On July 25, 2019, WWE stated that it "believe[d]" it had reached agreements-in-principle with the GSA for a media rights deal and a second live event, although WWE cautioned that those agreements were "nonbinding," that they may not occur, and that if they did not occur, adjusted OIBDA ("operating income before depreciation and amortization") for 2019 would be $10 to $20 million lower than projected.[5]  (Merholz Compl. ¶¶ 108-109; Kooi Compl. ¶ 63; Nordstrom Compl. ¶¶ 100-101.)  On October 31, 2019, WWE explained that it was continuing to work toward completion of a MENA agreement, and discussions were ongoing, but that no assurances could be given regarding a deal.  The Company also lowered its adjusted OIBDA guidance for 2019 by

---

[4]    The Complaints' factual allegations are taken as true for purposes of this motion only.

[5]    The second live event, in 2019, WWE Crown Jewel, did in fact take place in KSA on October 31, 2019.  (Merholz Compl. ¶¶ 122, 128.)

$10 to $20 million due to the delay in completing the MENA deal.  (Merholz Compl. ¶¶ 119-122; Kooi Compl. ¶ 70 Nordstrom Compl. ¶ 107.)

On November 4, 2019, the Company announced that it had finalized a deal with the Saudi General Entertainment Authority ("GEA") to add a second live event each year throughout the duration of the parties' 10-year agreement.  (Merholz Compl. ¶ 128.)

C.    **The Federal Securities Action**

An earlier-filed putative class action pending in another federal court asserts securities law violations arising from the same events at issue here (the "Securities Action").  *See* Consolidated Amended Class Action Complaint, *City of Warren Police and Fire Retirement System v. World Wrestling Entertainment, Inc. et al.*, No. 20-02031 (S.D.N.Y. June 8, 2020), ECF No. 57.  The plaintiff in that action brought claims against WWE, V. McMahon, George Barrios, and Michelle Wilson under section 10(b) of the Exchange Act and against the individual defendants under section 20(a).  (*Id.* ¶¶ 397-412.)  On August 6, 2020, WWE's motion to dismiss the Securities Action was denied, and the Court ordered the parties to be ready for trial no later than February 22, 2021.  The Court's decision in that case did not evaluate the question of demand futility, a threshold showing in the pending shareholder derivative cases, but not in securities class actions.  Nor did the Court consider the viability of any claim against any of the Outside Directors named as Defendants here because none of them are parties in the Securities Action.  Finally, the factual allegations at issue here differ significantly from those alleged in the Securities Action.

**ARGUMENT**

All three Complaints should be dismissed for failure to satisfy the threshold showing of demand futility.  Plaintiffs admit that none of them made a pre-suit demand. (Merholz Compl. ¶ 182; Kooi Compl. ¶ 83; Nordstrom Compl. ¶ 127.)  To avoid dismissal,

therefore, Plaintiffs must establish through particularized allegations that demand would have been futile—*i.e.*, that at least five of WWE's 10 Directors could not respond impartially to a demand. Plaintiffs have not come close to satisfying that burden. Plaintiffs have also failed to satisfy their independent burden to establish they contemporaneously owned and continuously own stock in WWE. Either of those threshold failings is sufficient to warrant dismissal. In the alternative, the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim.

## I.    PLAINTIFFS HAVE FAILED TO DEMONSTRATE DEMAND FUTILITY

### A.    Demand Futility Imposes a Stringent Pleading Standard

Plaintiffs' burden to establish demand futility is governed by Delaware law because WWE is incorporated in Delaware. *See Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004). A "cardinal precept" of Delaware law is that "directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Accordingly, the board "has sole authority" to decide whether to pursue lawsuits on behalf of the company. *White v. Panic*, 783 A.2d 543, 550 (Del. 2001). And a shareholder plaintiff may not usurp the board's authority unless the plaintiff demonstrates that demand should be excused as futile. *See In re Facebook Inc. Initial Pub. Offering Derivative Litig.*, 922 F. Supp. 2d 445, 467 (S.D.N.Y. 2013) (applying Delaware law), *aff'd*, 797 F.3d 148 (2d Cir. 2015).

A plaintiff who fails to make a pre-suit demand bears the heavy burden of pleading "with particularity" facts showing that a pre-suit demand would have been futile. Fed. R. Civ. P. 23.1(b)(3). This exacting standard is more stringent than the Rule 12(b)(6) plausibility standard and "is a high hurdle for plaintiffs to clear." *Facebook*, 922 F. Supp. 2d at 467; *accord In re Am. Int'l Grp., Inc. Deriv. Litig.*, 700 F. Supp. 2d 419, 430 (S.D.N.Y. 2010), *aff'd*, 415 F. App'x 285 (2d Cir. 2011).

Where, as here, a plaintiff does not challenge any specific board decision or challenges the board's failure to act, the test outlined in *Rales v. Blasband*, 634 A.2d 927 (Del. 1993), governs the demand-futility analysis. Under *Rales*, a plaintiff must plead particularized facts demonstrating that half of the directors either (i) are "interested" in the underlying conduct being challenged or are not independent of an interested director, or (ii) face a "substantial threat" of personal liability as to the conduct alleged. *See Desimone v. Barrows*, 924 A.2d 908, 928 (Del. Ch. 2007); *see also In re The Limited, Inc. S'holders Litig.*, No. Civ. A. 17148, 2002 WL 537692, at *7 (Del.Ch. Mar. 27, 2002) ("[W]here the challenged actions are those of a board consisting of an even number of directors, plaintiffs meet their burden of demonstrating the futility of making demand on the board by showing that half of the board was either interested or not independent.").

Plaintiffs' already strict pleading burden is further heightened here because WWE's certificate of incorporation contains a provision, under Section 102(b)(7) of the Delaware General Corporation Law, that exculpates its Directors to the fullest extent permitted by Delaware law. *See* Anderson Decl. Ex. 2 at art. IX(A). To show a substantial threat of personal liability, the Plaintiffs must plead a *non-exculpated* claim. That standard requires Plaintiffs to "plead with particularity that the directors acted with scienter, meaning they had actual or constructive knowledge that their conduct was legally improper." *McElrath v. Kalanick*, 224 A.3d 982, 991-92 (Del. 2020) (internal citations and quotations omitted).

> In other words, directors are liable for subjective bad faith when their conduct is motivated by an actual intent to do harm, or when there is an intentional dereliction of duty, a conscious disregard for one's responsibilities. Pleading bad faith is a difficult task and requires that a director acted inconsistent with his fiduciary duties and, most importantly, that the director *knew* he was so acting. Gross negligence, without more, is insufficient to get out from under an exculpated breach of the duty of care.

*Id.* at 991-92 (internal citations and quotations omitted). Plaintiffs have not carried their burden

to adequately plead such facts here.[6]

      **B.**      **Plaintiffs Do Not Adequately Plead That Any of WWE's Six Outside Directors Are Interested or Lack Independence from an Interested Person**

      To plead a director is not disinterested under Delaware law, Plaintiffs must allege

facts showing that a decision concerning a pre-suit demand (i) causes the specific director to

receive a personal benefit not equally shared by shareholders, or (ii) has a materially detrimental

impact on the director in question but not the corporation. *See Beam v. Stewart*, 845 A.2d 1040,

1048–49 & n.21 (Del. 2004). Directors lack independence if they are controlled by or beholden

to another interested director such that their "discretion would be sterilized." *Id*. at 1050

(*quoting Rales*, 934 A.2d at 936). Plaintiffs have failed to meet their burden as to any of the six

Outside Directors.

      None of the Complaints allege that any of the six Outside Directors lack

independence, and the Kooi Complaint does not allege that any of the six Outside Directors are

interested in the subject matter of the lawsuits. (Kooi Compl. ¶¶ 83-91.) The Nordstrom and

Merholz Complaints allege that the Outside Directors "received payments, benefits, stock

options, and other emoluments by virtue of their membership on the Board and their control of

the Company" (Merholz Compl. ¶ 187; Nordstrom Compl. ¶ 131), but it is "well established in

Delaware law that ordinary director compensation alone is not enough to show demand futility"

so long as "the compensation does not exceed customary bounds." *A.R. Demarco Enters. v.*

*Ocean Spray Cranberries*, No. Civ. A. 19133, 2002 WL 31820970, at *5 & n.13 (Del. Ch.

---

[6]    The Securities Action was not subject to this exacting pleading standard (and not brought against any of the Outside Directors), rendering the ruling on the motion to dismiss in that case irrelevant here.

Dec. 4, 2002); *see also In re Merrill Lynch Investment Management Funds Sec. Litig.*, 434

F. Supp. 2d 233, 241 (S.D.N.Y. 2006) ("The mere fact that a director receives compensation . . .

does not excuse demand."). And here, Plaintiffs have not alleged that any Outside Director

received compensation that was "unusually large or excessive." *Pirelli Armstrong Tire Corp.

Retiree Med. Benefits Tr. v. Lundgren*, 579 F. Supp. 2d 520, 536 (S.D.N.Y. 2008).

In short, Plaintiffs have failed to allege facts establishing that any of the six

Outside Directors are interested or lack independence. Because the Outside Directors constitute

a majority of WWE's Board, Plaintiffs cannot excuse their failure to make a demand on these

grounds.

### C.   Plaintiffs Do Not Adequately Plead That Any of the Six Outside Directors Face a Substantial Threat of Personal Liability

Delaware courts reject the argument that demand is excused "solely because the

directors," in evaluating a demand, "would be deciding to sue themselves." *In re Citigroup, Inc.

S'holder Deriv. Litig.*, 964 A.2d 106, 121 (Del. Ch. 2009). Such an argument would "effectively

abrogate Rule 23.1" because any plaintiff could establish demand futility by suing all directors.

*Aronson*, 473 A.2d at 818. Instead, Plaintiffs must allege with particularity that a majority of

directors actually face "a 'substantial likelihood' of personal liability" "on a claim-by-claim basis."

*Taylor v. Kissner*, 893 F. Supp. 2d 659, 666 (D. Del. 2012) (internal citations and alterations

omitted).

Furthermore, because WWE's certificate of incorporation contains a

Section 102(b)(7) provision, Plaintiffs must allege that the directors' actions were not in good

faith or a breach of the duty of loyalty. *See Stone v. Ritter*, 911 A.2d 362, 367 (Del. 2006) (a

Section 102(b)(7) provision "can exculpate directors from monetary liability for a breach of the

duty of care, but not for conduct that is not in good faith or a breach of the duty of loyalty.")

11

Under these very strict standards, Plaintiffs cannot satisfy their burden of demonstrating that any of the six Outside Directors face a substantial threat of personal liability regarding the conduct alleged in the Complaints.

Specifically, Plaintiffs claim that the Outside Directors face a substantial risk of personal liability for their alleged role in WWE's disclosures about (a) OSN's early termination of its agreement and (b) WWE's "agreement in principle" with GSA.  According to Plaintiffs, the Outside Directors "approved and/or permitted" WWE to make the allegedly false or misleading disclosures and signed WWE's public filings containing those disclosures.  (Merholz Compl. ¶¶ 185-86; Kooi Compl. ¶¶ 86-92; Nordstrom Compl. ¶¶ 129-30, 150.)  Based on those allegations, Plaintiffs assert claims against the Outside Directors for breach of fiduciary duty and unjust enrichment (all Complaints), waste of corporate assets (Nordstrom and Merholz Complaints only), and violations of section 10(b) of the Exchange Act (Merholz Complaint only).[7]  Plaintiffs have failed to show a substantial likelihood of liability for any Outside Director for any of these claims.

### 1.      Breach of Fiduciary Duty

Plaintiffs have failed to show a substantial likelihood that the Outside Directors breached their fiduciary duties to the Company by (i) issuing false statements or (ii) failing to ensure WWE had adequate internal controls.  (Nordstrom Compl. ¶¶ 154-157; Merholz Compl. ¶¶ 213, 215, 217-219; Kooi Compl. ¶¶ 87-94.)

**False Statements**.  Plaintiffs cannot satisfy their burden by relying on mere duty-of-care violations. *Guttman v. Huang*, 823 A.2d 492, 501 (Del. Ch. 2003) (dismissing complaint

---

[7]     The Outside Directors are not named as defendants in Plaintiffs' claims for insider trading under Delaware law or under section 20(a) of the Exchange Act.

for failure to plead demand futility, and finding corporation's certificate of incorporation "contains an exculpatory charter provision that immunizes [its] directors from liability for duty of care violations"). Instead, under the *Malone* rule, to succeed on a false statement claim, Plaintiffs must plead particularized facts showing that the Outside Directors (i) "knowingly disseminat[ed] materially false information" and (ii) were "deliberately misinforming shareholders." *Malone v. Brincat*, 722 A.2d 5, 14 (Del. 1998). Plaintiff must also allege the elements of "[individualized] reliance, causation, and damages." *Wilkin ex rel. Orexigen Therapeutics, Inc. v. Narachi*, C.A. No. 12412, 2018 WL 1100372, at *14 (Del. Ch. Feb. 28, 2018) (internal quotation marks and citations omitted). Plaintiffs fail to make any of these showings.

To satisfy the knowing-dissemination element, Plaintiffs must allege that the directors in question "prepared the financial statements or that they were directly responsible for the misstatements or omissions." *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 134 (Del. Ch. 2009). Here, none of the Complaints contain any non-conclusory factual allegations showing that any of the Outside Directors were involved in the preparation of the alleged misstatements. The Complaints merely state that the defendants "allowed," "authorized" and/or "permitted" the statements to be disseminated or signed public filings containing the challenged disclosures. (*See e.g.*, Nordstrom Compl. ¶ 130; Merholz Compl. ¶ 214; Kooi Compl. ¶ 87.) Under well-settled law, such conclusory assertions are insufficient to state a *Malone* claim. *See Rahbari v. Oros*, 732 F. Supp. 2d 367, 380 (S.D.N.Y. 2010) (allegation that directors of corporation acted in bad faith by signing a 10-K with a material omission was "insufficient to create an inference that the directors had actual or constructive notice of any illegality"); *Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. May 2, 1995) (pleadings

13

insufficient to establish substantial likelihood of liability for conspiring to misrepresent stock price where the only particular allegations were that the directors signed a misleading 10-K and a misleading registration statement).

To satisfy the deliberate-misinformation element, Plaintiffs must plead facts showing the Outside Directors *actually knew* the challenged statements were false and deliberately misinformed stockholders.  "This level of proof is similar to, but even more stringent than, the level of scienter required for common law fraud" because a *Malone* claim requires knowing misconduct.  *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 158 (Del. Ch. 2004) (footnote omitted); *Clark v. Davenport*, C.A. No. 2017-0839, 2019 WL 3230928, at *9 (Del. Ch. July 18, 2019) ("For a common law fraud claim, a plaintiff can show reckless indifference, but *Malone* requires knowing misconduct.") (citation omitted).

None of the Complaints satisfy this requirement.  The Nordstrom Complaint merely alleges that some of the Outside Directors "reviewed and approved" certain annual reports and public statements.  (Nordstrom Compl. ¶ 150.)  The other two Complaints state, in a conclusory fashion, that the defendants "knew" or "recklessly disregarded" the "false" nature of these statements, without any factual allegations purporting to support that claim of knowledge.  (Merholz Compl. ¶ 236; Kooi Compl. ¶ 88.)  These allegations fall well short of Plaintiffs' burden to allege "that the misstatement was made knowingly or in bad faith."  *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 135 (Del. Ch. 2009).

As for the remaining elements, none of the Complaints contain factual allegations of reliance and damages.  Accordingly, Plaintiffs' allegations fail to show that any of the Outside Directors face a substantial threat of personal liability under *Malone* for WWE's statements regarding the MENA contracts.

14

**Lack of Oversight**.  Plaintiffs also accuse the Outside Directors of breaching their fiduciary duty of loyalty by "fail[ing] to ensure that adequate internal controls were in place regarding the serious disclosure and other deficiencies…."  (Nordstrom Compl. ¶ 151; *see also* Merholz Compl. ¶ 214; Kooi Compl. ¶ C).  Under Delaware law, this type of claim is called a *Caremark* claim, and it "is possibly the most difficult theory [to plead and prove] in corporation law."  *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).  To state a *Caremark* claim, a plaintiff must allege with particularity that (i) "the directors utterly failed to implement any reporting or information system or controls"; or (ii) "having implemented such a system or controls, [the directors] consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006).

Under either scenario, "imposition of liability requires a showing that the directors *knew* that they were not discharging their fiduciary obligations."  *Id*. (emphasis added); *see also Guttman*, 823 A.2d at 506 (liability requires "a showing that the directors were conscious of the fact that they were not doing their jobs").  A *Caremark* claim "necessarily involves a failure to act in good faith" and "the showing required is 'quite high.'"  *See Morello v. McGee*, 23 F. Supp. 3d 86, 95 (D. Conn. 2014); *see also Desimone v. Barrows,* 924 A.2d 908, 935 (Del. Ch. 2007) (Director liability for a failure to monitor claim requires a showing that the directors acted with bad faith because "their indolence was so persistent that it could not be ascribed to anything other than a knowing decision not to even try to make sure the corporation's officers had developed and were implementing a prudent approach to ensuring law compliance.").

15

Here, the Complaints lack any particularized allegations that any of the Outside
Directors violated their oversight responsibilities by failing to implement a compliance system.
To the contrary, Plaintiffs concede that the Board had an Audit Committee (Merholz ¶¶ 12, 15,
16, 22, 212; Kooi ¶¶ 19, 21, 26, 31, 35–37, 86; Nordstrom ¶¶ 32, 33, 42, 45, 58, 66, 69, 150,
151), and that WWE had a Code of Ethics for Directors, which included a duty to report any
violations of law.  (Nordstrom ¶¶ 58, 63, 66.)  *See In re IAC/InterActiveCorp. Sec. Litig.*, 478
F. Supp. 2d 574, 606 (S.D.N.Y. 2007) (finding no "culpable failure of oversight" and dismissing
complaint where "plaintiffs acknowledge the existence of an audit committee"); *TVI Corp. v.
Gallagher*, C.A. No. 7798, 2013 WL 5809271, at *15–16 (Del. Ch. Oct. 28, 2013) (plaintiffs
failed to state a claim for oversight where they did not plead "specific facts to support an
inference that Defendant directors utterly failed to implement any reporting or information
system or controls" and "acknowledge[d] that the Board maintained an audit committee");
*Guttman*, 823 A.2d at 506-07 (Plaintiffs "have not come close to pleading a *Caremark* claim"
where they did not allege that "the company lacked an audit committee, that the company had an
audit committee that met only sporadically and devoted patently inadequate time to its work, or
that the audit committee had clear notice of serious accounting irregularities and simply chose to
ignore them or, even worse, to encourage their continuation.").  Thus, "it is not conceivable that
the Board 'utterly failed' to establish a relevant information and reporting system."  *Shabbouei v.
Potdevin*, No. CV 2018-0847-JRS, 2020 WL 1609177, at *7 (Del. Ch. Apr. 2, 2020*)*.

Plaintiffs have also failed to "plead particularized facts that the Board knew of
evidence of corporate misconduct—the proverbial 'red flag'—yet acted in bad faith by
consciously disregarding its duty to address that misconduct."  *Horman v. Abney*, C.A. No. 12290,
2017 WL 242571, at *10, *12 (Jan. 19, 2017) (rejecting conclusions requiring "inferential

hopscotch.").   Plaintiffs have not alleged that any Outside Director failed to act in response to any evidence of misconduct.  Instead, the Complaints merely allege, in a conclusory fashion, that "internal controls were not adequately maintained" (Nordstrom Compl. ¶ 157) and that certain of the defendants "failed to ensure that adequate controls were in place."  (Merholz Compl. ¶ 214.) None of these very general allegations are sufficient to establish *Caremark* liability.

### 2.   <u>Waste of Corporate Assets</u>

To prevail on a waste claim, plaintiffs "must overcome the general presumption of good faith by showing that the board's decision was so egregious or irrational that it could not have been based on a valid assessment of the corporation's best interests."  *In re Citigroup Inc.*, 964 A.2d at 136 (internal citation omitted).  Claims of corporate waste must fail "even if the transaction appears, with hindsight, to be unreasonably risky to a reviewing court."  *White v. Panic*, 783 A.2d 543, 554 (Del. 2001).  That is because "[c]ourts are ill-fitted to attempt to weigh the adequacy of consideration under the waste standard or, *ex post*, to judge appropriate degrees of business risk."  *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000) (internal quotation marks omitted).  "A claim of corporate waste will arise only in the rare, unconscionable case where directors irrationally squander or give away corporate assets."  *In Re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 74 (Del. June 8, 2006) (internal quotation marks and citations omitted).

Plaintiffs have failed to make such a showing here.  The Complaints allege waste arising from (i) collecting "excessive compensation and bonuses," (ii) awarding "self-interested stock options" to certain officers and directors, (iii) causing the Company to face "millions of dollars of legal liability," (iv) "overpay[ing]" for WWE stock in a buy-back program, and (v) losing assets from investors "who no longer trust the company."  (Nordstrom Compl. ¶ 166; Merholz Compl. ¶ 224.)  None of these allegations are sufficient to state a claim for waste.

*First*, to show that compensation or stock options constitute corporate waste, Plaintiffs must make a particularized showing that the compensation granted to the Defendants "was not a rational business decision." *Walt Disney*, 906 A.2d at 75. Absent such particularized allegations, "their waste claim must fail." *Id.*; *see also, e.g.*, *Kandell ex rel. FXCM, Inc. v. Niv*, C.A. No. 11812, 2017 WL 4334149, at *15 (Del. Ch. Sept. 29, 2017) ("[A]llegations that compensation is excessive or even lavish are insufficient as a matter of law to meet the standard required for a claim of waste.") (internal quotation and citation omitted). Where, as here, Plaintiffs do not even attempt to allege that Defendants' compensation was not a rational business decision, a claim of corporate waste fails.

*Second*, regarding alleged legal liability and costs, Plaintiffs must plead that "the amounts [the corporation] agreed to pay were so enormous by comparison to the company's potential liability that no one of sound mind would have agreed" to pay. *Boeing Co. v. Shrontz*, Civ. A. No. 11273, 1992 WL 81228, at *4 (Del. Ch. Apr. 20, 1992). Plaintiffs do not plead any such facts in the Complaints. *See McCrae Assocs., LLC v. Universal Capital Mgmt., Inc.*, 746 F. Supp. 2d 389, 401 (D. Conn. 2010) (mere fact that a corporation "persists in defending itself in this lawsuit cannot support a conclusion under the applicable standard that there has been a waste of corporate assets").

*Third*, to allege that WWE overpaid for stock, Plaintiffs must allege, with particularity, that the WWE's stock repurchases were "so one sided that no business person of ordinary sound judgment could conclude that the corporation has received adequate consideration." *In re Walt Disney Co. Deriv. Litig.*, 731 A.2d 342, 362 (Del. Ch. 1998); *see also In re Textron, Inc. S'holder Deriv. Litig.*, 811 F. Supp. 2d 564, 77 (D.R.I. 2011) (dismissing claims concerning stock repurchase program on demand futility grounds). Rather, the

18

Complaints allege only that the Board approved a stock repurchase plan (Merholz Compl. ¶¶ 166-172; Nordstrom Compl. ¶ 94) and that the Company issued a release on February 7, 2019 stating that the stock repurchase program was "supported by WWE's strong financial performance." (Nordstrom Compl. ¶ 94.) Because Plaintiffs do not allege facts showing that the stock repurchases were "egregious or irrational," they cannot overcome the presumption that "generally . . . a company's decision to repurchase shares at market price does not constitute waste." *Staehr v. Mack*, No. 07 Civ. 10368, 2011 WL 1330856, at *9 (S.D.N.Y. Mar. 31, 2011) (internal citation omitted).

     *Finally*, the alleged loss of potential funds from investors does not amount to a cognizable form of corporate waste. *In re Am. Int'l Grp., Inc. Derivative Litig.*, 700 F. Supp. 2d 419, 444 (S.D.N.Y. 2010), *aff'd*, 415 F. App'x 285 (2d Cir. 2011) ("The speculative possibility of a future payment, however, is an inadequate basis to support a claim for waste."). By definition, the concept of waste refers to the irrational squandering of assets that the Company possesses, not future assets that the Company hopes to acquire. *See, e.g.*, *Brehm*, 746 A.2d at 263 ("[T]he [waste] claim is associated with a transfer of corporate assets that serves no corporate purpose; or for which no consideration at all is received.") (internal citation omitted).

### 3. Unjust Enrichment

     Plaintiffs' unjust enrichment claims (Nordstrom Compl. ¶¶ 160-164; Kooi Compl. ¶¶ 97-100; Merholz Compl. ¶¶ 227-232) fail for two reasons. *First*, Plaintiffs' unjust enrichment claims are entirely duplicative of their breach of fiduciary duty claims because they allege the Outside Directors' purported breaches of fiduciary duty led to their allegedly unjust retention of their director compensation. As such, Plaintiffs' unjust enrichment claims fail for the same reasons their fiduciary duty claims fail. *See, e.g.*, *Frank v. Elgamal*, C.A. No. 6120, 2014 WL

957550, at *31-32 (Del. Ch. Mar. 10, 2014) ("[D]uplicative fiduciary duty and unjust enrichment claims [are treated] in the same manner when resolving a motion to dismiss.").

*Second*, Plaintiffs have utterly failed to plead the elements of an unjust enrichment claim against the Outside Directors. To state an unjust enrichment claim, a plaintiff must allege "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). But here, Plaintiffs have not alleged facts showing that the Outside Directors received anything from the Company other than their regular compensation as Board members. That allegation is insufficient to support an unjust enrichment claim. *In re Pfizer Inc. S'holder Derivative Litig.*, 722 F. Supp. 2d 453, 465 (S.D.N.Y. 2010) (allegations based on the "mere retention of directors' and officers' ordinary compensation" failed to state a claim for unjust enrichment).

## 4.      Section 10(b) of the Exchange Act

The Merholz Complaint includes a claim against the Outside Directors for violating section 10(b) of the Exchange Act and SEC Rule 10b-5(b) promulgated thereunder. (Merholz Compl. ¶ 233-240.) To state a claim for securities fraud under these provisions, plaintiff must allege, among other things, "a material misrepresentation or omission by the defendant . . . [made with] scienter." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008). To plead scienter, a plaintiff must allege specific facts showing that each defendant either had "motive or opportunity" to commit the alleged fraud, or that each defendant knew, or was reckless in not knowing, that the statement at issue was false. *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

*First*, Plaintiffs cannot show a substantial likelihood of personal liability for securities fraud by the Outside Directors because they did not make the statements at issue.  *See Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).  The only challenged statements Plaintiffs attempt to attribute to the Outside Directors are those contained in the Company's 2018 Form 10-K, by virtue of the fact the Outside Directors signed that securities filing.[8]  (Merholz Compl. ¶ 215.)  But Plaintiffs fail to plead with particularity that the 2018 Form 10-K contains any misleading statements.  *See Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004).  The 2018 Form 10-K stated that the Company's "failure to maintain or renew key agreements" could cause an adverse effect on the Company's operating results; that the Company had "an important partnership with the General Sports Authority of the Kingdom of Saudi Arabia"; and that the Company had "significant relationships . . . with distributors nearing the end of their terms," including in the Middle East.  (Merholz Compl. ¶ 100.)

Plaintiffs' claim that these statements were fraudulent because they omitted that the Company's then-in-effect media rights agreement with OSN would terminate on March 31, 2019 (*id.* ¶ 101) is nonsensical.  Under Plaintiffs own allegations, at the time the 2018 10-K was filed, the Company was in active discussions with the GSA "regarding a potential new exclusive media rights agreement in the MENA region upon the termination of the OSN Media Rights Agreement."  (*Id.* ¶ 85.)  Plaintiffs offer no particularized allegations that any of the Outside

---

[8]  Plaintiffs otherwise claim that certain statements contained in Company press releases (*id.* ¶¶ 95, 108, 109, 119, 128) or made at investor conferences (*id.* ¶¶ 96, 97, 103, 104, 106, 110-115, 120-124, 131, 133, 134) were misleading because they omitted details on the status of the Company's MENA media rights agreement.  The Outside Directors did not make those statements, and the Complaint does not allege they had any role in shaping those statements.  *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 576 n.14 (S.D.N.Y. 2014) (dismissing Section 10b-5 claims where complaint contained "no particularized allegations that [the an individual director defendant] had any role in shaping the[] content" of the statements), *aff'd*, 2015 WL 2330056 (2d Cir. May 15, 2015).

Directors believed no agreement would be reached in 2019.[9]  As this Court has noted: "defendants' lack of clairvoyance [regarding a key contract renewal] simply does not constitute securities fraud."  *In re Synchrony Fin. Sec. Litig.*, 2020 WL 1531297, at *24 (D. Conn. Mar. 31, 2020) (Bolden, J.) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995)), *appeal docketed* (Apr. 24, 2020); *In re Express Scripts Holdings Co. Sec. Litig.*, 773 F. App'x 9, 14 (2d Cir. 2019) (plaintiffs failed to plead fraud on theory "that Defendants should have anticipated the outcome of the negotiations sooner or that the negotiations would deteriorate . . . where the discussions were ongoing").[10]

> *Second*, Plaintiffs also fail to plead scienter as to the Outside Directors because they do not allege, with particularity, that any of them had actual or constructive knowledge of the matters that allegedly were false.  Indeed, Plaintiffs' allegations concerning "Defendants' Knowledge" make no mention of the Outside Directors.  (*See* Merholz Compl. ¶¶ 147-165.) Instead, Plaintiffs rely solely on assertions that the Outside Directors "had access to the adverse undisclosed information" by virtue of their "positions of control and authority as senior officers and directors."  (*Id.* ¶ 161.)  This is not sufficient.  *See Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000) (plaintiffs must "*specifically* allege[] defendants' knowledge of facts or access to information contradicting their public statements") (emphasis added); *Johnson v. NYFIX, Inc.*, 399 F. Supp. 2d 105, 115 (D. Conn. 2005) (alleging defendants held "high-ranking positions" in

---

[9]    Plaintiffs' generalized assertion that "Defendants knew all along, or were deliberately reckless in disregarding, that negotiating a *brand new* agreement with a *new* provider, would take time, and would not be completed by the end of 2019," (Merholz Compl. ¶ 86 (emphasis in original)) is not supported by any particularized facts.  *See, e.g. Keystone Assocs. LLC v. Benjamin Fulton*, C.A. No. 18-1235, 2020 WL 3432601, at *5 (D. Del. June 23, 2020), *appeal docketed* (July 23, 2020) (finding allegation that defendant "knew it had no 'realistic possibility' of selling $100 million of . . . products annually" insufficient under Rule 9(b) because it "is unsupported by any particularized facts").

[10]   *See also Freedman v. Value Health, Inc.*, Nos. 3:95-cv-2038 JCH, 3:97-cv-2711, 2000 WL 630916, at *5 (D. Conn. Mar. 24, 2000) ("The fact that the defendants were mistakenly optimistic that the . . . contract could be renegotiated does not make their statements to that effect fraudulent.").

a company alone is insufficient for a court to "infer that defendants knew or should have known" material facts); *Duncan v. Pencer*, No. 94 Civ. 0321, 1996 WL 19043, at *14 (S.D.N.Y. Jan. 18, 1996) (finding insufficient allegations that defendants must have known of the falsity of financial statements due to their positions within the company and access to inside information).  Because Plaintiffs fail to allege with particularity that the Outside Directors acted with scienter, the Outside Directors face no risk, much less a *substantial* risk, of liability under section 10(b) or Rule 10b-5.

### 5.       Service on the WWE Audit Committee

The fact that defendants Speed, Goldfarb, and Singh served on WWE's audit committee does not change this analysis.  Plaintiffs allege, in general fashion, that these Outside Directors, through their service on the audit committee, knew, or were reckless in not knowing, that there was no OSN deal in place and that there were issues reaching a deal with the GSA. (Merholz ¶¶ 211-214; Kooi Compl.  ¶¶ 86-88; Nordstrom Compl. ¶¶ 150-151.)  But mere service on an audit committee alone does not demonstrate that these Outside Directors had this knowledge or otherwise face a substantial likelihood of liability.  *See, e.g.*, *Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008) (plaintiff's claim that service on an audit committee was a sufficient basis to infer liability was "contrary to well-settled Delaware law"); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Lundgren*, 579 F. Supp. 2d 520, 532 (S.D.N.Y. 2008) (general allegations that defendants reviewed, discussed, or failed to correct false statements, "based simply on the fact that a defendant was a member of a board or committee, without more, are insufficient as a matter of law").

*       *       *

23

Plaintiffs have not adequately pleaded that half of WWE's directors could not impartially consider a demand because they (i) were interested or lacked independence from an interested person or (ii) face a substantial likelihood of liability for Plaintiffs' claims. They thus have not satisfied their burden to plead that pre-suit demand was excused as futile, and all the Complaints should be dismissed on that basis.

## II.    PLAINTIFFS' FAILURE TO PLEAD THEY SATISFY THE CONTEMPORANEOUS AND CONTINUOUS STOCK OWNERSHIP REQUIREMENTS PROVIDES AN ALTERNATIVE, INDEPENDENT BASIS FOR DISMISSAL

Rule 23.1 and 8 *Del. C.* § 327 require that the plaintiff in a derivative action be "a shareholder or member at the time of the transaction complained of." Fed. R. Civ. P. 23.1; *see* 8 *Del. C.* § 327 (requiring derivative plaintiffs to be stockholders "at the time of the transaction of which such stockholder complains"); *In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 157 (2d Cir. 2015) (plaintiffs must "demonstrate possession of an ownership interest" in the company they purport to represent that is "contemporaneous with the conduct for which [they] seek[] recovery."). In addition, a derivative plaintiff "must also maintain shareholder status throughout the litigation." *Lewis v. Anderson*, 477 A.2d 1040, 1046 (Del. 1984). Merely providing "a formulaic recitation of the derivative standing requirement will not suffice." *Facebook*, 797 F.3d at 159. Dismissal of the action is required when plaintiffs fail to provide the detail necessary to comply with these requirements. *See Cellucci v. O'Leary*, No. 19-cv-2752, 2020 WL 977986, at *11 (S.D.N.Y. Feb. 28, 2020) (dismissing complaint with leave to amend and requiring that amended complaint must "comply with the requirements of Rule 23.1, including by setting forth dates of Plaintiffs' stock ownership").

Here, the principal transactions the Complaints complain of are alleged misstatements that occurred on February 7, 2019; April 25, 2019; July 25, 2019; and October 31,

2019.  (Merholz Compl. ¶¶ 94-135; Nordstrom Compl. ¶¶ 87-96; Kooi Compl. ¶¶ 47-69.)  Thus, to have standing, Plaintiffs must allege that they continuously held WWE stock from February 7, 2019, to the present.  Plaintiffs fail to do so.  Merholz and Klein fail to make any allegations that they owned WWE stock during this period.  They merely state that they are both "current stockholder[s]" and "intend[] to retain ownership" throughout the case.  (Merholz Compl. ¶¶ 4-5.)  And the declarations they submit with their Complaints state only that they held stock during the "relevant times."  *See* Verification of Ryan B. Merholz (July 28, 2020); Verification of Melvyn Klein (July 27, 2020).  These statements are wholly inadequate to demonstrate contemporaneous and continuous stock ownership.  *See, e.g.*, *Smith v. Stevens*, 957 F. Supp. 2d 466, 469 (S.D.N.Y. 2013) (plaintiffs who alleged they owned shares during the "Relevant Period" did not adequately demonstrate ownership).

Likewise, it is well settled that "[a] plaintiff who ceases to be a shareholder, whether by reason of a merger or for any other reason, loses standing to continue a derivative suit."  *Lewis v. Anderson*, 477 A.2d 1040, 1049 (Del. 1984) *accord Ash v. McCall*, No. Civ. A. 17132, 2000 WL 1370341, at *11 (Del. Ch. Sept. 15, 2000).  Here, neither Nordstrom nor Kooi make any allegation that they intend to continue to hold shares in WWE during the pendency of the litigation.  (Nordstrom Compl. ¶ 10; Kooi Compl. ¶ 15.)

On August 17, 2020, counsel for defendants asked Plaintiffs to correct the defects in their pleadings regarding their contemporaneous and continuous ownership of WWE stock, so the parties could avoid burdening the Court with this issue.  Nordstrom, Merholz, Klein, and Kooi refused to provide any additional information.  *See* Anderson Decl. Exs. 3, 4, and 5.  Because Plaintiffs have failed to show they satisfy the threshold requirements of contemporaneous and continuous stock ownership, the Complaints should be dismissed.

25

### III.   ALTERNATIVELY, THE COMPLAINTS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RELIEF

The Complaints also should be dismissed in their entirety for the independent reason that they fail to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  There are multiple pleading standards Plaintiffs must satisfy.  The Complaints must be pled with sufficient detail to be "plausible on [their] face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).  For the section 10(b) allegations and the claim of corporate waste, the claims must be pleaded with particularity, and the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies. *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004); *see also Stern v. General Elec. Co*., 924 F.2d 472, 476 (2d Cir. 1991) (evaluating corporate waste claims in a shareholder derivative suit under Rule 9(b)).  The section 10(b) and 20(a) claims also must satisfy the heightened pleading standards imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

Furthermore, as discussed *supra* in Part I(C)(1), WWE's Section 102(b)(7) exculpatory provision applies to claims against Defendants brought in their capacity as a Director, so Plaintiffs must plead, with particularity, they engaged in intentional misconduct to state a valid claim against exculpated directors. *See, e.g.*, *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 62 (Del. 2006) (Bad faith entails an "intentional dereliction of duty" or "a conscious disregard for one's responsibilities.").

Plaintiffs cannot evade their pleading burden here by invoking the denial of a motion to dismiss the Securities Action.  As an initial matter, that ruling is not binding on this

Court, which must conduct an *independent* analysis. *See Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 2d 193, 201 (D. Conn. 2012) (stating that district court judges "remain free to disagree" with the decisions of other district court judges within the same circuit and "this Court will conduct an independent analysis of this question of statutory interpretation"). Nor does that ruling have persuasive force here where the allegations at issue are substantially different. Unlike in the pending cases, the Securities Action asserted *no* claims against 10 of the 13 Individual Defendants named in these actions and *no* claims at all against any of the Outside Directors.

The Complaints here also lack factual allegations contained in the Securities Action as supporting the denial of the motion to dismiss. For example, there are no allegations before this Court making a particularized showing of the OSN agreement's materiality to WWE's financial outlook, *no* allegations from *any* confidential witnesses to support the claim that WWE's statements regarding an "agreement in principle" were false or misleading, *no* allegations of a deteriorating relationship between WWE and Saudi Arabia, *no* allegations of unworkable tension in their relationship, and *no* particularized allegations of scienter with respect to any alleged misrepresentation by any defendant.

As we show below, all of Plaintiffs' claims against Defendants in their capacities as Directors fail because they lack plausible allegations of intentional misconduct. To the extent Plaintiffs allege that certain Defendants acted in their roles as Officers, Plaintiffs have failed to allege facts supporting a plausible inference of wrongdoing against any of them.

## A.     The Complaints Fail to State a Claim for Breach of Fiduciary Duty

Plaintiffs assert claims against all Defendants for violating their fiduciary duties to the Company, asserting liability under both *Malone* and *Caremark*. (Merholz Compl. ¶¶ 216–

21, Kooi Compl. ¶¶ 97–102, Nordstrom Compl. ¶¶152–59.)  Plaintiffs fail to allege facts sufficient to support scienter under either of these theories and therefore have failed to state a claim.

### 1.   **False Statements**

As discussed above in Part I(C)(1), to state a claim for breach of duty based on allegedly false or misleading statements—a *Malone* claim—a plaintiff must allege that the defendant "knowingly disseminat[ed] materially false information."  *Malone*, 722 A.2d at 14. The burden "is similar to, but even more stringent than, the level of scienter required for common law fraud." *Metro Commc'n Corp. BVI* , 854 A.2d at 157–58.

We further showed that Plaintiffs failed to allege that any of the Outside Directors faces a substantial risk of liability for breach of fiduciary duty on the basis of false statements, because none of the Complaints contain any non-conclusory factual allegations that these defendants "knowingly disseminat[ed] materially false information."  *Malone*, 722 A.2d at 14. Rather, the Complaints merely state that Defendants "allowed," "authorized," or "permitted" the statements to be disseminated or signed public filings containing the challenged disclosures. (Nordstrom Compl. ¶ 130; Merholz Compl. ¶ 214; Kooi Compl. ¶ 87.)  Under well-settled law, such conclusory assertions are also insufficient to state a *Malone* claim under rule 12(b)(6). *Gearren v. The McGraw-Hill Companies, Inc.*, 660 F.3d 605, 611 (2d Cir. 2011) (breach of fiduciary duty claim was not well pled under Rule 12(b)(6) where all plaintiffs alleged was that the defendants "knew or should have known of the material misrepresentations").

Moreover, to the extent any of the other Defendants named in the Complaints are sued in their capacity as Directors, Plaintiffs must allege "intentional dereliction of duty" or "a conscious disregard for one's responsibilities," because of WWE's section 102(b)(7) provision.  *See, e.g.*, *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 62 (Del. 2006).  Plaintiffs

have not done so here.  Rather, they merely state, in a conclusory fashion, that the directors'

actions were "knowing and culpable," and involved "the absence of good faith."  (Merholz

Compl. ¶ 177).

       Finally, to the extent Plaintiffs assert *Malone* claims against any Defendants in

their capacity as Officers, those claims fail because Plaintiffs have not alleged that they

"knowingly disseminat[ed] materially false information."  *Malone*, 722 A.2d at 14.  Rather,

Plaintiffs merely allege that, by virtue of their roles, defendants Barrios, Wilson, V. McMahon,

S. McMahon, Levesque, and Riddick had "knowledge of material, non-public information

regarding the Company."  (Kooi Compl. ¶ 34.)  Because none of the Complaints provide facts

showing that these Defendants sued in their capacity as Officers knowingly disseminat[ed]

materially false information," these claims fail.

      **2.**    <u>**Oversight Duties**</u>

       As discussed above in Part I(C)(1), for a *Caremark* claim, Plaintiffs must allege

that (i) "the directors utterly failed to implement any reporting or information system or

controls"; or (ii) "having implemented such a system or controls, [the directors] consciously

failed to monitor or oversee its operations thus disabling themselves from being informed of

risks or problems requiring their attention."  *Stone ,* 911 A.2d at 370.

       We also showed that the Complaints lack any allegations demonstrating that the

Defendants, acting in their roles as Directors, "utterly failed" to fulfill their oversight

responsibilities.  Instead, the Complaints confirmed that they provided an oversight structure by,

among other things, establishing an Audit Committee (Merholz Compl. ¶¶ 12, 15, 16, 22, 212,

214; Kooi Compl. ¶¶ 19, 21, 26, 31, 35–37, 86, 87; Nordstrom Compl.  ¶¶ 32, 33, 42, 45, 58, 66,

69, 150, 151) and issuing a Code of Ethics for directors, which included a duty to report any

violations of law (Nordstrom Compl.¶¶ 58, 63, 66).

Nor can Plaintiffs assert *Caremark* claims against any of the Defendants in their capacities as Officers, because such claims can only be asserted against Directors.  *In re Bridgeport Hldgs., Inc.*, 388 B.R. 548, 574 (D. Del. 2008) ("[U]nder Delaware law, this [*Caremark*] theory of liability typically applies to directors, and not to officers.")  The Delaware General Corporation Law expressly vests the management and affairs of the corporation in its board of directors.  8 *Del. C.* § 141(a); *Citigroup*, 964 A.2d at 125 ("The Delaware Supreme Court made clear in *Stone*  that directors of Delaware corporations have certain responsibilities to implement and monitor a system of oversight . . . .").  The responsibility for implementing and monitoring compliance systems thus belongs to the board alone.  For this reason, *Caremark* claims cannot be asserted against officers acting in their capacities as officers.  *See Collins & Aikman Corp. v. Stockman*, Civ. No. 07-265, 2009 WL 1530120, at *24 (D. Del. May 20, 2009) (holding that "the *Caremark* theory of liability d[id] not apply" to officers who were sued in their capacities as officers), *report and recommendation adopted in relevant part, rejected in part on other grounds by* 2009 WL 3153633 (D. Del. Sept. 30, 2009).

### B.      The Complaints Fail to State a Claim for Waste of Corporate Assets

As discussed in detail in Part I(C)(2), corporate waste claims require "an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade."  *White v. Panic*, 783 A.2d 543, 554 (Del. 2001).  Plaintiffs' waste claims are subject to the heightened pleading standard of Rule 9(b).  *Stern v. General Elec. Co.*, 924 F.2d 472, 476 (2d Cir. 1991).  Here, they have not alleged any facts that come close to meeting this standard.

As discussed previously, any claim for corporate waste brought against Defendants in their capacities as Directors fails because Plaintiffs have not alleged knowing, intentional misconduct.

Plaintiffs' allegations against Defendants brought in their capacities as Officers similarly fail under Rule 9(b).[11]  *First*, Plaintiffs' allegation that these Defendants received "excessive" compensation is wholly conclusory.  (Merholz Compl. ¶ 224.)  As the court explained in *Kandell ex rel. FXCM, Inc. v. Niv*,, "allegations that compensation is 'excessive or even lavish . . . are insufficient as a matter of law to meet the standard required for a claim of waste.'"  C.A. No. 11812, 2017 WL 4334149, at *15 (Del. Ch. Sept. 29, 2017).

Plaintiffs also point to allegedly "self-interested stock options" received by certain Defendants as a sign of corporate waste.  (Merholz Compl. ¶¶ 189, 195, 205, 224.)  But "corporate boards have broad discretion to set executive compensation, and courts rarely second-guess directors' compensation and severance decisions because the size and structure of executive compensation are inherently matters of judgment."  *In re Am. Int'l Grp., Inc. Derivative Litig.*, 700 F. Supp. 2d 419, 443 (S.D.N.Y. 2010), *aff'd*, 415 F. App'x 285 (2d Cir. 2011).  Plaintiffs have failed to meet their burden of pleading that any such awards were excessive, undeserved, or irrational.  *See, e.g.*, *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 75 (Del. 2006).  As to the non-officer Directors, Plaintiffs do not allege that any of them received any incentive-based or other stock options during the relevant time period, which is confirmed by the Company's proxy statements.  (Schedule 14-A, filed March 6, 2020 (the "2020 Proxy Statement"), at 31-32.)  As to the Officer Directors, Plaintiffs make no particularized allegations explaining how their compensation and stock options are excessive, undeserved, or out of step with previous years, much less the product of an irrational business decision.

---

[11]   Even if Rule 9 did not apply here, Plaintiffs' allegations would fall short of the more forgiving *Twombly* standard.

*Second*, Plaintiffs do not allege with particularity that any Defendant's actions resulted in legal liability or caused the Company to overpay for WWE's own stock during the period when Plaintiffs claim the stock price was inflated.  With respect to legal liability, as explained earlier, Plaintiffs have not demonstrated that the amounts the Company agreed to pay were "so enormous" in comparison to the "potential liability that no one of sound mind would have agreed" to pay.  *Boeing Co. v. Shrontz*, Civ. A. No. 11273, 1992 WL 81228, at *4 (Del. Ch. Apr. 20, 1992).  Nor have Plaintiffs succeeded in showing that the Company's stock repurchase program was "so egregious or irrational" as to constitute corporate waste.  *Staehr v. Mack*, No. 07 Civ. 10368, 2011 WL 1330856, at *9 (S.D.N.Y. Mar. 31, 2011).

For all of these reasons, the Complaints fail to state a claim for corporate waste.

## C.    The Complaints Fail to State a Claim for Unjust Enrichment[12]

Plaintiffs' unjust enrichment claims are based on the same allegations that Plaintiffs offer in support of their breach of fiduciary duty claims.  (*See, e.g.*, Merholz ¶¶ 227-232; Kooi Compl. ¶¶ 97-102; Nordstrom Compl. ¶¶ 160-164.)  As such, those allegations are incapable of supporting an unjust enrichment claim for the same reason they do not state a claim of breach of fiduciary duty.  *See Calma on Behalf of Citrix Sys., Inc. v. Templeton*, 114 A.3d 563, 591 (Del. Ch. 2015) (*quoting Frank v. Elgamal,* 2014 WL 957550, at *31 (Del. Ch. Mar. 10, 2014)) ("At the pleadings phase, an unjust enrichment claim that is entirely duplicative of a breach of fiduciary duty claim—*i.e.*, where both claims are premised on the same purported breach of fiduciary duty—is frequently treated 'in the same manner when resolving a motion to dismiss.'").

---

[12]    Kooi and Nordstrom allege unjust enrichment against all of the defendants; Merholz alleges it only against V. McMahon, Wilson, and Barrios.

These claims also fail because Plaintiffs have not identified any benefit that

Defendants unjustly received.  Under Delaware law, unjust enrichment consists of "(1) an

enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment,

(4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v.

Shrader*, 991 A.2d 1120, 1130 (Del. 2010).  The Complaints do not allege any benefit that the

Defendants received other than their ordinary compensation.  And it is well settled that "a claim

for unjust enrichment cannot be maintained where, as here the 'only enrichment alleged by

plaintiffs consists of defendants' salaries, benefits and unspecified bonuses.'" *Steinberg v.

Dimon*, No. 14 Civ. 688, 2014 WL 3512848, at *4 (S.D.N.Y. July 16, 2014) (citation omitted).

In short, there is no "legal authority supporting the proposition that the mere retention of

directors' and officers' ordinary compensation can sustain an unjust enrichment claim predicated

on allegations that these defendants breached their fiduciary duties." *In re Pfizer Inc. S'holder

Derivative Litig.*, 722 F. Supp. 2d 453, 465-66 (S.D.N.Y. 2010).  Accordingly, Plaintiffs have

failed to state a claim for unjust enrichment against any Defendant.

### D.     The Kooi Complaint Fails to State a Claim for Insider Selling

The Kooi Complaint alleges that three Defendants—Barrios, Wilson, and

V. McMahon—engaged in improper stock sales and thereby breached their fiduciary duty of

loyalty under *Brophy v. Cities Service Co.*, 70 A.2d 5 (Del. Ch. 1949).  (Kooi Compl. ¶¶ 75-80.)

To state a *Brophy* claim, the plaintiff must allege facts sufficient to show that "(1) 'the corporate

fiduciary possessed material, nonpublic information'; and (2) 'the corporate fiduciary used that

information improperly by making trades because she was motivated, in whole or in part, by the

substance of that information.'" *Tilden v. Cunningham*, C.A. No. 2017-0837, 2018 WL

5307706, at *19 (Del. Ch. Oct. 26, 2018) (*quoting In re Oracle Corp.*, 904, 934 (Del. Ch. 2004));

*see also Brophy*, 70 A.2d at 8 (a person "in a confidential or fiduciary position, [who,] in breach of his duty, uses his knowledge to make a profit for himself . . . is accountable for such profit."). And, Plaintiff's factual allegations must satisfy *Twombly*'s plausibility standard. *See Johnson v. Nextel Commc'ns, Inc.,* 660 F.3d 131, 138 (2d Cir. 2011) (applying *Twombly* to a complaint alleging breach of the duty of loyalty). The Kooi Complaint fails to plausibly allege either of the two required elements.

  *First*, the Kooi Complaint does not properly allege that Barrios, Wilson, and V. McMahon possessed specific material, nonpublic company information at the time of their stock sales. Kooi makes only conclusory allegations that, as Officers and Directors, these Defendants had "access, directly or indirectly, to material information about WWE not generally available to the public." (Kooi Compl. ¶ 104.) These allegations are far too imprecise and general to satisfy the legal standard. *See In re Forest Labs., Inc. Deriv. Litig.*, 450 F. Supp. 2d 379, 390 (S.D.N.Y. 2006) (applying Delaware law and finding directors did not have inside information when the "Complaint [did] not identify any types of reports, studies, or analyses made available to the Board, or board meeting minutes reflecting conversations from which the Court may infer that the Outside Directors had actual knowledge of . . . alleged inside information.").

  *Second*, the Kooi insider selling allegations fail for the separate reason that they do not allege the stock sales were made with the requisite scienter. The complaint does not provide "facts to support a reasonable inference that 'each sale by each individual defendant was entered into and completed *on the basis of, and because of*, adverse material non-public information.'" *Tilden*, 2018 WL 5307706, at *20 (internal citation omitted). As the Kooi Complaint acknowledges, the sale by Barrios was made pursuant to a pre-existing Rule 10b5-1

trading plan (Kooi Compl. ¶ 79), which negates any inference of scienter.  *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 585 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) ("Trades made pursuant to a Rule 10b5-l trading plan do not give rise to a strong inference of scienter.")

As to V. McMahon and Wilson, Kooi does not plead facts to support the inference that they entered into the sale *on the basis of* adverse material nonpublic information.  Rather, the Kooi Complaint merely alleges, in a conclusory fashion, that the Defendants "sold WWE stock at a time when they knew material information about WWE which would have significantly affected the market price of WWE's common stock and was not generally available to the public."  (Kooi Compl. ¶ 105.)  But "temporal proximity alone" is "insufficient to support an inference of scienter that will survive a motion to dismiss."  *In re Clovis Oncology, Inc. Derivative Litig.*, No. CV 2017-0222-JRS, 2019 WL 4850188, at *15 (Del. Ch. Oct. 1, 2019).  Kooi thus fails to allege facts supporting any plausible inference that Wilson or V. McMahon's stock sales were motivated by the alleged material, nonpublic information.

E.    **The Merholz Complaint Fails to State a Claim for Violations of Sections 10(b) and 20(a) of the Exchange Act**

Plaintiffs Merholz and Klein claim Defendants[13] violated section 10(b) of the Exchange Act and SEC Rule 10b-5 by failing to disclose that (i) OSN informed WWE in November 2018 that it intended to terminate the media rights agreement prior to its expiration date, and (ii) a new MENA media rights agreement would not be completed in 2019.  (Merholz Compl. ¶¶ 126, 234.)  Plaintiffs also claim that V. McMahon violated section 20(a) of the

---

[13]   Gottesman is not a Defendant in the Merholz Complaint.  No Plaintiff claims Gottesman violated sections 10(b) or 20(a) of the Exchange Act.

Exchange Act by virtue of his role as a senior executive and Chairman of the Board.  (*Id.* ¶ 243.) The factual allegations as to both claims are insufficient.

To state a claim for securities fraud under section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, a plaintiff must adequately allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008).  Such claims are subject to the heightened pleading requirements of Rule 9(b) and the PSLRA, which require plaintiffs to "do more than say that the statements [at issue] were false and misleading; they must demonstrate with specificity why and how that is so." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004).

The PSLRA further requires that a complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u–4(b)(2)(A).  When the allegations involve forward-looking statements, a plaintiff must plead facts supporting a strong inference that the defendants acted with actual knowledge. 15 U.S.C. § 78u-5; *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 773, 776 & n.9 (2d Cir. 2010).  To state a claim for control person liability under section 20(a) of the Exchange Act, a plaintiff must allege "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

Plaintiffs have failed to state a claim under section 10(b) or 20(a) of the Exchange Act because the Complaint does not allege with particularity that Defendants made any material

misstatements or omissions, that Defendants acted with scienter, that Plaintiffs relied on the alleged statements, or that Plaintiffs suffered economic loss.

1.      **The Outside Directors**

As discussed previously in Part I(C)(4), Plaintiffs cannot show a substantial likelihood of personal liability for securities fraud by the Outside Directors because Plaintiffs do not allege that any Outside Director made any of the statements at issue, *see Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011), and because Plaintiffs do not allege facts supporting a strong inference that the Outside Directors acted with the requisite scienter, *see* Merholz Compl. ¶¶ 147-165 (allegations concerning "Defendants' Knowledge" make no mention of the Outside Directors).  Plaintiffs' allegations as to the Outside Directors are deficient for the same reasons under the pleading standards of Rule 9(b) and the PSLRA.  *See Rombach*, 355 F.3d at 174.

2.      **Defendants Sued In Their Capacity As Officers**

As to the Defendants sued in their capacity as Officers, Plaintiffs fail to allege with particularity (a) any material misstatements or omissions, (b) scienter, (c) Plaintiffs' reliance on the alleged statements, or (d) that Plaintiffs suffered injury.  Thus, Plaintiffs fail to state a claim under sections 10(b) and 20(a) of the Exchange Act.  In addition to the 2018 Form 10-K addressed above in Part I(C)(4), Plaintiffs claim that certain statements contained in Company press releases or made by V. McMahon, Barrios, or Wilson at investor conferences were misleading because they allegedly omitted details on the status of WWE's MENA media rights agreement.  The Complaint fails to plead that these statements violated section 10(b).

> (a)   **S. McMahon, Levesque, and Riddick Did Not "Make" the Challenged Statements**

Plaintiffs do not state a section 10(b) claim against Defendants S. McMahon, Levesque, and Riddick because the Complaint does not allege they "made" any of the challenged statements.  (Merholz Compl. ¶¶ 94-135 (list of purported material false or misleading statements does not include statements by S. McMahon, Levesque, or Riddick).)   Indeed, the only connection Plaintiffs allege between those Defendants and any of the allegedly false statements is that those Defendants signed the 2018 Form 10-K.  But, as discussed above in I(C)(4), Plaintiffs fail to plead with particularity that the 2018 Form 10-K contains any misleading statements and Plaintiffs cannot state a section 10(b) claim based on statements made by others.  *See In re JPMorgan Chase & Co. Sec. Litig.*, No. 12 Civ. 03852, 2014 WL 1297446, at *10 (S.D.N.Y. Mar. 31, 2014) (defendants who did not make statements on conference calls cannot be liable for them under *Janus*).  Nor can they be held liable based on statements in press releases for which Plaintiffs have not alleged with particularity that S. McMahon, Levesque, or Riddick were involved in drafting or reviewing, as "a theory of liability premised on treating corporate insiders as a group cannot survive a plain reading of the *Janus* decision."  *In re UBS AG Sec. Litig.*, No. 07 Civ. 11225, 2012 WL 4471265, at *10 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014).  For these reasons the section 10(b) claims as to S. McMahon, Levesque, and Riddick should be dismissed.

> (b)   **The Challenged Statements Were Not False or Misleading.**

Plaintiffs do not plead particularized facts demonstrating why or how any of the challenged statements was materially false or misleading at the time they were made.  Under Rule 9(b), a plaintiff "must do more than say that the statements . . . were false and misleading;

they must demonstrate with specificity why and how that is so." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004). The Complaint lacks such specificity, as it nowhere explains why and how the challenged statements were misleading so as to "create[] an impression of a state of affairs at the Company that differed in a material way from the one that actually existed." (Merholz Compl. ¶ 94.)

       *First*, the Complaint asserts that the Company's 2018 Form 10-K and subsequent statements were misleading because they did not disclose that WWE's MENA media rights agreement with OSN was scheduled to terminate at the end of March 2019, which purportedly "put in serious jeopardy the ability to finalize a media-rights agreement for the MENA region by the end of 2019." (*Id.* ¶¶ 101, 105, 107.) The Complaint does not allege with particularity that, when these statements were made, they were false because of the alleged omission. Rather, the Complaint offers only conclusory allegations that Defendants knew "that negotiating a *brand new* agreement with a *new* provider, would take time, and would not be completed by the end of 2019." (*Id.* ¶ 86) (emphases in original.) The Complaint never attempts to explain "why and how" any of the Defendants—let alone all of them—knew or should have known in February or July of 2019 that no media rights agreement would be completed in 2019.

       Instead, Plaintiffs' case is premised entirely on the circular reasoning that because no MENA media rights deal was completed in 2019, the challenged statements must have been misleading for omitting any reference to the OSN termination. This theory does not support a viable fraud claim. *See In re Synchrony Fin. Sec. Litig.*, 2020 WL 1531297, at *24 (D. Conn. Mar. 31, 2020) (Bolden, J.) ("[D]efendants' lack of clairvoyance [regarding a key contract renewal] simply does not constitute securities fraud." (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995)), *appeal docketed* (Apr. 24, 2020); *Acito v. IMCERA Grp., Inc.*, 47

F.3d 47, 53 (2d Cir. 1995) (finding no duty to disclose where "one cannot infer that it was a 'foregone conclusion' that . . . adverse consequences would ensue").[14]

 *Second*, the Complaint alleges that in July 2019, after the Company disclosed that its "pay TV agreement" in the Middle East "ha[d] been terminated" (Merholz Compl. ¶ 114), a Company press release stating the Company "believe[d] it ha[d] agreements in principle with the Saudi General Sports Authority on the broad terms" was misleading.  (*Id.* ¶ 109.)  This statement is not actionable because the use of the word "believe" renders the statement an opinion, which is not actionable under the federal securities law.[15]  *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015).[16]

### (c) The PSLRA's Safe Harbor Applies to the Challenged Statements

 The PSLRA provides a safe harbor for statements that are "forward-looking" when either (a) plaintiff has failed to allege with specificity that the person making the statement had actual knowledge it was misleading or (b) they are accompanied by meaningful cautionary statements.  15 U.S.C. § 78u-5; *Porwal v. Ballard Power Sys., Inc.*, No. 18 Civ. 1137, 2019 WL

---

[14] *See also Freedman v. Value Health, Inc.*, Nos. 3:95-cv-2038 JCH, 3:97-cv-2711, 2000 WL 630916, at *5 (D. Conn. Mar. 24, 2000) ("The fact that the defendants were mistakenly optimistic that the . . . contract could be renegotiated does not make their statements to that effect fraudulent."); *Constr. Laborers Pension Tr. for S. California v. CBS Corp.*, 433 F.Supp.3d 515, 538 (S.D.N.Y. Jan. 15, 2020) ("An increase in a risk does not mean the risk has already come to pass, such that a disclosure that simply identifies the risk would be misleading.").

[15] Moreover, the Company cautioned that "this understanding is nonbinding."  (Merholz Compl. ¶ 109.)

[16] *See also City of Warren Police & Fire Ret. Sys. v. World Wrestling Entertainment, Inc.*, No. 20-cv-2031, 2020 WL 4547217, at *7 (S.D.N.Y. Aug. 6, 2020) (use of "believe" renders the statement an opinion and can only form the basis of a plaintiff's claim if the plaintiff "can identify particular (and material) facts going to the basis for the issuer's opinion ... whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context.").  As described in detail above, the court in the Securities Action analyzed this statement in the context of allegations concerning the state of the Company's relationship with Saudi Arabia; Plaintiffs do not make those allegations here.

1510707, at *6 (S.D.N.Y. Mar. 21, 2019).  While Defendants need satisfy only one of those prongs, both are met here.

*First*, all of the allegedly misleading statements that "[the Company] believe[s] [it has] agreements in principle with the Saudi . . . General Sports Authority on the broad terms" (Merholz Compl. ¶ 113) and expected "to be close to announcing . . . deals [in MENA and India] very soon" (*id.* ¶ 110) were forward-looking, because they relate to target and anticipated financial metrics, expectation and timing of a potential deal, and overall confidence and optimism in the future.  *See* 15 U.S.C. § 78u-5(i)(1); *In re Sanofi Securities Litigation*, 87 F. Supp. 3d 510, 535 (S.D.N.Y. Jan. 28, 2015) (statements expressing optimism for FDA approval are "classically forward-looking—they address what defendants expected to occur in the future"); *Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 143 (2d Cir. 2010) ("A forward-looking statement (accompanied by cautionary language) expresses the issuer's inherently contingent prediction of risk or future cash flow. . . .").  Moreover, these statements included cautionary language specifying that "this understanding [concerning an "agreement in principle" was] nonbinding."  (Merholz Compl. ¶ 113.)

*Second*, Plaintiffs fail to allege facts supporting a strong inference that Defendants had actual knowledge the statements were misleading for the reasons described in Part III(E)(2)(d).

*Third*, the safe harbor is independently applicable here because all of the forward-looking statements were accompanied by meaningful cautionary language that "convey[ed] substantive information about factors that realistically could cause results to differ materially from projections."  *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 771 (2d Cir. 2010).  The Company prominently and meaningfully disclosed relevant risks in each allegedly misleading statement,

highlighting "risks relating to entering into, maintaining and/or renewing key agreements, uncertainties associated with international markets and risks inherent in large live events." *See, e.g.*, Anderson Decl. Ex. 6 (1Q19 Release).  Such cautionary language is more than sufficient to invoke the PSLRA safe harbor.  *See Slayton*, 604 F.3d at 769 (cautionary statement sufficient for safe harbor when couched in "common-sense proposition[s] that words such as 'expect' identify forward-looking statements.").  *Cf. In re Synchrony*, 2020 WL 1531297, at *20 (concluding statements were not materially misleading when evaluated in their totality and with cautionary language); *In re Delcath Sys., Inc. Sec. Litig.*, 36 F. Supp. 3d 320, 327, 333-34 (S.D.N.Y. 2014) (concluding that optimistic statements about FDA approval were nonactionable when company consistently gave warnings that FDA might not approve the product and did not express certainty).

### (d)  The Complaint Does Not Plead Scienter with Particularity

The Complaint does not include sufficient allegations to satisfy the PSLRA's requisite "strong inference" of scienter as to any Defendant.  To meet the burden to allege a "strong inference" of scienter, Plaintiffs must show either "(1) . . . motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).  Recklessness means "conscious recklessness—*i.e.*, a state of mind approximating actual intent, and not merely a heightened form of negligence."  *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (quotations and emphasis omitted).  Plaintiffs do not attempt to plead scienter by alleging motive and opportunity, but rather claim "Defendants acted with scienter in that they knew" the challenged statements were misleading.  (Merholz Compl. ¶ 235.)  Where, as here, "motive is not apparent . . . the strength of the circumstantial allegations must be correspondingly

greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).  The Complaint does not meet this standard.

As to S. McMahon, Levesque, and Riddick, the Complaint is devoid of allegations sufficiently particularized to support a strong inference of scienter.  (*See* Merholz Compl. ¶¶ 147-165 (allegations concerning "Defendants' Knowledge" make no mention of these Defendants).)  Plaintiffs rely solely on assertions that Defendants "had to have known" due to their "positions of control and authority as senior officers and directors" and argue that they therefore must have known about the allegedly omitted "facts."  (*Id.* ¶¶ 150, 161, 213.)  This allegation is not sufficient.  *See Johnson v. NYFIX, Inc.*, 399 F. Supp. 2d 105, 115 (D. Conn. 2005); *see also supra* I(C)(4).

Plaintiffs also repeat the generalized—and insufficient—allegations that "the problems detailed herein could not have occurred without Defendants' knowledge" (Merholz Compl. ¶ 151), and add allegations concerning stock sales (*id.* ¶¶ 152-153, 156, 157) and abrupt executive departures (*id.* ¶ 136).  These allegations fair no better.

*First*, Plaintiffs' allegations regarding stock sales by V. McMahon, Barrios, and Wilson are insufficient to support a strong inference of improper motive.  To support such an inference, "plaintiffs must establish that the stock sales . . . were 'suspicious' or 'unusual.'"  *In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 344 (S.D.N.Y. 2008); *see also Acito v. Imcera Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (scienter insufficiently pled where stock sale by a single insider was not "unusual").  Plaintiffs have failed to meet their burden here because facts of which the Court may take notice establish that these sales were not "unusual" or "suspicious," as demonstrated by publicly-available securities filings:

- Barrios' sales were made pursuant to a 10b5-1 plan entered before the relevant period, *see* Anderson Decl. Ex. 7 (Barrios Form 4), and are thus conclusively

not indicative of fraud.  *See Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 592 (S.D.N.Y. 2011); *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 272 (S.D.N.Y. 2009).

- V. McMahon's single stock sale was contemporaneously disclosed to investors as being made specifically so that he could fund the creation of the XFL sports league.  *See* Anderson Decl. Ex. 8 (WWE Form 8-K (Mar. 27, 2019)).  This presents a more plausible competing inference.  *See Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) ("[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences.").  Further, Plaintiffs allege that V. McMahon's sale constituted a relatively small percentage (approximately 10.1%) of his total holdings (Merholz Compl. ¶ 152), and he continued to own approximately 36.8% percent of WWE's outstanding stock even after the purportedly suspicious sale.  *See* Anderson Decl. Ex. 8 (WWE Form 8-K (Mar. 27, 2019)).  Allegations of sales of a relatively small percentage of total ownership (like here) are insufficient to plead scienter.  *See Acito*, 47 F.3d at 54 (sale of less than 11% of holdings was not indicative of scienter); *Koplyay v. Cirrus Logic, Inc.*, No. 13 Civ. 790, 2013 WL 6233908, at *5 (S.D.N.Y. Dec. 2, 2013) (sales of 10 to 14% of holdings represented "only a small fraction of [defendants'] total beneficial ownership"); *Gildan*, 636 F. Supp. 2d at 271 (sale of 22.5% was not indicative of scienter).  *Cf. Glaser*, 772 F. Supp. 2d at 593 ("It defies reason that an entity looking to profit on a fraudulently inflated stock price would hold close to ninety percent of its shares as share prices fell, while knowing that the information illuminating the fraud was seeping into the market.") (emphasis omitted).

- Wilson's single sale in the relevant period is entirely consistent with her sales in prior periods (which took place in/around August every year).  For example, in the year just before the relevant period, Wilson made a near-identical sale with total proceeds of over $11.2 million (comprising 39 percent of her holdings) in the same month.[17]  *See In re Lululemon Securities Litig.*, 14 F. Supp. 3d 553, 586 (S.D.N.Y. 2014) (no inference of scienter where defendant "had an established practice of exercising stock options as they vested and selling a matching number of shares on a quarterly basis.").

*Second*, Plaintiffs' related bare allegations regarding Defendants Barrios and

Wilson's "abrupt departures" from the Company do not support an inference of scienter.

(Merholz Compl. ¶ 147(d).)  "While resignations can sometimes support an inference of scienter,

---

[17]     *See* Anderson Decl. Ex. 9 (Form 4 (08/01/18)); *see also* Anderson Decl. Ex. 10 (Form 4 (08/07/15)) (sold 25,000 shares); Anderson Decl. Ex. 11 (Form 4 (08/19/16)) & Ex. 12 (Form 4 (08/22/16)) (sold 40,000 shares); Anderson Decl. Ex. 13 (Form 4 (08/03/17)) (sold 55,000 shares, total proceeds over $1.168 million).

they must be 'highly unusual and suspicious' to do so." *City of Birmingham Firemen's & Policemen's Supplemental Pension Sys. v. Ryanair Holdings plc*, No. 18-cv-10330, 2020 WL 2834857, at *5 (S.D.N.Y. June 1, 2020).  Plaintiffs here offer nothing more than the bare allegation of the departures, which they characterize as suspicious.  They "pleaded no specific facts that indicate that the resignation was somehow tied to the fraud alleged," and "[a]bsent such evidence," Barrios and Wilson's departures "lend[] no support to a strong inference of scienter." *Id.*  (internal quotation and citation omitted).

### (e)     The Complaint Does Not Plead Reliance with Particularity

Plaintiffs purport to sue on behalf of WWE based on its stock repurchase plans. (Merholz Compl. ¶ 173.)  However, if WWE's directors and executives knew the allegedly omitted information (as Plaintiffs claim), then such knowledge is imputed to WWE (the purchaser of the stock), which thus precludes any claim that the purchaser was misled.  *See Maldonado v. Flynn*, 597 F.2d 789, 793 (2d Cir. 1979) ("[A]pproval of the transaction by a disinterested majority of the board possessing authority to act and fully informed of all relevant facts will suffice to bar a Rule 10b-5 claim that the corporation or its stockholders were deceived."); *cf. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005) (plaintiff must allege that "but for the claimed misrepresentations or omissions, the [company] would not have entered into the detrimental securities transaction") (internal citation and quotation omitted).

Given Plaintiffs' allegation that the Board authorized the repurchase plan with knowledge of WWE's alleged precarious situation in the MENA region (Merholz Compl. ¶¶ 147, 166-172), it necessarily follows that the Company was not deceived into repurchasing its stock by the purported nondisclosures.  *See Kaplan v. Bennett*, 465 F. Supp. 555, 566 (S.D.N.Y. 1979) ("Conceptually, plaintiffs' claim that all the individual defendants are liable for defrauding

the corporation is inconsistent with a determination that the corporation was deceived; some of those charged with knowledge of the wrongs would have had to be deceived about those wrongs if the corporation were likewise to be deemed deceived.").  Plaintiffs have therefore failed to plead reliance on the alleged misstatements by the purchaser.

**(f)      The Complaint Does Not Plead Loss Causation with Particularity**

Plaintiffs allege that Defendants' failures to disclose and misstatements caused WWE to "repurchase the Company's common stock at artificially inflated prices, which fell as the true condition of the Company's business in Saudi Arabia and the MENA region was revealed."  (Merholz Compl. ¶ 164.)  Loss causation "is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lentell*, 396 F.3d at 172 (internal quotation marks omitted).  A plaintiff may support loss causation "either by alleging (a) the existence of cause-in-fact on the ground that the market reacted negatively to a corrective disclosure of the fraud; or (b) . . . that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232-33 (2d Cir. 2014) (internal quotation marks omitted).  Plaintiffs fail to do either.

*First*, the Complaint fails to adequately allege corrective disclosures.  Plaintiffs' purported corrective disclosures amount to nothing more than permissible updates on the Company's negotiations, previously discussed expectations, and financial projections. (*See* Merholz Compl. ¶ 119 (lowering guidance for FY2019 and updating about a "delay in completing a previously contemplated agreement . . . and the impact of accelerated investment to support content creation); *id*. at ¶ 120-25 (same); *id*. at ¶ 139-46 (updating again on February 6, 2020, in part, about a "delay in completing a Middle East distribution agreement" and a decrease

46

in WWE's average paid subscriber base).)  None of these disclosures were "corrective" because none "reveal[ed] to the market that [WWE's] prior statements were not entirely true or accurate."  *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 283 (S.D.N.Y. 2008).  Plaintiffs themselves recite that the February 6, 2020 statements were expressly made as "an addition to their [previous] guidance."  (Merholz Compl. ¶ 141.)

      *Second*, the Complaint fails to allege materialization of the allegedly concealed risk.  A materialization of the risk analysis proceeds on the premise that a "misstatement or omission is the 'proximate cause' of an investment loss if the risk that caused the loss was within the zone of risk concealed by the misrepresentations and omissions alleged by a disappointed investor."  *Lentell*, 396 F.3d at 173.  No such link exists here.

      The Company's public statements prominently and repeatedly disclosed the risks associated with its negotiations of media rights deals and the specific uncertainties associated with negotiations in international markets.  These meaningful disclosures render Plaintiffs' asserted non-disclosures incapable of concealing a risk that WWE had expressly disclosed.  As Plaintiffs themselves allege, the FY2018 Form 10-K identified that the Company's "failure to maintain or renew key agreements could adversely affect our ability to distribute our media content, WWE Network, our films and/or other of our goods and services, which could adversely affect our operating results. . . .  Our inability for any of the reasons set forth in these Risk Factors to maintain and/or renew or replace these agreements on terms favorable to us could adversely affect our financial outlook, liquidity, business and/or operating results."  (Merholz Compl. ¶ 100.)

      Based on this and other such disclosures, "substantial indicia of the risk that materialized are unambiguously apparent on the face of the disclosures alleged to conceal the

very same risk[.]" *Lentell*, 396 F.3d at 177 (2d Cir. 2005). Plaintiffs therefore have failed to

allege "facts sufficient to support an inference that it was defendant's fraud—rather than other

salient factors—that proximately caused plaintiff's loss" or "facts sufficient to apportion the

losses between the disclosed and concealed portions of the risk." *Id.*

        This is especially true given each of Plaintiffs' potential materializations included

negative financial information likely much more important to the market. (*See* Merholz Compl.

¶ 119 (WWE announced reduced OIBDA was "attributable to the delay in completing a

previously contemplated agreement in the MENA region and *the impact of accelerated*

*investment to support content creation*") (emphasis added); *id.* at ¶ 90 (alleging WWE disclosed

that "engagement metrics had continued to deteriorate in the fourth quarter," and stating WWE

was "at the low-end of guidance" due to "delay in completing a Middle East distribution

agreement *as well as lower business performance than anticipated*") (emphasis added).)

        Plaintiffs offer no particularized allegations explaining how or why this additional

financial information, rather than disclosures concerning the MENA rights deal, drove the stock

price declines, precluding the required proximate cause link between the alleged misconduct and

injury. *See Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007) (holding

plaintiffs failed to allege "facts to show that [defendant's] misstatements, among others . . . that

were much more consequential and numerous, were the proximate cause of plaintiffs' loss" nor

sufficient facts to "ascribe some rough proportion of the whole loss to [defendant's]

misstatements.").

      **3.**    <u>**The Complaint Fails to State a Claim for a Violation of Section 20(a)**</u>
                <u>**of the Exchange Act**</u>

        Plaintiffs' section 20(a) claims against V. McMahon also fail. In order to state a

claim under section 20(a), "a plaintiff must show a primary violation by the controlled person

48

and control of the primary violator by the targeted defendant," and "show that the controlling

person was in some meaningful sense [a] culpable participant[ ] in the fraud perpetrated by [the]

controlled person[ ]."  *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996).

Plaintiffs' section 20(a) claims fail because there is no primary violation, as demonstrated above.

Plaintiffs' section 20(a) claim is independently infirm for its lack of particularized allegations to

support that V. McMahon acted with scienter so as to be a "culpable participant."  *ATSI*, 493

F.3d at 108.

## CONCLUSION

For the reasons stated above, Plaintiffs have failed to satisfy their heavy burden to

plead that pre-suit demand was excused as futile, have failed to plead continuous and

contemporaneous stock ownership, and have failed to state a claim upon which relief can be

granted.  For any or all of those reasons, the Complaints should be dismissed with prejudice.

Dated: August 28, 2020

**DAY PITNEY LLP**

By: */s/ Jeffrey P. Mueller*
Jeffrey P. Mueller (ct27870)
242 Trumbull Street
Hartford, CT 06103
Telephone: (860) 275-0100
Fax: (860) 881-2625
Email: jmueller@daypitney.com

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**

Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Kramer (*pro hac vice*)
Richard C. Tarlowe (*pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000

Fax: (212) 757-3990
Email: twells@paulweiss.com
     dkramer@paulweiss.com
     rtarlowe@paulweiss.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

Justin Anderson (*pro hac vice*)
2001 K Street, NW
Washington, DC 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
Email: janderson@paulweiss.com


**K&L GATES LLP**

Jerry S. McDevitt (*pro hac vice*)
Curtis B. Krasik (*pro hac vice*)
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Telephone: (412) 355-6500
Fax: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
     curtis.krasik@klgates.com

**K&L GATES LLP**

Stephen G. Topetzes (*pro hac vice*)
Theodore L. Kornobis (*pro hac vice*)
1601 K Street, NW
Washington, DC 20006
Telephone: (202) 628-1700
Fax: (202) 778-9100
Email: stephen.topetzes@klgates.com
     ted.kornobis@klgates.com


*Attorneys for Defendants Vincent K. McMahon, George A. Barrios, Michelle D. Wilson, Stephanie McMahon, Paul Levesque, Frank A. Riddick III, Stuart U. Goldfarb, Laureen Ong, Robyn W. Peterson, Man Jit Singh, Jeffrey Speed, Alan M. Wexler, and Patricia A. Gottesman, and for Nominal Defendant World Wrestling Entertainment, Inc.*