UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RYAN MERHOLZ, and MELVYN KLEIN, Derivatively On Behalf Of WORLD WRESTLING ENTERTAINMENT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> VINCENT K. MCMAHON, STEPHANIE MCMAHON, PAUL LEVESQUE, FRANK A. RIDDICK, III, STUART U. GOLDFARB, LAUREEN ONG, ROBYN W. PETERSON, MAN JIT SINGH, JEFFREY R. SPEED, ALAN M. WEXLER, GEORGE A. BARRIOS, and MICHELLE D. WILSON, <br><br> Defendants, <br><br> WORLD WRESTLING ENTERTAINMENT, INC., <br><br> Nominal Defendant. | Case No.: 3:20-cv-00557-VAB |

**PLAINTIFFS' RESPONSE TO MOTION TO INTERVENE**

Plaintiffs Ryan Merholz and Melvyn Klein ("Plaintiffs") respectfully submit this response to purported World Wrestling Entertainment, Inc. ("WWE" or the "Company") shareholder Dennis Palkon ("Proposed Intervenor") Motion for Leave to Intervene (the "Intervention Motion").[1]

**I.      INTRODUCTION**

---

[1] Another purported shareholder of WWE, Bernard Leavy ("Leavy"), has joined in the Intervention Motion.

The Intervention Motion is based on a single premise: that inspection of WWE's books and records pursuant to 8 Del. C. § 220 ("Section 220") is *necessary* to bring the above-captioned shareholder derivative actions (the "Actions"). It is not.

Delaware courts, along with countless federal and state courts across the country applying Delaware law, have regularly concluded that shareholders who did not pursue a books and records inspection pursuant to Section 220 prior to filing a derivative action had adequately alleged demand futility. A Section 220 inspection is by no means necessary. And at the same time, derivative cases brought under Delaware law have been routinely dismissed in Delaware and elsewhere for failure to sufficiently allege demand futility even when the plaintiffs did pursue inspections pursuant to Section 220.

As a threshold matter, the Proposed Intervenor's argument that Plaintiffs are somehow inadequate derivative plaintiffs because they elected to bypass an optional pre-suit inspection demand under Section 220 has been squarely denied by the very courts Proposed Intervenor relies on for the proposition that there is only one required way to proceed in a derivative action. The Delaware Supreme Court has specifically rejected the notion that shareholders who file derivative actions without first seeking books and records pursuant to Section 220 are inadequate derivative representatives. *Pyott v. Louisiana Mun. Police Emp. Ret. Sys.* 74 A.2d 612, 618.

According to the Intervention Motion, the Proposed Intervenor served an inspection demand pursuant to Section 220 on WWE on May 6, 2020 (the "220 Demand"). Mem. at 8. Despite a claim that WWE changed counsel in August 2020, the Proposed Intervenor previously had three months to execute a confidentiality agreement and receive the documents. It was not until Defendants' motion to dismiss was fully briefed and calendared for oral argument that Proposed Intervenor announced himself on the dockets of the Actions.

Moreover, the Actions *do* rely on primary sources from within WWE to plead that pre-suit demand is futile, including sworn testimony from WWE insiders. Those allegations, which do not require supplementation from a production of documents hand-picked by WWE, demonstrate clearly when WWE became aware of critical facts regarding the termination of its media rights agreement in the Middle East and, Plaintiffs believe, provide the requisite pleading stage inferences that pre-suit demand was excused. Critically, these same sworn documents also provided the foundation for the Honorable Jed S. Rakoff's decision denying WWE's motion to dismiss the related securities under the heightened pleading requirements of the Private Securities Litigation Reform Action. While Plaintiffs recognize that this Court has granted the motion to dismiss, Plaintiffs nonetheless believe they have a strong basis for their claims that pre-suit demand is futile. The additional documents produced by WWE to Proposed Intervenor do not apparently change the existing dynamic. That the Court recently found that the Actions did not adequately plead demand futility does not change this analysis. ECF No. 82. Plaintiffs are confident that if given the opportunity to amend, they will be able to cure the pleading deficiencies identified by the Court.

While the Proposed Intervenor and his counsel were determining what, if anything, they intended to do after serving the 220 Demand, Plaintiffs and their counsel were busy litigating the Actions against the Individual Defendants in the best interests of WWE. During the months of delay in Proposed Intervenor's Section 220 "investigation," Plaintiffs coordinated their efforts with the other Plaintiffs who filed actions and amended their complaints after receipt of non-public documents from WWE. Thereafter, the Plaintiffs with filed actions continued to coordinate their efforts and filed an omnibus opposition to both the Company's and the Individual Defendants' motion to dismiss. Plaintiffs' vigorous and effective prosecution of the Actions should lead the

Court to the only logical conclusion — that the Company's derivative claims are in good hands, those claims are being actively and zealously litigated by competent counsel, and the Proposed Intervenor and his counsel should not be permitted to delay the litigation of the instant Action.

Finally, despite a statement that the Intervention Motion seeks the appointment of lead counsel to govern the Actions, the memorandum of law does not address the factors governing the appointment of lead counsel. Instead, Proposed Intervenor attempts to have the relief granted solely through the Motion's proposed order. This relief, it is worth noting, includes the appointment of *four law firms* as lead counsel. See ECF 68-2 at ¶3. If Proposed Intervenor's multiple counsel belatedly wish to lead this litigation, they should file an action in this Court and move for this relief separate and apart from the Motion. Proposed Intervenor likely has not done so because while they waited for WWE to produce documents to them, WWE changed the composition of its Board of Directors by adding Directors, thus making a showing of that demand upon the Board is even more difficult.

## II.    ARGUMENT

### A. No Inspection is Required to Meet the Derivative Pleading Standard

The Intervention Motion emphasizes both the supposed need for, and the relevance of, pre-filing books and records inspections with respect to shareholder derivative actions. The Motion seeks to persuade this Court that *only* by pursing an investigation pursuant to Section 220 could a derivative plaintiff ever meet their pleading burden. This is incorrect.

The Proposed Intervenor criticizes the approach taken by Plaintiffs, citing cases in which Delaware courts "encouraged" shareholders to avail themselves of Section 220 before filing derivative suits. *See, e.g.,* Mem. at 2. In any given situation, however, reasonable shareholders and their counsel differ as to the best and most effective manner of pursuing derivative claims under Delaware law. *See Butler, Fitzgerald & Potter v. Sequa Corp.,* 250 F.3d 171, 181 (2d Cir.

2001) ("If disagreement with an existing party over trial strategy qualified as inadequate representation, the requirement of Rule 24 would have no meaning.")

Here, Plaintiffs and the Proposed Intervenor simply chose to pursue different courses of action, though the slower route chosen by Proposed Intervenor and the resulting additions of Directors to the Board, has consequences.  "While differences of opinion regarding how to pursue a derivative claim can conceivably rise to the level of antagonism that would preclude adequate representation, conclusory allegations and hypothetical disagreements are insufficient."  *In re Ambac Fin. Group, Inc. Deriv. Litig.* (S.D.N.Y. 2009) 257 F.R.D. 390, 393; *see also In re Am. Capital Agency Corp. Stockholder Derivative Litig.* (August 2, 2017) No. TDC-16-3215, 2017 U.S. Dist. LEXIS 122119 at *13-14 ("[W]here, as here, 'the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented' unless the proposed intervenor can show "adversity of interest, collusion, or nonfeasance.")

In truth (though not mentioned by the Proposed Intervenor), while Delaware courts have at times suggested that shareholders should utilize Section 220 prior to filing a derivative suit, courts applying Delaware law also have repeatedly found that derivative plaintiffs adequately alleged demand futility *without* having first sought books and records pursuant to Section 220, and sustained derivative complaints (either in whole or in part) as a result.  *See, e.g., In re Zillow Grp., Inc. S'holder Derivative Litig.*, No. C17-1568-JCC, 2020 WL 978503, at *3 (W.D. Wash. Feb. 28, 2020); *In re SCANA Corp. Derivative Litig.*, No. CV 3:17-3166-MBS, 2018 WL 3141813, at *6 (D.S.C. June 27, 2018); *Pfeiffer v. Leedle*, 2013 WL 5988416 (Del. Ch. Nov. 8, 2013); *Ryan v. Gifford* 918 A.2d 341 (Del. Ch. 2007); *Pfeiffer v. Toll*, 989 A.2d 683, 691 Del. Ch. 2010); *Weiss v. Swanson* 948 A.2d 433 (Del. Ch. 2008); *Conrad v. Blank,* 940 A.2d 28 (Del. Ch. 2007); *In re*

*Tyson Foods, Inc.*, 919 A.2d 563 (Del. Ch. 2007); *In re Citigroup, Inc. S'holder Deriv. Litig.*, 964 A.2d 106 (Del. Ch. 2009); *MCG Capital Corp. v. Maginn*, 2010 WL 1782271 (Del. Ch. Mar. 3, 2010); *Seinfeld v. Slager,* No. 6462–VCG, 2012 WL 2501105 (Del. Ch. June 29, 2012); *In re The Student Loan Corp. Deriv. Litig.*, 2002 WL 75479 (Del. Ch. Jan. 8, 2002).[2]

With respect to Leavy's pending action seeking documents pursuant to Section 220, it must be noted that not all shareholders' efforts to obtain corporate books and records pursuant to Section 220 are successful.  *See, e.g., Cook v. Hewlett-Packard Co.*  No. 8667–VCG, 2014 WL 311111 (Del. Ch. Jan. 30, 2014)(denying shareholder's request for production of additional books and records following trial in action brought pursuant to Section 220); *Central Laborers Pension Fund v. News Corp.* 45 A.3d 139 (Del. 2012) (affirming dismissal of action brought pursuant to Section 220); *City of Westland Police & Fire Ret. Sys. v. Axcelis Technologies, Inc.*  No. 4473-VCN, 2009 WL 3086537(Del. Ch. Sept. 28, 2009) (dismissing Section 220 proceeding following trial and ruling in defendant's favor); *Highland Select Equity Fund, L.P. v. Motient Corp.*  906 A.2d 156 (Del. Ch. 2006)(same).

### B.  The Actions Rely on Testimony Produced By WWE

The quibbles the Proposed Intervenor has with the Actions rests on a faulty premise: that the "pending cases rest on public materials alone." Mem. at 9.  This is inaccurate.  Even a tangential review of the allegations in the Actions would have informed the Proposed Intervenor of this fact. While Plaintiffs did not pursue a Section 220 request, Plaintiffs are in possession of documents

---

[2]   Nor is the use of Section 220 a panacea to buttress the pleading challenges facing shareholder derivative actions.  There is no guarantee that after the delay occasioned in obtaining books and records pursuant to Section 220 actually contain information of real value, or that the shareholder who obtains books and records will ultimately be able to adequately plead demand futility in a derivative action.  *See, e.g., In re CNET Networks, Inc. S'holder Deriv. Litig.* No. C 06–03817 WHA, 2008 WL 2445200 (N.D. Cal. June 16, 2008) (granting motion to dismiss under Fed. R. Civ. P. 23.1 and finding that pre-suit demand was required under Delaware law even where plaintiffs' complaint was based on books and records previously obtained pursuant to Section 220); *In re Liquidity Services, Inc. Derivative Litigation*  2017 WL 5735453 (Del. Ch. Nov. 27, 2017) (same).

produced by Defendants, in the form of sworn declarations from multiple WWE employees. Though Plaintiffs acknowledge this Court's ruling on the motion to dismiss, Plaintiffs remand steadfast in their belief that the sworn declarations of WWE insiders ***prove*** a fact critical to both the question of demand futility and the underlying causes of action: that Defendants ***knew*** that the WWE sole media rights agreement in the Middle East region with OSN had been terminated in December 2019. As detailed in Plaintiffs' opposition to the motion to dismiss and emphasized at oral argument, these documents demonstrate that both pre-suit demand is futile and that the instant Action has appropriately stated a claim.

Perhaps tellingly, there are excessive redactions to the Motion.[3] Yet, Proposed Intervenor never argues that the additional "vital details" obscured by the redactions in Proposed Intervenor's complaint carry the day in showing that demand upon Proposed Intervenor's current, enlarged Board, is futile.

### III.   CONCLUSION

For the reasons stated herein, the Motion to Intervene should be denied and Plaintiffs should be permitted an opportunity to amend their complaint in the instant Action.

Dated: November 20, 2020

                                              Respectfully submitted,

                                              **GAINEY McKENNA & EGLESTON**

                                              By: */s/ Gregory M. Egleston*
                                                  Gregory M. Egleston (CT19709)
                                              Thomas J. McKenna
                                              501 Fifth Avenue, 19th Floor
                                              New York, NY 10017
                                              Telephone: (212) 983-1300

---

[3]    Plaintiffs do not have access to the unredacted Motion provided to the Court by the Proposed Intervenor.

Email: gegleston@gme-law.com
Email: tjmckenna@gme-law.com

***Attorneys for Ryan Merholz and Melvyn Klein***