**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

RYAN MERHOLZ and MELVYN KLEIN, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC.,

Plaintiffs,

v.

VINCENT K. MCMAHON, STEPHANIE MCMAHON, PAUL LEVESQUE, FRANK A. RIDDICK, III, STUART U. GOLDFARB, LAUREEN ONG, ROBYN W. PETERSON, MAN JIT SINGH, JEFFREY R. SPEED, ALAN M. WEXLER, GEORGE A. BARRIOS, and MICHELLE D. WILSON,

Defendants,

-and-

WORLD WRESTLING ENTERTAINMENT, INC.,

Nominal Defendant.

Case No.: 3:20-cv-00557-VAB

DANIEL KOOI, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC.,

Plaintiff,

v.

VINCENT K. MCMAHON, FRANK A. RIDDICK, III, JEFFREY R. SPEED, PATRICIA A. GOTTESMAN, STUART U. GOLDFARB, LAUREEN ONG, PAUL LEVESQUE, ROBYN W. PETERSON, STEPHANIE MCMAHON, MAN JIT SINGH, ALAN M. WEXLER, GEORGE A.

[Caption Continued on Next Page]

Case No.: 3:20-CV-00743-VAB

BARRIOS, and MICHELLE D. WILSON,

Defendants,

-and-

WORLD WRESTLING ENTERTAINMENT, INC.,

Nominal Defendant.

---

| | |
|---|---|
| RODNEY NORDSTROM, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>VINCENT K. MCMAHON, GEORGE A. BARRIOS, MICHELLE D. WILSON, STEPHANIE MCMAHON, PAUL LEVESQUE, FRANK A. RIDDICK III, STUART U. GOLDFARB, LAUREEN ONG, ROBYN W. PETERSON, MAN JIT SINGH, JEFFREY R. SPEED, ALAN M. WEXLER, and PATRICIA A. GOTTESMAN,<br><br>Defendants,<br><br>-and-<br><br>WORLD WRESTLING ENTERTAINMENT, INC.,<br><br>Nominal Defendant. | Case No. 3:20-CV-00904-VAB |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DENNIS PALKON'S MOTION FOR PERMISSIVE INTERVENTION, APPOINTMENT OF LEAD COUNSEL, AND <u>DENIAL OF DEFENDANTS' MOTIONS TO DISMISS AS MOOT</u>**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ....1

II. DEMAND ON THE BOARD WOULD BE FUTILE....3

A. V. McMahon Dominates the Board ....3

B. A Majority of the Director Defendants Face a Substantial Likelihood of Liability....5

C. Defendants' Opposition Improperly Rests on the Court Crediting Inferences in Their Favor....11

D. The OSN Agreement Was Material to the Company ....12

E. The Company's Disclosures About Its Financial Health Were Also Misleading....14

F. Precedent Identified by the Court and Defendants Support Intervention ....15

III. THE COMPLAINT ADEQUATELY STATES A CLAIM ....18

IV. CONCLUSION....20

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*AIG Ret. Servs., Inc. v. Barbizet*,
2006 WL 1980337 (Del. Ch. July 11, 2006)....................4

*Appel v. Berkman*,
180 A.3d 1055 (Del. 2018)....................9

*Cho v. UCBH Holdings, Inc.*,
2011 WL 3809903 (N.D. Cal. May 17, 2011)....................9

*City of Hialeah Emps. Ret. Sys. v. Begley*,
2018 WL 1912840 (Del. Ch. Apr. 20, 2018)....................18

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
2020 WL 4547217 (S.D.N.Y. Aug. 6, 2020)....................9, 13, 14

*Friedman v. Beningson*,
1995 WL 716762 (Del. Ch. Dec. 4, 1995)....................4

*Gantler v. Stephens*,
965 A.2d 695 (Del. 2009)....................19

*Howard v. Everex Sys., Inc.*,
228 F.3d (9th Cir. 2000)....................9

*Hughes v. Xiaoming Hu*,
2020 WL 1987029 (Del. Ch. Apr. 27, 2020)....................18, 19

*In re Chemed Corp., S'holder Deriv. Litig.*,
2019 WL 3215852 (D. Del. Feb. 26, 2019)....................11, 12

*In re China Agritech, Inc. S'holder Derivative Litig.*,
2013 WL 2181514 (Del. Ch. May 21, 2013)....................19

*In re Citigroup Inc. S'holder Derivative Litig.*,
964 A.2d 106 (Del. Ch. 2009)....................17

*In re Clovis Oncology, Inc. Derivative Litig.*,
2019 WL 4850188 (Del. Ch. Oct. 1, 2019)....................19

*In re Fitbit, Inc. Stockholder Derivative Litigation*,
2018 WL 6587159 (Del. Ch. Dec. 14, 2018)....................11

*In re InfoUSA, Inc. S'holders Litig.*,
953 A.2d 963 (Del. Ch. 2007)....................7

*In re Intuitive Surgical S'holder Derivative Litig.*,
146 F. Supp. 3d 1106 (N.D. Cal. 2015) .......................................................15, 16, 17, 19

*In re Oracle Corp. Derivative Litig.*,
2018 WL 1381331 (Del. Ch. Mar. 19, 2018)...........................................................4

*In re Oracle Corp. Derivative Litig.*,
867 A.2d 904 (Del. Ch. 2004)...............................................................................19

*In re SCANA Corp. Derivative Litig.*,
2018 WL 3141813 (D.S.C. June 27, 2018).....................................................15, 16

*In re Truecar, Inc. Stockholder Derivative Litigation*,
2020 WL 5816761 (Del. Ch. Sept. 30, 2020) .......................................................17

*In re Zillow Grp., Inc. S'holder Derivative Litig.*,
2020 WL 978503 (W.D. Wash. Feb. 28, 2020) ...................................................15, 16

*Jackson Nat. Life Ins. Co. v. Kennedy*,
741 A.2d 377 (Del. Ch. 1999)...............................................................................20

*Kahn v. Kolberg Kravis Roberts & Co., L.P.*,
23 A.3d 831 (Del. 2011) .......................................................................................18

*Kandell v. Niv*,
2017 WL 4334149 (Del. Ch. Sept. 29, 2017) .......................................................18

*Kells-Murphy v. McNiff*,
1991 WL 137143 (Del. Ch. July 12, 1991)...............................................................4

*La. Mun. Police Emps.' Ret. Sys. v. Pyott*,
46 A.3d 313 (Del. Ch. 2012),
*rev'd on other grounds*, 74 A.3d 612 (Del. 2013) ..........................................6, 11, 12

*Malone v. Brincat*,
722 A.2d 5 (Del. 1998) ...........................................................................................7

*Marchand v, Barnhill*,
212 A.3d 805 (Del. 2019) ........................................................................................2

*Marhart, Inc. v. CalMat Co.*,
1992 WL 82365 (Del. Ch. Apr. 22, 1992) .................................................................9

*MCG Capital Corp. v. Maginn*,
2010 WL 1782271 (Del. Ch. May 5, 2010).............................................................20

*Merholz v. McMahon*,
2020 WL 6546007 (D. Conn. Nov. 6, 2020) .....................................................1, 3, 7, 15

*Norton v. Poplos*,
443 A.2d 1 (Del. 1982) ....................10

*Orman v. Cullman*,
794 A.2d 5 (Del. Ch. 2002)....................4

*Pfeiffer v. Toll*,
989 A.2d 683 (Del. Ch. 2010)....................18

*R.S.M. Inc. v. Alliance Capital Mgmt. Holdings L.P.*,
790 A.2d 478 (Del. Ch. 2001)....................10

*Rosenbloom v. Pyott*,
765 F.3d 1137 (9th Cir. 2014) ....................16

*Sandys v. Pincus*,
152 A.3d 124 (Del. 2016) ....................4

*Thomas v. Magnachip Semiconductor Corp.*,
167 F. Supp. 3d 1029 (N.D. Cal. 2016) ....................9

*Voigt v. Metcalf*,
2020 WL 614999 (Del. Ch. Feb. 10, 2020) ....................4

*Wood v. Baum*,
953 A.2d 136 (Del. 2008) ....................17

Dennis Palkon ("Intervenor"), by and through his undersigned counsel, respectfully submits this Reply Memorandum in further support of his Motion for Permissive Intervention (the "Motion") pursuant to Rule 24 of the Federal Rules of Procedure in the above-captioned stockholder derivative actions (collectively, the "Actions"). Intervenor sought intervention to request: (i) appointment of his counsel as lead counsel; (ii) designation of the [Proposed] Verified Stockholder Derivative Complaint (the "Complaint") as the operative complaint;[1] and (iii) that the Court deny as moot Defendants'[2] pending motions to dismiss in light of the new operative complaint. In light of this Court's ruling in *Merholz v. McMahon*, 2020 WL 6546007, at *13 (D. Conn. Nov. 6, 2020), granting the motions to dismiss, Intervenor refocuses his Motion so that the Court appoint his counsel as lead counsel and require Defendants to respond to the Complaint.[3]

## I. PRELIMINARY STATEMENT

Intervenor seeks intervention in the Actions in order to protect and prosecute the Company's valuable claims the plaintiffs put at risk by failing to conduct a pre-suit investigation. Key among those claims are sales by WWE's controlling stockholder, V. McMahon, of more than $280 million of his personally held stock based on material nonpublic information about the Company's prospects in the vital Middle East and North Africa region ("MENA").[4] Defendants'

---

[1] References to the Complaint herein are styled as "¶__."

[2] Defendants Vincent K. McMahon ("V. McMahon"), Stephanie McMahon ("S. McMahon"), Paul Levesque ("Levesque"), Frank A. Riddick III ("Riddick"), Stuart U. Goldfarb ("Goldfarb"), Laureen Ong ("Ong"), Robyn W. Peterson ("Peterson"), Man Jit Singh ("Singh"), Jeffrey R. Speed ("Speed"), Alan M. Wexler ("Wexler"), George A. Barrios ("Barrios"), Michelle D. Wilson ("Wilson"), and Patricia A. Gottesman ("Gottesman") are referred to herein as the "Individual Defendants" or "Director Defendants" and with nominal defendant World Wrestling Entertainment, Inc. ("WWE" or the "Company"), are collectively referred to as the "Defendants."

[3] Intervenor will seek to consolidate the Actions once the Court grants the intervention. Here, as throughout, all emphasis is added and citations and footnotes are omitted unless otherwise noted.

[4] The Individual Defendants collectively sold $313 million worth of WWE stock. As of the date of this brief, $313 million amounts to over 9% of the Company's market capitalization.

core opposition to the Motion is their claim that a majority of WWE's Board of Directors (the "Board") could impartially consider a demand to pursue the claims in the Complaint. This argument fails for at least two reasons.

First, while Rule 23.1 requires a stockholder to plead the futility of demand with particularity, it does not demand the Court to take leave of its common sense. Indeed, the Delaware Supreme Court has instructed courts to employ a "realistic consideration of the question of independence" and "cannot 'ignore the social nature of humans' or that they are motivated by things other than money, such as 'love, friendship, and collegiality.'" *Marchand v. Barnhill*, 212 A.3d 805, 818, 820 (Del. 2019). Here, common sense (and Delaware law) dictates that there is a significant doubt that the Board would sue V. McMahon.

V. McMahon is the architect of WWE and has become synonymous with the Company itself. He has consolidated all the power within WWE into himself, serving as CEO, Chairman of the Board, and wielding over 80% of the Company's voting power. He is even one of the key "superstars" at the Company's performances. The Board also has a history of deferring to V. McMahon. The XFL sale provides just one example. In addition, V. McMahon has placed his close family members in key positions of power at WWE, and his daughter is assumed to take over for him when he finally retires. As detailed in the Complaint, the Individual Defendants have publicly stated that whatever V. McMahon wants at the Company is what happens. Accordingly, the outcome of a demand on the Board would be as preordained as a WWE wrestling match.

Amplifying the Board's unwillingness to sue V. McMahon is the other Board members' direct involvement in the challenged wrongdoing. [REDACTED]

[REDACTED]

[REDACTED] and provided a shield for V. McMahon and other insiders to sell their

Company stock. As explained below, the Complaint contains particularized allegations, based on the Company's own books and records, [redacted] This misconduct amounts to a breach of the Board's duty of disclosure, and it separately renders a majority of the Board incapable of considering a demand. The Court should grant the Motion.

## II. DEMAND ON THE BOARD WOULD BE FUTILE

Defendants' main opposition to the intervention is their incorrect assertion that the Complaint fails to show that a demand upon the Board would have been futile. Opp. at 15-32.[5, 6] The Complaint does so in two ways, by demonstrating: (i) that V. McMahon dominates and controls the Board; and (ii) that a majority of the Board faces a substantial likelihood of liability.

### A. V. McMahon Dominates the Board

"At the pleading stage, a lack of independence turns on 'whether the plaintiffs have pled facts from which the director's ability to act impartially on a matter important to the interested

---

[5] "Opp." refers to Defendants' Memorandum of Law in Opposition to Dennis Palkon's Motion for Permissive Intervention, Appointment of Lead Counsel, and Denial of Defendants' Motions to Dismiss as Moot (Nov. 20, 2020).

[6] Despite losing the motion to dismiss, plaintiffs Ryan Merholz and Melvyn Klein opposed intervention and requested to amend their complaint, yet provide no details on what they would amend their complaint with to address the deficiencies noted by the Court. *See* Plaintiffs' Response to Motion to Intervene at 7 (Nov. 20, 2020) (*Merholz* action, ECF No. 90) ("Ps' Opp.").

party can be doubted because that director may feel either subject to the interested party's dominion or beholden to that interested party.'" *Sandys v. Pincus*, 152 A.3d 124, 128 (Del. 2016). Delaware recognizes that there is no single way to show domination by an interested director. *See, e.g.*, *Voigt v. Metcalf*, 2020 WL 614999, at *14 n.13 (Del. Ch. Feb. 10, 2020) (collecting cases). One situation creating reason to doubt that directors' ability to consider the merits of a decision objectively is when a controlling stockholder has unilateral power to decide whether directors have the ability to receive a material benefit. *Orman v. Cullman*, 794 A.2d 5, 25 n.50 (Del. Ch. 2002); *In re Oracle Corp. Derivative Litig.*, 2018 WL 1381331, at *17-20 (Del. Ch. Mar. 19, 2018) (noting that controller's ability to withhold support and cause directors to lose their fees for service supported finding of lack of independence).

Delaware also holds that an interested party dominates the board when the board has demonstrated its subservience. *See, e.g.*, *Kells-Murphy v. McNiff*, 1991 WL 137143, at *2 (Del. Ch. July 12, 1991) (demand excused because the board had a history of abdicating the company's and minority stockholders' interests to the majority shareholder); *AIG Ret. Servs., Inc. v. Barbizet*, 2006 WL 1980337, at *5 (Del. Ch. July 11, 2006) (finding directors lacked independence when they acted out of allegiance to the dominating director instead of the company). In addition, the "confluence of voting control with directorial and official decision making authority" is "consistent with control of the board." *Friedman v. Beningson*, 1995 WL 716762, at *5 (Del. Ch. Dec. 4, 1995). The Court has also acknowledged that it must take into account the importance and influence of the dominating director. *See* Ex. A attached hereto, Transcript, *Kalisman, et al. v. Friedman, et al.*, No. 8447–VCL at 15:16-20 (Del. Ch. May 14, 2013) (observing "someone who is one of the leading capitalists and more influential figures of our day is not something that a court can ignore when evaluating the degree of influence that a controller has over a company").

Defendant V. McMahon's control over the Company cannot be overstated. He is WWE's founder, controlling stockholder, Chairman of the Board, and CEO. ¶170. V. McMahon is synonymous with WWE. Defendant Levesque has described WWE as V. McMahon's company, and V. McMahon as the one that "signs the check," and therefore gets whatever he wants. ¶173. As the Board admitted in the Company's most recent proxy statement, "[a]s a practical matter, Mr. McMahon's combined role as Chairman and Chief Executive Officer reflects the larger reality that … management of the Company is within his ultimate control." ¶170. Further, since he controls 80% of WWE's stockholders voting power, each director continues to serve at his whim.

The Board caters to V. McMahon's wishes in ways confirming his dominance over it. The Complaint details one example where the Board signed off on transferring the rights to the XFL to V. McMahon for just $1 million, even as it knew others were willing to spend materially more. ¶¶59, 173. The Board has also stood idly by as V. McMahon elevated his friends and family members to positions of power at WWE, including his wife, daughter, son, and son-in-law. ¶¶171, 172, 174. The Board is allowing defendant V. McMahon to personally choose his successor, abdicating one of the most important decisions a Board could possible face. ¶173. Further, V. McMahon's chosen successor is widely reported to be S. McMahon, further ensuring that voting and management control of the Company remains in the McMahon family. *Id*. Defendants attempt to take each of these facts separately to argue that there is no domination. Opp. at 28-31. This is improper. The Court must consider the allegations collectively. Taken together, these facts create a strong reason to doubt that the Board could impartially consider a demand to bring a claim for personal liability against defendant V. McMahon.

### B. A Majority of the Director Defendants Face a Substantial Likelihood of Liability

In addition to V. McMahon dominating the Board, demand is also excused because a

majority of the Board faces a substantial likelihood of liability. Defendants concede Intervenor need only raise a reason to doubt that six of WWE's twelve Board members can disinterestedly or independently consider a demand, and tacitly admit that V. McMahon, S. McMahon, and Levesque could not. Opp. at 19, 21-27 (arguing only that the Outside Directors can consider a demand).[7] Thus, the Complaint must only raise a reason to doubt that three of the remaining nine directors cannot impartially consider the demand.[8]

At least three additional directors face a substantial likelihood of liability, rendering demand on the Board futile. Under Delaware law, "to show that a director faces a 'substantial risk of liability,' the plaintiff does not have to demonstrate a reasonable probability of success on the claim." *La. Mun. Police Emps.' Ret. Sys. v. Pyott*, 46 A.3d 313, 351 (Del. Ch. 2012), *rev'd on other grounds*, 74 A.3d 612 (Del. 2013). Rather "[Intervenor] need only 'make a threshold showing, through the allegation of particularized facts, that their claims have some merit.'" *Id.* As the court explained:

> The requirement of factual particularity does not entitle a court to discredit or weigh the persuasiveness of well-pled allegations. "The well-pleaded factual allegations of the derivative complaint are accepted as true on such a motion." … "Plaintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged...." Put differently, once a plaintiff pleads particularized allegations, then the plaintiff is entitled to all "reasonable inferences [that] logically flow from particularized facts alleged by the plaintiff."

*Pyott*, 46 A.3d at 351.

---

[7] "Outside Directors" refer to defendants Riddick, Speed, Goldfarb, Ong, Peterson, Singh, and Wexler and nondefendants Steve Pamon and Erika Nardini.

[8] Though Defendants make much about the Board's addition of two new directors (Opp. at 1, 4), the other ten directors are defendants in this action, including most notably three members of the Audit Committee. The members of the Audit Committee, in addition to the McMahon family, continue to constitute half of the Board.

Against this backdrop, the Director Defendants face a "substantial risk of liability" for causing the Company to make misleading statements to the public. "Whenever directors communicate publicly or directly with shareholders about the corporation's affairs," they must "exercise due care, good faith and loyalty." *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998). "Communications that depart from this expectation ... violate the fiduciary duties that protect shareholders [and] are sufficient to subject directors to liability in a derivative claim." *In re InfoUSA, Inc. S'holders Litig.*, 953 A.2d 963, 990 (Del. Ch. 2007); *see also Malone*, 722 A.2d at 9 ("[D]irectors who knowingly disseminate false information that results in corporate injury or damage to an individual stockholder violate their fiduciary duty, and may be held accountable in a manner appropriate to the circumstances.").

Here, the Complaint details Defendants' false statements about the collapse of the Company's dealings with OSN and WWE's flailing efforts to secure a replacement media distribution rights deal in the vital MENA region. Plaintiffs' prior allegations on this score, unaided by WWE's internal books and records, lacked critical detail present in the Complaint.[9] Indeed, in dismissing their actions, this Court noted that the plaintiffs' complaints rested on conclusory implications of knowledge based on Director Defendant signatures on SEC filings and service on the Audit Committee. *Merholz*, 2020 WL 6546007, at *8.

Intervenor's Complaint, in contrast, brings the Court into the Board and Audit Committee meetings, [redacted]

[9] Plaintiffs argue that their complaints do not rest on public materials alone because they include sworn declarations from WWE employees. Ps' Opp. at 7. Plaintiffs fail to point to any specific allegations supporting this conclusory statement. It appears they are referring to the WWE employees that filed declarations in support of WWE's motion to dismiss the securities class action. Declarations filed in support of a motion to dismiss that are available to the public are, of course, public materials.

[redacted]

[redacted][11]

[10] [redacted]

[11] [redacted] Opp. at 24. This Court held no such thing. In fact, plaintiffs never made such detailed allegations as they did not have the requisite internal books and records.

[redacted] As Judge Rakoff explained, this statement was misleading because "defendants already knew that one of its 'key' agreements, the OSN agreement, had been terminated in February 2019 and thus that this risk had already materialized." *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, 2020 WL 4547217, at *4 (S.D.N.Y. Aug. 6, 2020).[12] Delaware law is in accord. Upon publicly discussing the Company's "key agreements," the Board became duty-bound to disclose enough information that these statements did not mislead. *See Marhart, Inc. v. CalMat Co.*, 1992 WL 82365, at *3 (Del. Ch. Apr. 22, 1992) ("[E]ven where there is no obligation to disclose certain information, if it is volunteered, the information must be stated truthfully and candidly."); *Appel v. Berkman*, 180 A.3d 1055, 1064 (Del. 2018) ("[W]hen a board chooses to disclose a course of events or to discuss a specific subject, it has long been understood that it cannot do so in a materially misleading way, by disclosing only part of the story, and leaving the reader with a distorted impression.").

[redacted]

[12] The Director Defendants are accountable for the false and misleading public filings they sign because otherwise, "that signature will be rendered meaningless." *Howard v. Everex Sys., Inc.*, 228 F.3d at 1057, 1061 (9th Cir. 2000); *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1047-48 (N.D. Cal. 2016) (rejecting argument that the holding in *Howard* should not be extended to outside directors who do not have the "ultimate authority" over the contents of the filings); *Cho v. UCBH Holdings, Inc.*, 2011 WL 3809903, at *9 (N.D. Cal. May 17, 2011) ("Based on Plaintiffs' allegations that each of the Director Defendants signed the 2007 10K ... the alleged misstatements are attributable to the Director Defendants."). [redacted]

[redacted][13] [redacted]

In sum, Intervenor's distinct allegations, resting on corporate books and records, sufficiently support the Board's personal exposure to liability for knowingly disseminating false and misleading information about the Company's operations in the MENA region in general and the OSN agreement renewal process in particular.

[13] As the Delaware Supreme Court has explained, "although a statement or assertion may be facially true, it may constitute an actionable misrepresentation if it causes a false impression as to the true state of affairs, and the actor fails to provide qualifying information to cure the mistaken belief." *Norton v. Poplos*, 443 A.2d 1, 5 (Del. 1982); *accord R.S.M. Inc. v. Alliance Capital Mgmt. Holdings L.P.*, 790 A.2d 478, 501-02 (Del. Ch. 2001). [redacted]

### C. Defendants' Opposition Improperly Rests on the Court Crediting Inferences in Their Favor

In their opposition, Defendants try to negate the facts pled (and their reasonable inferences) by turning the motion to dismiss pleading standards on their head and have the Court give them the benefits of all inferences. In particular, Defendants argue that while the Board's books and records [REDACTED] As the Delaware Court of Chancery explained in *In re Fitbit, Inc. Stockholder Derivative Litigation*, however, such detailed information is "not likely [to] be found in a Section 220 books and records production" and "'[p]laintiffs must not be held to a too-high standard of pleading because they face an almost impossible burden when they must plead facts with particularity and the facts are not public knowledge.'" 2018 WL 6587159, at *14 n.176 (Del. Ch. Dec. 14, 2018). Therefore, courts allow plaintiffs a number of inferences of knowledge based on general topics discussed at meetings despite the fact that "[t]he exact details of what was discussed [during committee meetings] about [certain] investigations [was] not available." *In re Chemed Corp., S'holder Deriv. Litig.*, 2019 WL 3215852, at *20-21 (D. Del. Feb. 26, 2019) (holding "it is a fair inference that when the Audit Committee Defendants were advised of the existence of the DOJ Action, they were provided with at least some details about the substance of the DOJ Action Complaint," and it is reasonable to infer that the audit committee had "significant information" concerning the underlying allegations in a securities fraud class action based solely on references in audit committee meeting minutes to that action).

The Delaware Chancery Court's ruling in *Pyott* is instructive. In *Pyott*, the court held that the outside directors faced a substantial likelihood of liability for allowing the company to engage in an illegal "off-label" marketing scheme for one of its products. 46 A.3d at 353. Even though

the internal books and records contained no mention of actual "off-label" marketing, the court held that the board regularly monitoring the drug and keeping track of sales entitled the plaintiffs to the inference that the board knew of the illegality. *Id.* at 354. The court stated that it had to credit plaintiff with that inference, "even if I believe it more likely that the directors acted in good faith." *Id.* at 356. In reaching this conclusion, the court also noted that it would be "astounding" if the board books "used [the] term [off-label]." *Id.* at 357. Rather, "sophisticated corporate actors at times engage in illegal behavior and attempt to hide their misconduct with the appearance of legal compliance." *Id.*

[redacted]

### D. The OSN Agreement Was Material to the Company

[redacted] As an initial matter, the court in the securities class action expressly rejected Defendants' argument that the "OSN Agreement was not material to investors because WWE had other relationships in the MENA region and that, moreover, the

MENA agreements did not comprise as substantial a portion of revenue as plaintiff alleges." *City of Warren*, 2020 WL 4547217, at *4. More importantly, [redacted]

[redacted]

[redacted]

[redacted]

As Judge Rakoff succinctly explained, the cancellation of the "OSN Agreement not only 'adversely affect[ed] [WWE's] financial outlook, liquidity, business and operating results' … but more particularly left WWE 'scrambling to find a replacement partner,' … and 'put in serious jeopardy the ability to finalize a media rights agreement for the MENA region by the end of 2019[.]'" *City of Warren*, 2020 WL 4547217, at *4. The Board's awareness of the OSN deal status is clear.

**E. The Company's Disclosures About Its Financial Health Were Also Misleading**

Defendants also ignore that Intervenor challenges more than just the OSN-related statements. He is also challenging the statements that projected rosy outlooks for the Company while failing to disclose the trouble WWE was having in the MENA region in general.

For instance, during an earnings call on February 7, 2019, defendant Barrios specifically tied the Company's $200 million OIBDA goal to "the rights renewal process" in MENA. ¶101. Also, a July 25, 2019 press release quoted Barrios saying "we continue to target full-year Adjusted OIBDA of at least $200 million" and that "[t]he guidance presupposes the staging of a second large scale international event and the competition of a media rights deal in the MENA region." ¶121. [redacted]



Accordingly, the Director Defendants violated their duties by failing to make adequate disclosures around the impact of delayed MENA deals on the Company's financial health.

**F. Precedent Identified by the Court and Defendants Support Intervention**

In addition to providing the non-conclusory allegations missing from plaintiffs' complaints, Intervenor's Complaint provides more detail than the pleadings in the cases the Court distinguished in its order. *See Merholz*, 2020 WL 6546007, at *9 (citing *In re Zillow Grp., Inc. S'holder Derivative Litig.*, 2020 WL 978503 (W.D. Wash. Feb. 28, 2020), *In re SCANA Corp. Derivative Litig.*, 2018 WL 3141813 (D.S.C. June 27, 2018), and *In re Intuitive Surgical S'holder Derivative Litig.*, 146 F. Supp. 3d 1106, 1120-21 (N.D. Cal. 2015)).

*First*, Intervenor used corporate books and records to specifically substantiate his particularized allegations. Neither the plaintiffs in *Zillow* nor *SCANA* appeared to have received internal documents before filing suit, yet their complaints were upheld. In *Zillow*, the court found it "***plausible***" that the board knew of the company's false statements because a government investigation was occurring while the individual defendants signed annual statements stating the company was in compliance with all government regulations. 2020 WL 978203, at *3 n.3. In *SCANA*, the directors received information that put them "on notice" of insurmountable problems

with a key company initiative, since the director defendants should have known about a project that was critical to the company's reputation and financial wellbeing. 2018 WL 3141813, at *5.

As explained above, due to Intervenor's pre-suit investigation, the Complaint provides much more than plausibility or putting directors "on notice," as in *Zillow* and *SCANA*. [redacted]

*Second*, the allegations here are more specifically substantiated than the inference the court reached in *Intuitive Surgical*. There, the court explained that "[i]n demand futility cases, courts have repeatedly emphasized that it is especially plausible to infer board interest in and knowledge of developments relating to a product that is critical to a company's success or is otherwise of special importance." 146 F. Supp. 3d at 1118-19 (citing *Rosenbloom v. Pyott*, 765 F.3d 1137, 1154 (9th Cir. 2014)). Concerning the key red flags, scholarly publications, and product liability lawsuits, the court in *Intuitive Surgical* noted that the plaintiff ***did not*** specifically allege that they reached the Board's attention. 146 F. Supp. 3d at 1117. But, using the plaintiff-friendly standards still available even under Rule 23.1, the court stated it was proper to infer that such red flags reached the board. *Id.*[14] [redacted]

[14] The court in *Intuitive Surgical* also noted that the company received numerous warnings from the FDA about off-label marketing and failure to comply with regulations. *Id.* at 1118. However, nowhere in the opinion does the court state that these warnings went to the board and it appears that the court instead inferred that they did, as it did with the other red flags. *Id.*

[redacted] Such an inference is significantly easier to make than the one in *Intuitive Surgical*, where the court inferred that board members knew of the contents of scholarly articles concerning a complicated medical device.

Defendants' precedent does not compel a contrary ruling. *See* Opp. at 24 (citing *Wood v. Baum*, 953 A.2d 136 (Del. 2008); *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 134 (Del. Ch. 2009)). These cases stand for the unremarkable proposition that being on a committee that reviewed false statements is not sufficient to establish liability. Both those complaints were not supported by internal books and records, there were no allegations to show the directors actually knew or should have known about the falsity of the statements, or that what they were doing was wrong. *Wood*, 953 A.2d at 141-42 (noting that the plaintiff failed to identify any allegations that would show the directors had "actual or constructive knowledge" of the various wrongful acts); *Citigroup*, 964 A.2d at 134. The Complaint achieves what the above-complaints did not. [redacted]

*In re Truecar, Inc. Stockholder Derivative Litigation*, 2020 WL 5816761 (Del. Ch. Sept. 30, 2020) is also inapposite. Opp. at 22. In *TrueCar*, the only thing the board knew was that the company had a "fragile" relationship with a key partner. 2020 WL 5816761, at *5. That partner then redesigned its website, which turned out to have a negative effect on TrueCar Inc.'s business. *Id.* As soon as the board learned about this negative event, it had a special meeting, discussed the company's financial results a month later, and then, issued a press release explaining what happened. *Id.* [redacted]

[redacted] Thus, all the Director Defendants face a substantial likelihood of liability for the misleading statements. *See Kandell v. Niv*, 2017 WL 4334149, at *17 (Del. Ch. Sept. 29, 2017) (inferring director knowledge of statements made in SEC filings); *City of Hialeah Emps. Ret. Sys. v. Begley*, 2018 WL 1912840, at *2 (Del. Ch. Apr. 20, 2018) (demand futile where "directors in fact knew about the misleading nature of" the company's statements).

Accordingly, the Complaint creates the requisite "substantial likelihood of liability" for all the Director Defendants, and at a minimum, the three members on the Audit Committee, and therefore sufficiently alleges the futility of making a demand.[15]

## III. THE COMPLAINT ADEQUATELY STATES A CLAIM

As already explained above, Intervenor's Complaint specifically particularizes why demand is futile under the heighted pleading requirements of Rule 23.1.[16] A Rule 12(b)(6) motion, which is what Defendants are effectively arguing for (Opp. at 32), is a lower pleading standard.[17] When a plaintiff successfully establishes demand futility under the particularized requirements of Rule 23.1, it has also satisfied the more lenient pleadings standards under Rule 12(b)(6). *See In*

[15] Defendants argue that directors are permitted to reasonably rely on WWE's management. Opp. at 24-25. [redacted]

[16] Defendants' sole argument that Intervenor did not plead demand futility for the unjust enrichment claim is that he did not assert it against the outside directors. Opp. at 26. That is incorrect. *See, e.g.*, ¶183. "By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of WWE." Since Intervenor showed demand is futile on the breach of fiduciary duty claim, he also did so for the unjust enrichment claim. *Hughes v. Xiaoming Hu*, 2020 WL 1987029, at *17-18 (Del. Ch. Apr. 27, 2020).

[17] Rule 8's relaxed notice pleading standard governs here. *See Pfeiffer v. Toll*, 989 A.2d 683 (Del. Ch. 2010) (holding Rule 9(b) does not apply to claims for breach of fiduciary duty), *abrogated on other grounds by Kahn v. Kolberg Kravis Roberts & Co., L.P.*, 23 A.3d 831 (Del. 2011).

*re China Agritech, Inc. S'holder Derivative Litig.*, 2013 WL 2181514, at *24 (Del. Ch. May 21, 2013) ("A complaint that pleads a substantial threat of liability for purposes of Rule 23.1 'will also survive a 12(b)(6) motion to dismiss.'"); *Hughes*, 2020 WL 1987029, at *18 (same).[18]

Defendants V. McMahon, Barrios, Wilson, and Gottesman breached their fiduciary duty and were unjustly enriched through their stock sales. To state a claim for insider trading under Delaware law, plaintiffs must show that the officer or director (i) possessed material, non-public information and (ii) used that information improperly by making trades motivated wholly or in part, by the substance of that information. *See In re Oracle Corp. Derivative Litig.*, 867 A.2d 904, 934 (Del. Ch. 2004). Intervenor already explained above Defendants' knowledge of the true state of WWE's business prospects in the Middle East. Such knowledge, plus the timing and amounts of the sales are more than enough to state a claim. *See, e.g.*, *Intuitive Surgical*, 146 F. Supp. 3d at 1120 (finding allegations of the number of shares, the amount of the trades, and director possession of material, non-public information sufficiently stated an insider trading claim). For the insider trading claims, it does not matter whether the Company's public statements were true or false. Rather, the trading defendants breached their duties simply by using material nonpublic information to trade.

In *Clovis*, the decision on which Defendants rely, the court held that the stock sales were so small to defy any bad intent. *In re Clovis Oncology, Inc. Derivative Litig.*, 2019 WL 4850188, at *1 (Del. Ch. Oct. 1, 2019). That is not this case, where V. McMahon sold over $280 million worth his stock, defendant Barrios sold 55% of his holdings, pursuant to a stock plan he entered into right after sending OSN a notice of default, defendant Wilson sold nearly 60% of her stock,

---

[18] Notably the Defendants that are also officers of the Company are liable for simple duty of care violations. *Gantler v. Stephens*, 965 A.2d 695, 709 n.37 (Del. 2009).

and defendant Gottesman sold over 30% of her stock. ¶¶146-50. Accordingly, these defendants breached their fiduciary duty by using the Company's inside information for their personal benefit.

These facts are also enough to state a claim for unjust enrichment for the improper benefits the Individual Defendants' received. *See MCG Capital Corp. v. Maginn*, 2010 WL 1782271, at *25, n.147 (Del. Ch. May 5, 2010) ("If [plaintiff] is able to prove [defendant] breached his duty of loyalty ... then it will also be successful in proving unjust enrichment."); *Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 394 (Del. Ch. 1999) (same). Intervenor alleges facts showing that the Individual Defendants reaped financial rewards—both from compensation and insider sales of stock—at WWE's expense while knowingly perpetrating a misleading public narrative that caused significant damage to the Company. Thus, the compensation the Individual Defendants received from WWE was contrary to "the fundamental principles of justice or equity and good conscience." *Jackson*, 741 A.2d at 394.

## IV. CONCLUSION

For the foregoing reasons, Intervenor respectfully requests that this Court grant his Motion for Permissive Intervention.

Dated: December 4, 2020

Respectfully submitted,

**MOTLEY RICE LLC**

/s/ *William H. Narwold*
William H. Narwold (CT 00133)
One Corporate Center
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: (860) 882-1681
Facsimile: (860) 882-1682
E-mail: bnarwold@motleyrice.com

**ROBBINS LLP**
Brian J. Robbins (CT 417036)
Gregory E. Del Gaizo

5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsllp.com
gdelgaizo@robbinsllp.com

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Mark Lebovitch
Daniel Meyer
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1519
Facsimile: (212) 554-1444
E-mail: markl@blbglaw.com
daniel.meyer@blbglaw.com

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Dr., Ste. 300
Berwyn, PA 19312
Telephone (484) 324-6800
Facsimile: (484) 631-1305
E-mail: rmaniskas@rmclasslaw.com

*Attorneys for Proposed Intervenor Dennis Palkon*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2020, I electronically filed the above-titled document with the Clerk of Court using the CM/ECF system which will send notification of such filing to those registered as CM/ECF participants.

/s/ *William H. Narwold*
William H. Narwold (CT 00133)