## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RYAN MERHOLZ and MELVYN KLEIN, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC., | Case No.: 3:20-cv-00557-VAB |
| | Date: September 20, 2021 |
| Plaintiffs, | |
| v. | |
| VINCENT K. MCMAHON, STEPHANIE MCMAHON, PAUL LEVESQUE, FRANK A. RIDDICK, III, STUART U. GOLDFARB, LAUREEN ONG, ROBYN W. PETERSON, MAN JIT SINGH, JEFFREY R. SPEED, ALAN M. WEXLER, GEORGE A. BARRIOS, and MICHELLE D. WILSON, | |
| Defendants, | |
| -and- | |
| WORLD WRESTLING ENTERTAINMENT, INC., | |
| Nominal Defendant. | |
| DANIEL KOOI, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC., | Case No.: 3:20-cv-00743-VAB |
| Plaintiff, | |
| v. | |
| VINCENT K. MCMAHON, FRANK A. RIDDICK, III, JEFFREY R. SPEED, PATRICIA A. GOTTESMAN, STUART U. GOLDFARB, LAUREEN ONG, PAUL LEVESQUE, ROBYN W. PETERSON, STEPHANIE MCMAHON, MAN JIT SINGH, ALAN M. WEXLER, GEORGE A. | |

[Caption Continued on Next Page]

BARRIOS, and MICHELLE D. WILSON,

                       Defendants,

     -and-

WORLD WRESTLING ENTERTAINMENT,
INC.,

                 Nominal Defendant.

---

RODNEY NORDSTROM, Derivatively on Behalf of
WORLD WRESTLING ENTERTAINMENT,
INC.,

                Plaintiff,

     v.

VINCENT K. MCMAHON, GEORGE A.
BARRIOS, MICHELLE D. WILSON,
STEPHANIE MCMAHON, PAUL LEVESQUE,
FRANK A. RIDDICK III, STUART U. GOLDFARB,
LAUREEN ONG, ROBYN W. PETERSON, MAN
JIT SINGH, JEFFREY R. SPEED, ALAN M.
WEXLER, and PATRICIA A. GOTTESMAN,

                 Defendants,

     -and-

WORLD WRESTLING ENTERTAINMENT,
INC.,

                 Nominal Defendant.

Case No. 3:20-cv-00904-VAB

[Caption Continued on Next Page]

| | |
|---|---|
| RYAN B. MERHOLZ and NICHOLAS JIMENEZ, Derivatively On behalf Of WORLD WRESTLING ENTERTAINMENT, INC., | Case No. 3:21-cv-00789-VAB |
| Plaintiffs, | |
| v. | |
| VINCENT K. MCMAHON, STEPHANIE MCMAHON, PAUL LEVESQUE, FRANK A. RIDDICK, III, STUART U. GOLDFARB, LAUREEN ONG, ROBYN W. PETERSON, MAN JIT SINGH, JEFFREY R. SPEED, ALAN M. WEXLER, GEORGE A. BARRIOS, and MICHELLE D. WILSON, | |
| Defendants, | |
| -and- | |
| WORLD WRESTLING ENTERTAINMENT, INC., | |
| Nominal Defendant. | |
| JESSE REZENDES, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC., | Case No. 3:21-cv-00793-VAB |
| Plaintiff, | |
| v. | |
| VINCENT K. MCMAHON, GEORGE A. BARRIOS, and MICHELLE D. WILSON, | |
| Defendants, | |
| -and- | |
| WORLD WRESTLING ENTERTAINMENT, INC., | |
| Nominal Defendant | |

[Caption Continued on Next Page]

| | |
|---|---|
| CITY OF PONTIAC POLICE AND FIRE RETIREMENT SYSTEM, derivatively on behalf of WORLD WRESTLING ENTERTAINMENT, INC., | Case No. 3:21-cv-00930-VAB |
| Plaintiff, | |
| v. | |
| VINCENT K. MCMAHON, GEORGE A. BARRIOS, and MICHELLE D. WILSON, | |
| Defendants, | |
| -and- | |
| WORLD WRESTLING ENTERTAINMENT, INC., | |
| Nominal Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF SHAREHOLDERS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     OVERVIEW OF THE LITIGATION .................................................................3

        A.      Factual Summary ....................................................................................3

        B.      Procedural History ..................................................................................4

        C.      The Parties' Settlement Negotiations .....................................................5

        D.      Recommendation by Independent Directors and Approval of Settlement
                by WWE ...................................................................................................6

III.    THE SETTLEMENT TERMS .............................................................................6

IV.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ...8

        A.      Applicable Legal Standards ....................................................................8

        B.      The Settlement Is the Product of Arm's-Length Negotiations by
                Experienced and Well-Informed Counsel..............................................10

        C.      The Settlement Confers Valuable Benefits upon WWE and Falls Well
                Within the Range of Possible Approval.................................................13

        D.      Continued Litigation Would be Risky, Costly, and Time-Consuming.................16

V.      NOTICE TO WWE SHAREHOLDERS SATISFIES THE REQUIREMENTS OF
        RULE 23.1(C) AND DUE PROCESS..............................................................19

VI.     PROPOSED SCHEDULE OF EVENTS...........................................................21

VII.    CONCLUSION...................................................................................................22

# TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*Arbuthnot v. Pierson*,
607 F. Appx. 73 (2d Cir. 2015)......................................................................11

*Brooks v. Am. Exp. Indus., Inc.*,
No 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977) ..............11, 12

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974)......................................................................10, 16

*City of Providence v. Aéropostale, Inc.*,
No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014)....................11

*City of Warren Police and Fire Retirement System v. World Wrestling Entertainment, Inc., et al.*,
Case No. 1:20-cv-02031-JSR (S.D.N.Y.) ............................................................12, 13, 18

*Cohn v. Nelson*,
375 F. Supp. 2d 844 (E.D. Mo. 2005)..........................................................16, 17

*Grant v. Bethlehem Steel Corp.*,
823 F.2d 20 (2d Cir. 1987)........................................................................18

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)..............................................................................13

*In re AOL Time Warner S'holder Derivative Litig.*,
No. 02 Civ. 6302 (SWK), 2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) ......................8, 14

*In re Apollo Grp., Inc. Sec. Litig.*,
No. CV 04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd & remanded*, No. 08-6971, 2010 WL 5927988
(9th Cir. June 23, 2010) ........................................................................18

*In re Austrian & German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000)..............................................................11

*In re Currency Conversion Fee Antitrust Litig.*,
No. MDL No. 1409, 2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006) ................10

*In re Drexel Burnham Lambert Grp. Inc.*,
995 F.2d 1138 (2d Cir. 1993)....................................................................19

*In re Lloyd's Am. Tr. Fund Litig.*,
No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002).......18

*In re Metro. Life Derivative Litig.*,
    935 F. Supp. 286 (S.D.N.Y. 1996)............................................................................16, 19

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ...........................................................................................10

*In re NVIDIA Corp. Derivative Litig.*,
    Master File No. C-06-06110-SBA (JCS),
    2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Mar. 18, 2009)..................................................14

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .................................................................................................17

*In re Pfizer Inc., S'holder Derivative Litig.*,
    780 F. Supp. 2d 336 (S.D.N.Y. 2011)............................................................................14, 17

*In re Prudential Sec. Inc. P'ships Ltd. Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) .........................................................................................10

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008)............................................................................10, 11

*Lewis v. Anderson*,
    477 A.2d 1040 (Del. 1984) ..................................................................................................17

*Lewis v. Anderson*,
    692 F.2d 1267 (9th Cir. 1982) .............................................................................................14

*Lewis v. Newman*,
    59 F.R.D. 525 (S.D.N.Y. 1973) ..........................................................................................17

*Merholz v. McMahon*,
    No. 3:20-CV-00557-VAB, 2020 WL 6546007 (D. Conn. Nov. 6, 2020) ....................7, 15

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)..............................................................................................................14

*Milstein v. Werner*,
    57 F.R.D. 515 (S.D.N.Y. 1972) ..........................................................................................16

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)..............................................................................................................19

*Republic Nat'l Life Ins. Co. v. Beasley*,
    73 F.R.D. 658 (S.D.N.Y. 1977) ............................................................................................9

*Schimmel v. Goldman*,
    57 F.R.D. 481 (S.D.N.Y. 1973) ............................................................................................9

*Unite Nat'l Ret. Fund v. Watts*,
No. 04-CV-3603 (DMC), 2005 WL 2877899 (D.N.J. Oct. 28, 2005)..............................14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)................................................................................................11

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)................................................................................................10

*Zapata Corp. v. Maldonado*,
430 A.2d 779 (Del. 1981) .................................................................................................11

## STATUTES, RULES & OTHER AUTHORITIES

Alba Conte & Herbert Newberg, *Newberg on Class Actions* §22.110 (4th ed. 2002) ...................9

Fed. R. Civ. P. 23.1(c) ...........................................................................................................9

5 James W. Moore, *Moore's Federal Practice* 23.83[1] (3d ed. 2002)...........................................9

*Manual for Complex Litigation* (4th ed. 2004) .......................................................................9, 10

Proposed intervenor Dennis Palkon ("Proposed Intervenor"), by and through his undersigned counsel, in coordination with plaintiffs Ryan Merholz, Melvyn Klein, Nicholas Jimenez, Rodney Nordstrom, Daniel Kooi, City of Pontiac Police and Fire Retirement System, Jesse Rezendes (collectively "Federal Plaintiffs" or "Plaintiffs"), and the Delaware plaintiffs Amer Dastgir, Bernard Leavy, and Robert Lowinger ("Delaware Plaintiffs"), and their respective counsel, respectfully submit this Memorandum of Law in Support of Shareholders' Unopposed Motion for Preliminary Approval of Settlement (the "Motion") of the shareholder derivative actions (the "Actions") brought on behalf of nominal defendant World Wrestling Entertainment, Inc. ("WWE" or the "Company") against certain of its current and former directors and officers.[1]

All capitalized terms not defined herein shall have the same meaning as set forth in the Stipulation and Agreement of Settlement ("Settlement," "Stipulation," or "Stip.") dated September 17, 2021, and filed as Exhibit A to the Declaration of William H. Narwold in Support of Shareholders' Unopposed Motion for Preliminary Approval of Settlement ("Narwold Decl."), filed concurrently herewith.

## I.    INTRODUCTION

The shareholder derivative actions arose from alleged breaches of duty by the controlling stockholder and board of directors ("Board") of WWE in connection with the failure to disclose the termination of one of WWE's material contracts, coupled with the sale by the controller and other insiders of massive amounts of WWE stock before that contract termination was disclosed. Numerous WWE investors filed various forms of actions in response, including serving inspection

---

[1] Federal Plaintiffs, Proposed Intervenor, and Delaware Plaintiffs, shall be collectively referred to as "Shareholders" or "Shareholder Plaintiffs."

demands under the Delaware corporate statute, leading to the filing of several shareholder derivative complaints in various courts.

This Court dismissed the first three of those suits and had a fully briefed motion to intervene by Proposed Intervenor, while other investors were pursuing a range of claims in other jurisdictions. Beginning in March 2021, counsel to Proposed Intervenor engaged with Defendants' Counsel with respect to a potential settlement, leading to the proposed Settlement described herein.

Following extensive good faith and arm's-length negotiations, the parties to the Actions (in coordination with all of the above-referenced Shareholders) have agreed to the Settlement, which fully resolves and settles the Released Claims. The Settlement requires WWE to maintain for a period of at least seven (7) years the Modified Corporate Governance and Oversight Functions (including implementing an extensive Amended and Restated Insider Trading Policy), as set forth in the attachments to the Settlement (the "Governance Reforms") and summarized in more detail below. The Governance Reforms confer substantial benefits on WWE and will help prevent future damage to the Company of the type alleged in the Actions.

WWE, acting through its independent directors, and the DRC have reviewed the allegations and the Settlement, and in a good faith exercise of business judgment determined that the terms of the Settlement are fair, reasonable, and adequate, and in the best interests of WWE and its shareholders, and confer substantial benefits upon WWE and its shareholders.

At the preliminary approval stage, the Court need only determine that the proposed Settlement is within the range of what might be found to be fair, reasonable, and adequate, such that notice of the Settlement should be provided to WWE shareholders and a hearing scheduled for consideration of final settlement approval. The proposed Settlement plainly meets this

standard. In addition, the proposed schedule and notice are adequate to apprise shareholders of the Settlement's terms and to afford them a fair opportunity to submit objections, if any.[2]

Accordingly, Shareholders respectfully request that the Court: (i) preliminarily approve the Settlement filed concurrently herewith; (ii) approve the form of the Notice and Summary Notice, and direct that they be published and posted in the time and manner described in the Settlement; and (iii) schedule a hearing at the Court's earliest convenience after granting preliminary approval to consider final approval of the Settlement and objections, if any, by WWE shareholders (the "Settlement Hearing").

## II.     OVERVIEW OF THE LITIGATION

### A.     Factual Summary

Before the Court are shareholder derivative actions brought for the benefit of WWE, against certain of its officers and directors, seeking to remedy alleged claims of breach of fiduciary duties, waste of corporate assets, unjust enrichment, and violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") that occurred between February 7, 2019 through the present (the "Relevant Period") and have caused substantial harm to the Company.

The relevant allegations concern the Defendants' statements about the Company's dealings with Orbit Showcase Network ("OSN"), WWE's attempts to secure a new media distribution rights deal, and its vital business in the Middle East and North Africa region ("MENA"). The Company

---

[2] After the material substantive terms of the Settlement were determined and agreed upon, Shareholders' Counsel and counsel for Defendants (including the demand review committee, "DRC") separately negotiated the attorneys' fees and expenses to be paid to Shareholder Plaintiffs' counsel in recognition of the substantial benefits conferred on the Company. At this stage of the settlement approval process, the Court is not being asked to evaluate or approve the agreed Fee and Expense Award beyond determining that the Settlement as a whole falls within a range that might be approved as fair and reasonable, such that notice should issue to WWE Shareholders and a hearing should be set for final settlement review and approval.

had entered into two relevant agreements in the MENA region. A five-year arrangement with OSN, a Kuwaiti-controlled direct-broadcast satellite provider, gave OSN exclusive rights of WWE's content for its region. In addition, WWE entered into a ten-year partnership with the Ministry of Sports of Saudi Arabia (a Saudi government body previously known as, and referenced herein, as the "General Sports Authority") to host live events in Saudi Arabia. The OSN deal was set to expire at the end of 2019.

In November 2018, OSN told WWE that it would terminate their relationship, as OSN was closing its sports channels. The parties thereafter negotiated a separation agreement, signed on December 18, 2018, and effective as of March 31, 2019. At this point in time, WWE lacked a distribution rights agreement for the crucial and growing MENA market. But it did not disclose this information publicly.

In fact, during the relevant time frame, it is alleged that Defendants made false and misleading statements (and improperly concealed certain matters) concerning WWE's ability to expand its operations in the MENA region and renew the crucial media rights distribution deal, both of which were necessary for the Company to meet its financial guidance. At the end of November 2018, and throughout 2019 and into 2020, while allegedly aware of the materially negative fact of WWE's loss of its valuable OSN agreement, and of the above-referenced false and misleading statements, certain of the Defendants, including defendant V. McMahon, the Company's cofounder, Chairman, and Chief Executive Officer ("CEO"), sold a substantial amount of their personally held WWE stock.

### B.     Procedural History

Plaintiffs initiated the Actions starting in April of 2020. (*Merholz and Klein*, *Kooi*, and *Nordstrom*, ECF Nos. 1, respectively). Each of the Plaintiffs' amended their respective complaints

at least once.  (*Merholz and Klein*, ECF Nos. 7 and 39; *Kooi*, ECF No. 36; *Nordstrom*, ECF No. 45).  On August 28, 2020, Defendants moved to dismiss with prejudice Plaintiffs' state and federal claims under Rule 23.1 (demand futility) and Rule 12(b)(6) (failure to state a claim) of the Federal Rules of Civil Procedure.  (*Merholz and Klein*, ECF No. 57; *Kooi*, ECF No. 67; *Nordstrom*, ECF No. 59).  After reviewing the Company's internal books and records pursuant to 8 *Del. C.* § 220 ("Section 220"), Proposed Intervenor filed a motion to intervene, attaching a proposed complaint, on October 23, 2020.

On November 6, 2020, this Court issued its Ruling and Order on the motions to dismiss. (*See Merholz and Klein*, ECF No. 82; *Kooi*, ECF No. 95; *Nordstrom*, ECF No. 87).  This Court granted the Defendants' motions to dismiss all of the claims in each of the *Nordstrom*, *Kooi*, and *Merholz* lawsuits.  However, "[b]ecause of the pending motion to intervene filed by Intervenor Plaintiff Dennis Palkon ... the Court [ruled to] await resolution of that motion and it underlying claims before deciding whether the dismissal [of the three cases would be] with prejudice or [whether the dismissal could] be remedied by seeking leave to file an amended pleading."  (*See Merholz and Klein*, ECF No. 82 at 3; *Kooi*, ECF No. 95 at 3; *Nordstrom*, ECF No. 87 at 3). Thereafter, Defendants opposed Proposed Intervenor's motion and Proposed Intervenor filed a reply in support of his motion.  That motion remained pending as of the parties' execution of the Stipulation.

### C.    The Parties' Settlement Negotiations

With the intervention motion fully briefed and the parties understanding of each other's arguments for and against the Actions proceeding, Proposed Intervenor and Defendants began settlement negotiations.  As a result of extensive, arm's-length negotiations which began in March 2021, the Parties reached an agreement in principle to settle the Claims, which was memorialized

in a Settlement Term Sheet executed on August 16, 2021.  The Term Sheet set forth, among other things, the Parties' agreement to resolve the Claims in exchange for the Modified Corporate Governance and Oversight Functions as now set forth in the Settlement.

In connection with settlement discussions and negotiations leading to the proposed Settlement set forth in this Stipulation, counsel for the Parties did not discuss the amount of any application by Shareholders' counsel for an award of attorneys' fees and expenses until the substantive terms of the Settlement were negotiated at arm's-length and agreed upon.

### D.      Recommendation by Independent Directors and Approval of Settlement by WWE

In response to certain of the Shareholders' demand to initiate litigation, the Board of WWE formed a DRC made up of outside directors.  The DRC recommended to WWE's Board that it approve the proposed Settlement on the terms and conditions set forth in this Stipulation because it is fair, reasonable, and adequate to WWE and its shareholders, and that the substantive terms of the Settlement are in the best interests of WWE and its shareholders relative to the likely costs and rewards of litigation.   WWE, acting through its independent directors, then reviewed the allegations and the Settlement terms, and in a good faith exercise of business judgment determined that the terms of the Settlement confer substantial benefits on and are in the best interests of WWE and its shareholders.

## III.     THE SETTLEMENT TERMS

The proposed Settlement is a strong result, reached after extensive, arm's-length negotiations.  In consideration for the Settlement and release of all Released Shareholders' Claims against the Released Defendants' Persons, WWE shall implement the Modified Corporate Governance and Oversight Functions as set forth in Exhibit A to the Stipulation.  The Modified Corporate Governance and Oversight Functions are tailored to address the specific issues raised in

the litigation, including the weaknesses that this Court identified when it dismissed the initial actions.  In summary, these enhancements provide that management will immediately report to the Board any cancellation or overt threaten beach of any material contract; that management will provide a report to the Board on at least a quarterly basis key issues with the performances or potential performances of Material Contracts, including any notices of defaults, any payment delays over 30 days, any nonpayment of a material contract, and any written requests or agreements to materially modify the payments terms or structure of any Material Contract.  As a result of these reforms, the members of the Board would receive notifications about the issues with the contracts in the MENA region that formed the heart of the Actions.  *See Merholz v. McMahon*, No. 3:20-CV-00557-VAB, 2020 WL 6546007, at *8-9 (D. Conn. Nov. 6, 2020) (holding that the outside directors did not face liability because the plaintiffs' allegations failed to allege that these directors had "actual or constructive knowledge" and distinguishing this matter from cases where plaintiffs "provided a plausible basis for the alleged knowledge").

In addition, WWE agreed to adopt the "Amended and Restated Insider Trading Policy" (the "Insider Trading Policy").  Again, the reforms Shareholders were able to secure directly address the wrongdoing alleged in these Actions.  Among other things, the Insider Trading Policy prohibits trading by directors, officers, or employees while they are in possession of nonpublic information and also prohibits the sharing of such material information, including information about material contracts concerning the television rights to WWE broadcasts.  The Insider Trading Policy also requires that the Company's Chief Legal Officer or Deputy General Counsel pre-clear *each* transaction concerning the Company's securities a director, executive officer, or person who has a title of Executive Vice President or higher intends to enter into.  The Insider Trading Policy explicitly states the compliance officer is "under no obligation to approve a trade or other

transaction submitted for pre-clearance and may determine not to permit the trade or other transaction." This pre-clearance gives the Company an additional level to prevent trading on the basis of insider information, whether done innocently of with malicious purpose. The Insider Trading Policy than builds on these controls by prohibiting trading during "blackout" periods surrounding earnings results and other event specific material events. The Insider Trading Policy also details the potential penalties for noncompliance, including: termination, disgorgement of profits, and reimbursements for fines, fees, or expenses the Company incurs as a result of the trading.

The Governance Reforms will be maintained for at least seven years from the date of implementation.

WWE acknowledges that the pendency, prosecution, and settlement of the Shareholders' various derivative and demand actions and the litigation efforts of the Shareholder Plaintiffs and their counsel, were the primary factor in the Company's decision to adopt, implement, and maintain the Governance Reforms. WWE, acting through its independent directors, acknowledges that the Governance Reforms confer a substantial benefit upon the Company. (*See* Stip. at 7).

## IV.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.     Applicable Legal Standards

Public policy strongly favors the settlement of disputed claims, especially in complex shareholder derivative litigation because it is "'notoriously difficult and unpredictable.'" *In re AOL Time Warner S'holder Derivative Litig*., No. 02 Civ. 6302 (SWK), 2006 WL 2572114, at \*3

(S.D.N.Y. Sept. 6, 2006);[3] *Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1973) (same); *Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977) (same).

Pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). "The role of the court and the criteria considered in evaluating the adequacy and fairness of a derivative settlement are substantially the same as in a class action." Alba Conte & Herbert Newberg, *Newberg on Class Actions* §22.110 at 476 (4th ed. 2002).

The procedure for the Court's review of a derivative settlement is well-established. Preliminary approval is the first of two stages that comprise the approval procedure. The Court first reviews the proposal preliminarily to determine whether it is sufficient to warrant notice to stockholders and a hearing. The Court would then consider final approval of the settlement at a settlement hearing, after notice of settlement is provided to stockholders. *Manual for Complex Litigation* §13.14 at 173 (4th ed. 2004).

Preliminary approval does not require the Court to answer the ultimate question of whether the proposed settlement is fair, reasonable, and adequate. *Id*. Rather, that determination is made only after notice of the settlement has been given to stockholders and after they have been given the opportunity to comment. 5 James W. Moore, *Moore's Federal Practice* 23.83[1] at 23-336.2 to 23-339 (3d ed. 2002).

---

[3] Here, as throughout, all emphasis is added and citations and footnotes are omitted unless otherwise noted.

The standards for preliminary approval are "not as stringent as those" for final approval. *Manual for Complex Litigation* §21.632 (4th ed. 2004).  To grant preliminary approval, the Court need only make a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement.  *In re Prudential Sec. Inc. P'ships Ltd. Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995).  The sole issue before the Court is whether the Settlement falls within the range of what could be found to be fair, adequate, and reasonable, such that it would be appropriate to give notice to the stockholders and schedule a hearing to consider final approval of the Settlement.  *In re Currency Conversion Fee Antitrust Litig.*, No. MDL No. 1409, 2006 U.S. Dist. LEXIS 81440, at *13 (S.D.N.Y. Nov. 8, 2006) (court to conduct "'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate"); *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (preliminary approval requires only a "preliminary evaluation of the fairness of the settlement, prior to notice").  The substantive determination regarding whether a proposed settlement is fair, adequate, and reasonable is to be made after notice of the settlement has been given to stockholders and after they have been given an opportunity to voice their views regarding the settlement.  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974).

### B.      The Settlement Is the Product of Arm's-Length Negotiations by Experienced and Well-Informed Counsel

In determining whether a settlement is fair, courts focus on whether the settlement was reached as a result of good faith bargaining at arm's-length without collusion.  *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982).  Here, the Settlement was negotiated between and among experienced and sophisticated counsel and provides substantial benefits to the Company while eliminating the expense, risk, and delay inherent in such complex litigation, including the very real risk of no recovery.  "[A] strong presumption of fairness attaches" to settlements negotiated at arm's-length by experienced and well-informed counsel.  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp.

2d 570, 576 (S.D.N.Y. 2008); *see Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a … settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'"); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000) (settlement that "is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex ... litigation … will enjoy a presumption of fairness"). As the court observed in *City of Providence v. Aéropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015), an "initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations.…" *Id.* at *4; *see also Telik*, 576 F. Supp. 2d at 576 ("a strong presumption of fairness" attaches to settlements negotiated at arm's-length by experienced counsel).

Shareholders' Counsel have decades of experience in shareholder representative litigation, their skills have been recognized by courts across the nation in dozens of appointments to act as lead counsel in shareholder derivative and class actions, and have secured some of the largest and precedent setting settlements in shareholder representative litigation. *See* Narwold Decl., Exs. B-D (firm resumes of Shareholders' Counsel). Defendants, in turn, were vigorously represented by Paul, Weiss, Rifkind, Wharton & Garrison LLP, one the world's preeminent corporate defense firms. Further, the DRC had its own independent counsel, Simpson Thacher & Bartlett LLP.

Exercise of independent business judgment by directors in evaluating the propriety of resolving derivative claims is traditionally afforded significant deference by courts. *See Zapata Corp. v. Maldonado*, 430 A.2d 779, 782 (Del. 1981); *Brooks v. Am. Exp. Indus., Inc.*, No 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313, at *10 (S.D.N.Y. Feb. 17, 1977) ("The Court is of the view

that in this case, the decision of the AEI board to approve this settlement is appropriately afforded certain deference; it is a business judgment with presumptive validity.").  Here, the WWE Board, including each of its independent, non-defendant directors, has approved the Settlement and each of its terms as being in the best interests of WWE and its stockholders.  Stip. at 7.  The WWE Board did so only after the recommendation by the DRC, advised by its own counsel.  *Id.*  The Board, including each of its independent, non-defendant directors, also has acknowledged and agrees that the Settlement is fair, reasonable, and adequate, and confers substantial benefits upon WWE and its stockholders.  *Id.*

In addition, Shareholders and their counsel acted on an informed basis in negotiating the Settlement.  Shareholders, by and through their counsel, thoroughly considered the facts and law underlying the Actions and have conducted an extensive investigation relating to the claims and the underlying events alleged in the Actions, including:  (i) analyzing the Company's filings with the U.S. Securities and Exchange Commission ("SEC"); (ii) analyzing, news reports and other information concerning the underlying matters alleged in the complaint; (iii) analyzing the pleadings and other papers filed in *City of Warren Police and Fire Retirement System v. World Wrestling Entertainment, Inc., et al.*, Case No. 1:20-cv-02031-JSR (S.D.N.Y.) (the "Securities Class Action"), including the court's order on the motion to dismiss in that case; (iv) researching the applicable law with respect with the claims asserted in the Actions and the potential defenses thereto; (v) analyzing nonpublic documents produced to Proposed Intervenor by WWE in response to his Section 220 demand that went directly to the alleged wrongdoing and the Company's internal controls; and (vi) researching the Company's corporate governance structures and developing and negotiating the governance and oversight reform package.

Shareholders believe that the claims asserted in the Actions have merit (although Defendants have denied any wrongdoing). Nonetheless, Shareholders and Shareholders' Counsel also recognize and acknowledge the significant risk, expense, and length of continued proceedings necessary to prosecute the Actions through trial and appeal. Stip., ¶S. Shareholders and Shareholders' Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex cases such as the Action, as well as the difficulties and delays inherent in such litigation. Shareholders and Shareholders' Counsel are also mindful of the inherent problems of proving the violations asserted in the Actions. After weighing the risks of continued litigation, Shareholders and Shareholders' Counsel determined that it is in the best interests of WWE and its stockholders that the Actions be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation, and that those terms and conditions are fair, reasonable, adequate, and confer substantial benefits upon WWE and WWE Shareholders. *Id.*

In sum, Shareholders, by and through Shareholders' Counsel, and the Defendants, by and through their counsel, and exercising their business judgment and mindful of their duties to stockholders, have independently considered the Settlement and all agree that it is in the best interest of WWE and its stockholders. Stip. at 7. This weighs in favor of settlement approval.[4]

### C.  The Settlement Confers Valuable Benefits upon WWE and Falls Well Within the Range of Possible Approval

"[S]trong corporate governance is fundamental to the economic well-being and success of a corporation;" accordingly, courts have long "recognized that corporate governance reforms such

---

[4] While the Court need not address attorneys' fees until final approval, it bears mention that arm's-length fee negotiations receive similar deference. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (negotiated fees strongly preferred) ("A request for attorney's fees should not result in a second major litigation.").

as those achieved here provide valuable benefits for public companies." *In re NVIDIA Corp. Derivative Litig.*, Master File No. C-06-06110-SBA (JCS), 2009 U.S. Dist. LEXIS 24973, at *11-12 (N.D. Cal. Mar. 18, 2009).   Courts widely recognize that "a corporation may receive a 'substantial benefit' from a derivative suit ... regardless of whether the benefit is pecuniary in nature." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970); *see AOL Time Warner*, 2006 WL 2572114, at *4 (non-monetary benefits alone can be "substantial enough to merit [settlement] approval"); *Lewis v. Anderson*, 692 F.2d 1267, 1271 (9th Cir. 1982) ("[w]hile less tangible than the recovery of money damages," corporate governance reforms that remedy alleged wrongdoing are "sufficiently beneficial to a corporation" to warrant settlement approval and fee award).   A non-monetary benefit is sufficient to support settlement and an award of attorneys' fees and expenses where it "'accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest.'"   *Mills*, 396 U.S. at 396; *see In re Pfizer Inc., S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 342 (S.D.N.Y. 2011) (reforms "provide considerable corporate benefits … in the form of a significantly improved institutional structure for detecting and rectifying the types of wrongdoing that have ... caused extensive harm to the company"); *Unite Nat'l Ret. Fund v. Watts*, No. 04-CV-3603 (DMC), 2005 WL 2877899, at *2 (D.N.J. Oct. 28, 2005) (non-monetary benefits support settlement where "the relief is intended to prevent future harm").

All parties agree that the Settlement provides for significant material benefits for the Company.   Stip. at 7.   The Settlement provides for, *inter alia*, enhancements to the Board's corporate governance and oversight functions.   These enhancements are targeted to directly alleged the wrongdoing here.   To start, Shareholders secured new reporting requirements that require management to report to the Board concerning the termination or ***threatened*** termination of

material contracts.  Stip., Ex. A.  In addition, management is required to report at least quarterly on any defaults, delays, nonpayments, or request to modify payment terms of any material contracts.   As the Court noted in its order, one of the key difficulties in this matter was demonstrating Defendants' knowledge of the termination of the OSN contract.  *See, e.g.*, *Merholz*, 2020 WL 6546007, at *8.  Through the Settlement, Shareholders have ensured on a going forward basis that any such termination reach the Board immediately, requiring proper responsive action, including disclosure when appropriate.

In addition, Shareholders drafted and the Company agreed to adopt a substantially overhauled insider trading policy.  The revised insider trading policy enshrines best practices concerning director and officer and employee trading in the Company's stock, including: (a) pre-review by the legal department of 10b5-1 trading plans; (b) a prohibition on short selling by Designated persons; (c) a prohibition on standing and limit orders by designated person, except pursuant to ta 10b5-1 trading plan; and (d) a prohibition on Designated Persons purchasing the Company's securities on margin.  The insider trading policy also sets forth in easy to understand language what is material inside information, what it means to trade on insider information, and the prohibitions on sharing such material insider information.  The Company is required to provide the insider trading policy to all directors, officers, and employees, who are then required to certify in writing that they have read and understand the policy.

Taken together, the Governance Reforms will substantially enhance WWE's internal controls and Board oversight, will help ensure timely and accurate public statements and legal compliance moving forward, and will help prevent a recurrence of the type of alleged failures at issue in this case.  The Settlement is a good resolution for WWE and it positions the Company to reap the long-term benefits of strong corporate governance enhancements that will protect the

Company from the type of harm alleged in this case in the future. WWE and the Individual Defendants acknowledge and agree that the Governance Reforms confer substantial benefits upon WWE and its stockholders. Stip. at 7.

Importantly, WWE has agreed to maintain all of these governance measures for a minimum of seven years—a substantial amount of time intended to ensure the Governance Reforms become embedded in the Company's policies, practices, and corporate culture, thus protecting against discontinuation of these Governance Reforms following the seven-year period. Stip., Ex. A; *see also*, *e.g.*, *Cohn v. Nelson*, 375 F. Supp. 2d 844, 850 (E.D. Mo. 2005) (finding that corporate governance measures which must be in place for no less than three years will "provide meaningful ways of avoiding the problems [the company] experienced in the recent past").

### D.    Continued Litigation Would be Risky, Costly, and Time-Consuming

An evaluation of the benefits of settlement must be tempered by the recognition that any compromise involves concessions by all settling parties. Indeed, "inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972). The likely complexity, expense, and duration of further litigation, and the significant risk that it would produce no benefit at all for WWE, weigh in favor of preliminary approval. *See Grinnell*, 495 F.2d at 463; *In re Metro. Life Derivative Litig.*, 935 F. Supp. 286, 294 (S.D.N.Y. 1996) (unless proposed settlement clearly inadequate, approval preferable to lengthy and expensive litigation with uncertain results).

Here, the Settlement provides substantial benefits to WWE and its stockholders while eliminating numerous risks, costs, and burdens of litigation for all concerned, including the Company. Balanced against the delays, costs, and particularly the risks of attempting to secure additional benefits through further litigation and trial, the substantial benefits of the Settlement

clearly fall within the range of possible approval as fair, reasonable, and adequate.  *See Pfizer Inc.*, 780 F. Supp. 2d at 340.

While Shareholders believes that the claims alleged in the Action are meritorious, continued litigation of the Action would be complex, costly, and of substantial duration.  They also acknowledge that "the odds of winning [a] derivative lawsuit [a]re extremely small."  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Cohn*, 375 F. Supp. 2d at 852; *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973).  Indeed, this Court also already dismissed the pending actions once and was considering whether to allow the Proposed Intervenor to take over the litigation.

Here, Proposed Intervenor would first need to prevail on its motion to intervene in order to take over as the representative shareholder plaintiff in the Actions.  Defendants vigorously opposed this intervention, arguing that the intervention was futile because Proposed Intervenor's complaint failed to cure the deficiencies in Plaintiffs' complaints.  They also argued that the Proposed Intervenor's complaint failed to state a viable claim against the Individual Defendants.  In order to be successful, Proposed Intervenor would have to convince the Court that the internal documents he was able to secure from the Company demonstrated that demand was indeed futile on the Board.  If Proposed Intervenor was unsuccessful in that effort, the derivative claims brought on behalf of WWE likely would be dismissed and WWE would recover nothing.  *See Lewis v. Anderson*, 477 A.2d 1040 (Del. 1984).  Even if Proposed Intervenor was successful on the intervention motion, Defendants undoubtedly would move to dismiss again.

The Shareholders that made litigation demands also faced a daunting task.  They would need to argue that their demands were wrongfully rejected, even though the Board formed the DRC, which was advised by its own independent counsel.

If Shareholders overcame those hurdles, litigation would still be extremely complex, costly, and of substantial duration.  Document discovery would need to be conducted, depositions would need to be taken, experts would need to be designated, and expert discovery conducted.  Also, hanging over every derivative action is the possibility that the Board could form a special litigation committee ("SLC") made up of truly independent directors, and that such SLC usually vote to dismiss litigation.

The Defendants' expected motions for summary judgment would have to be briefed and argued and a trial would have to be held.  Even if liability was established, the amount of recoverable damages would still have posed significant issues—including the fact that, here, the money used to settle the related Securities Class Action was paid by WWE's insurer, not the Company itself—and would have been subject to further litigation.  *See In re Lloyd's Am. Tr. Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at *61 (S.D.N.Y. Nov. 26, 2002) ("The determination of damages ... is a complicated and uncertain process, typically involving conflicting expert opinions.  The reaction of a jury to such complex expert testimony is highly unpredictable.").

Moreover, a victory at trial is no guarantee that the judgment would ultimately be sustained on appeal or by the trial court.  *See, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd & remanded*, No. 08-6971, 2010 WL 5927988 (9th Cir. June 23, 2010) (holding evidence insufficient to support jury verdict for stockholders of $277 million).  Add to these post-trial and appellate risks, the difficulty and unpredictability of a lengthy and complex trial—where witnesses could suddenly become unavailable or the fact finder could react to the evidence in unforeseen ways—and the benefits of the Settlement become all the more apparent.  *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 24 (2d

Cir. 1987) (affirming settlement where potential defenses presented the "possibility of 'a lesser or no recovery after trial'").

The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several more years of litigation, while providing the Company and its stockholders substantial benefits. *Metro. Life*, 935 F. Supp. at 294 (unless proposed settlement clearly inadequate, approval preferable to lengthy and expensive litigation with uncertain results).

## V.   NOTICE TO WWE SHAREHOLDERS SATISFIES THE REQUIREMENTS OF RULE 23.1(C) AND DUE PROCESS

Fed. R. Civ. P. 23.1(c) requires that the notice of a proposed shareholder derivative settlement be given to stockholders "in the manner that court orders." Notice in a derivative action must meet the due process requirement of being "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the [settlement] and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Here, the Stipulation and proposed Preliminary Approval Order contemplate that no later than ten (10) business days after the entry of the Preliminary Approval Order, WWE shall: (i) disclose the terms of Settlement through the filing of a Form 8-K with the SEC, which filing shall include a copy of the Notice and the Stipulation; (ii) publish the Notice and the Stipulation on WWE's corporate website, which shall remain posted on WWE's corporate website through the Effective Date of the Settlement; and (iii) cause a Summary Notice to be published once as a WWE corporate press release.

Consistent with Rule 23.1 and due process standards, the proposed form of Notice to WWE's shareholders is reasonably "calculated to apprise [them] of the terms of a proposed settlement and the options available in connection with the judicial proceeding." *In re Drexel Burnham Lambert Grp. Inc.*, 995 F.2d 1138, 1144 (2d Cir. 1993). The Notice is drafted in plain

language that clearly describes the nature of the derivative Actions; the allegations and claims; the terms of the Settlement; information regarding Shareholders' Counsel's fee and expense application; the procedure for objecting to the Settlement and/or the fee and expense application; and the date, time, and place of the final approval hearing.  *See* Stip., Ex. C.

The proposed method of notice to stockholders here satisfies Rule 23.1 and due process standards in derivative actions brought by stockholders on behalf of public corporations.  Here, the Company is filing a Form 8-K, issuing a corporate press release, and posting the Notice on its website.  Personal notice is unnecessary because, unlike a stockholder class action, the settlement of a stockholder derivative action resolves claims belonging to, and secures a recovery for, the corporation, not individual class members.  Use of a Form 8-K together with publication on company websites is the accepted practice in stockholder derivative actions.  *See In re Rambus Inc. Derivative Litig.*, No. 5:06-cv-03513-JF, slip op., ¶8 (N.D. Cal. Oct. 30, 2008) (approving notice by filing on Form 8-K, Business Wire press release, and posting on company's website), Narwold Decl., Ex. E; *In re: MoneyGram Int'l, Inc. Derivative Litig.*, No. 0:09-cv-03208-DSD-JJG, slip op., ¶3 (D. Minn. Apr. 1, 2010) (same), Narwold Decl., Ex. F; *In re Comverse Tech., Inc. Sec. Litig.*, No. 2:06-cv-01849-NGG-RER, slip op., ¶¶9-11 (E.D.N.Y. Apr. 6, 2010) (approving notice by filing on Form 8-K, publication in *The Wall Street Journal* and posting on company's website), Narwold Decl., Ex. G; *In re Marvell Tech. Grp. Ltd. Derivative Litig.*, No. 5:06-cv-03894-RMW, slip op., ¶4 (N.D. Cal. May 21, 2009) (same), Narwold Decl., Ex. H; *Wandel, et al. v. Brenneman, et al.*, No. 2006 Civ. 117491, slip op., ¶7 (Ga. Super. Ct. Apr. 3, 2008) (approving notice by filing on Form 8-K and publication in Investor's Business Daily), Narwold Decl., Ex. I.

## VI.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the proposed Settlement, Shareholders respectfully request that the Court establish: (i) dates by which notice of the Settlement will be distributed to WWE Shareholders; (ii) the date by which WWE Shareholders may submit any objections to the Settlement or Shareholder Plaintiffs' counsel's fee and expense application; and (iii) the date of a Settlement Hearing, at which the Court will consider whether final approval of the proposed Settlement should be granted.   As set forth in the Preliminary Approval Order, Shareholders propose the following schedule:

| | |
|---|---|
| Filing of Stipulation and Notice along with a Current Report on Form 8-K with the SEC | Not later than 10 business days after the Court enters the Preliminary Approval Order (the "Notice Date") |
| The Company shall post the Notice and the Stipulation on WWE's corporate website | Not later than the Notice Date |
| Publication of the Summary Notice | Not later than the Notice Date |
| Filing of Motion for Final Approval of Settlement | 35 calendar days before Settlement Hearing |
| Last day for stockholders to submit objections to the proposed Settlement or the fee and expense application | 21 calendar days before Settlement Hearing |
| Filing of Reply in support of Final Approval of Settlement and the fee and expense application | 7 calendar days before Settlement Hearing |
| Defendants' Counsel to file affidavit or declaration regarding publication and posting of Notice and Summary Notice | 7 calendar days before Settlement Hearing |
| Settlement Hearing Date | 60 calendar days after entry of the Preliminary Approval Order |

## VII.   CONCLUSION

Given the substantial benefits the Settlement provides to WWE and WWE Stockholders, Shareholders respectfully request that the Court enter the proposed Preliminarily Approval Order, attached as Exhibit B to the Stipulation (Narwold Decl., Ex. A), which: (i) preliminarily approves the proposed Settlement; (ii) approves the form and manner of publication and posting of the proposed Notice and Summary Notice; and (iii) schedules the Settlement Hearing.

Dated: September 20, 2021

Respectfully submitted,

**MOTLEY RICE LLC**

*/s/ William H. Narwold*
William H. Narwold (CT 00133)
One Corporate Center
Hartford, CT 06103
Telephone: (860) 882-1681
Facsimile: (860) 882-1682
E-mail: bnarwold@motleyrice.com

**ROBBINS LLP**
Brian J. Robbins (CT 417036)
Gregory E. Del Gaizo
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsllp.com
        gdelgaizo@robbinsllp.com

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
Mark Lebovitch
Daniel Meyer
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1519
Facsimile: (212) 554-1444
E-mail: markl@blbglaw.com
        daniel.meyer@blbglaw.com

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Dr., Ste. 300
Berwyn, PA 19312
Telephone (484) 324-6800
Facsimile: (484) 631-1305
E-mail: rmaniskas@rmclasslaw.com

*Attorneys for Proposed Intervenor Dennis Palkon*

1541647

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 20, 2021, a copy of foregoing Memorandum of Law in Support of Shareholders' Unopposed Motion for Preliminary Approval of Settlement was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

**MOTLEY RICE LLC**

*/s/ William H. Narwold*
William H. Narwold (CT 00133)
One Corporate Center
Hartford, CT 06103
Telephone: (860) 882-1681
Facsimile: (860) 882-1682
E-mail: bnarwold@motleyrice.com