# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RYAN MERHOLZ and MELVYN KLEIN, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC., | Case No.: 3:20-cv-00557-VAB |
| | Date: November 17, 2021 |
| Plaintiffs, | |
| v . | |
| VINCENT K. MCMAHON, STEPHANIE MCMAHON, PAUL LEVESQUE, FRANK A. RIDDICK, III, STUART U. GOLDFARB, LAUREEN ONG, ROBYN W. PETERSON, MAN JIT SINGH, JEFFREY R. SPEED, ALAN M. WEXLER, GEORGE A. BARRIOS, and MICHELLE D. WILSON, | |
| Defendants, | |
| -and- | |
| WORLD WRESTLING ENTERTAINMENT, INC., | |
| Nominal Defendant. | |
| DANIEL KOOI, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC., | Case No.: 3:20-cv-00743-VAB |
| Plaintiff, | |
| v . | |
| VINCENT K. MCMAHON, FRANK A. RIDDICK, III, JEFFREY R. SPEED, PATRICIA A. GOTTESMAN, STUART U. GOLDFARB, LAUREEN ONG, PAUL LEVESQUE, ROBYN W. PETERSON, STEPHANIE MCMAHON, MAN JIT SINGH, ALAN M. WEXLER, GEORGE A. | |

[Caption Continued on Next Page]

BARRIOS, and MICHELLE D. WILSON,

                          Defendants,

    -and-

WORLD WRESTLING ENTERTAINMENT,
INC.,

                          Nominal Defendant.

| | |
|---|---|
| RODNEY NORDSTROM, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC., | Case No. 3:20-cv-00904-VAB |

                          Plaintiff,

    v.

VINCENT K. MCMAHON, GEORGE A.
BARRIOS, MICHELLE D. WILSON,
STEPHANIE MCMAHON, PAUL LEVESQUE,
FRANK A. RIDDICK III, STUART U. GOLDFARB,
LAUREEN ONG, ROBYN W. PETERSON, MAN
JIT SINGH, JEFFREY R. SPEED, ALAN M.
WEXLER, and PATRICIA A. GOTTESMAN,

                          Defendants,

    -and-

WORLD WRESTLING ENTERTAINMENT,
INC.,

                          Nominal Defendant.

[Caption Continued on Next Page]

| | |
|---|---|
| RYAN B. MERHOLZ and NICHOLAS JIMENEZ, derivatively on behalf of WORLD WRESTLING ENTERTAINMENT, INC., | Case No. 3:21-cv-00789-VAB |
| Plaintiffs, | |
| v. | |
| VINCENT K. MCMAHON, STEPHANIE MCMAHON, PAUL LEVESQUE, FRANK A. RIDDICK, III, STUART U. GOLDFARB, LAUREEN ONG, ROBYN W. PETERSON, MAN JIT SINGH, JEFFREY R. SPEED, ALAN M. WEXLER, GEORGE A. BARRIOS, and MICHELLE D. WILSON, | |
| Defendants, | |
| -and- | |
| WORLD WRESTLING ENTERTAINMENT, INC., | |
| Nominal Defendant. | |
| JESSE REZENDES, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC., | Case No. 3:21-CV-00793-VAB |
| Plaintiff, | |
| v. | |
| VINCENT K. MCMAHON, GEORGE A. BARRIOS, and MICHELLE D. WILSON, | |
| Defendants, | |
| -and- | |
| WORLD WRESTLING ENTERTAINMENT, INC., | |
| Nominal Defendant | |

[Caption Continued on Next Page]

|  |  |
|---|---|
| CITY OF PONTIAC POLICE AND FIRE RETIREMENT SYSTEM, derivatively on behalf of WORLD WRESTLING ENTERTAINMENT, INC.,<br><br>                    Plaintiff,<br><br>     v.<br><br>VINCENT K. MCMAHON, GEORGE A. BARRIOS, and MICHELLE D. WILSON,<br><br>                    Defendants,<br><br>     -and-<br><br>WORLD WRESTLING ENTERTAINMENT, INC.,<br><br>                    Nominal Defendant. | Case No. 3:21-cv-00930-VAB |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
<u>MOTION FOR FINAL APPROVAL OF SETTLEMENT</u>**

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................1

II.  OVERVIEW OF THE LITIGATION ...........................................................3

    A.  Factual Summary .................................................................................3

    B.  Procedural History ..............................................................................5

    C.  The Parties' Settlement Negotiations ................................................6

    D.  Recommendation by Independent Directors and Approval of Settlement by WWE ...................................................................................7

III.  THE SETTLEMENT TERMS ......................................................................7

IV.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL .....................................................9

    A.  Legal Standards Governing Final Approval .....................................9

    B.  Relevant *Grinnell* Factors Demonstrates the Fairness, Reasonableness, and Adequacy of the Settlement ............................................11

        1.  The Settlement Confers Substantial Benefits on WWE ...........................11

        2.  Continued Litigation Would Be Risky, Costly, and Time-Consuming ....14

        3.  The Reaction of Stockholders Further Supports Settlement Approval .....17

    C.  That the Settlement Is the Product of Arm's-Length Negotiations by Experienced and Well-Informed Counsel Also Supports Approval ...................18

V.  THE NEGOTIATED FEE AND EXPENSE AWARD IS REASONABLE ...................21

    A.  Legal Standards Governing Attorneys' Fees and Expenses ....................22

    B.  The *Goldberger* Factors Confirm the Reasonableness of the Negotiated Fee and Expense Award ...................................................................24

        1.  The Fee and Expense Award Is Reasonable in Light of the Benefits Conferred ....24

        2.  The Skill Demonstrated by Plaintiffs' Counsel Supports the Agreed Fee and Expense Award ....25

3.    The Contingency Risk Borne by Plaintiffs' Counsel Supports the
      Agreed Fee and Expense Award.................................................................26

4.    The Time and Expense Devoted to the Litigation Supports the
      Agreed Fee and Expense Award.................................................................26

5.    Public Policy Supports the Agreed Fee and Expense Award ...................28

VI.    CONCLUSION.......................................................................................................28

# TABLE OF AUTHORITIES

**CASES**

*Arbuthnot v. Pierson*,
  607 F. Appx. 73 (2d Cir. 2015)......................................................................18

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985)......................................................................................26

*Bell Atl. Corp. v. Bolger*,
  2 F.3d 1304 (3d Cir. 1993)............................................................................11

*Bozak v. FedEx Ground Package Sys., Inc.*,
  No. 3:11-cv-00738-RNC, 2014 WL 3778211 (D. Conn. July 31, 2014) .........................27

*Brooks v. Am. Exp. Indus., Inc.*,
  No 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977) ....................19

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974).................................................................. *passim*

*City of Providence v. Aéropostale, Inc.*,
  No. 11 Civ. 7132 (CM), 2014 WL 1883494 (S.D.N.Y. May 9, 2014).............................18

*Clark v. Ecolab Inc.*,
  No. 04CIV.4488PAC, 2010 WL 1948198 (S.D.N.Y. May 11, 2010).............................18

*Cohen v. Beneficial Indus. Loan Corp.*,
  337 U.S. 541 (1949)......................................................................................28

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005)..........................................12, 14, 15, 26

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)............................................................................11

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)................................................................... *passim*

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)......................................................................................23

*In re Advanced Battery Techs., Inc. Secs. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ...................................................................19

*In re AOL Time Warner S'holder Derivative Litig.*,
  No. 02 Civ. 6302 (CM), 2010 WL 363113 (S.D.N.Y. Feb. 1, 2010) ...............................28

*In re AOL Time Warner S'holder Derivative Litig.*,
    No. 02 CIV. 6302(SWK), 2006 WL 2572114 (S.D.N.Y. Sept. 6, 2006) .............10, 11, 15

*In re AOL Time Warner, Inc.*,
    No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...........................18

*In re Apollo Grp., Inc. Sec. Litig.*,
    No. CV 04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008) .......................16

*In re Ashanti Goldfields Sec. Litig.*,
    No. CV-00-717 (DGT), 2005 WL 3050284 (E.D.N.Y. Nov. 15, 2005)...........................25

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)..........................................................................18, 20

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)................................................................................23

*In re Citigroup Inc. Bond Litig.*,
    296 F.R.D. 147 (S.D.N.Y. 2013) ......................................................................................17

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 06-cv-1825 (NGG)(RER), 2010 WL 2653354 (E.D.N.Y. June 24,
    2010) ...................................................................................................................................27

*In re Elan Sec. Litig.*,
    385 F. Supp. 2d 363 (S.D.N.Y. 2005)..........................................................................18, 20

*In re Lloyd's Am. Tr. Fund Litig.*,
    No. 96 Civ. 1262 (RWS), 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)................16, 28

*In re Metro. Life Derivative Litig.*,
    935 F. Supp. 286 (S.D.N.Y. 1996) ................................................................10, 14, 17, 18

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................................................28

*In re NeuStar, Inc. Sec. Litig.*,
    No. 1:14cv885, 2015 WL 8484438 (E.D. Va. Dec. 8, 2015) ...........................................19

*In re NVIDIA Corp. Derivative Litig*,
    No. C-06-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22,
    2018) ...................................................................................................................................12

*In re Oracle Sec. Litig.*,
    852 F. Supp. 1437 (N.D. Cal. 1994) ...........................................................................22, 24

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .................................................................15

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ........................18

*In re Pfizer Inc. S'holder Derivative Litig.*,
    780 F. Supp. 2d 336 (S.D.N.Y. 2011).........................................................12, 17

*In re Schering-Plough Corp. S'holders Derivative Litig.*,
    No. 01-1412, 2008 WL 185809 (D.N.J. Jan. 14, 2008)...................................24

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........................................................18

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ...........25

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005).........................................................28

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001).................................................................23

*Int'l Distrib. Ctrs, Inc. v. Walsh Trucking Co., Inc.*,
    62 B.R. 723 (S.D.N.Y. 1986)....................................................................25

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991)...................................................................................28

*Lewis v. Newman*,
    59 F.R.D. 525 (S.D.N.Y. 1973) ...............................................................15

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ...................................................................24

*McDaniel v. Cty. of Schenectady*,
    595 F.3d 411 (2d Cir. 2010).....................................................................22

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)...................................................................12, 21, 22, 24

*Milstein v. Werner*,
    57 F.R.D. 515 (S.D.N.Y. 1972) ...............................................................17

*Republic Nat'l Life Ins. Co. v. Beasley*,
    73 F.R.D. 658 (S.D.N.Y. 1977) ...............................................................10

*Schimmel v. Goldman*,
　　57 F.R.D. 481 (S.D.N.Y. 1973) ..................................................................10

*Shapiro v. JPMorgan Chase & Co.*,
　　No. 11 Civ. 8331 (CM), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)..........................23

*State of W. Va. v. Chas. Pfizer & Co.*,
　　314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ........................15

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
　　258 F. Supp. 2d 254 (S.D.N.Y. 2003)........................................................9, 10

*Surowitz v. Hilton Hotels Corp.*,
　　383 U.S. 363 (1966)....................................................................................28

*Tandycrafts, Inc. v. Initio Partners*,
　　562 A.2d 1162 (Del. 1989) ..........................................................................22

*Unite Nat'l Ret. Fund v. Watts*,
　　No. 04CV3603DMC, 2005 WL 2877899 (D.N.J. Oct. 28, 2005) ..............................12, 25

*Velez v. Novartis Pharm. Corp.*,
　　No. 04 CIV 09194 CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010)...............14, 27, 28

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
　　396 F.3d 96 (2d Cir. 2005).............................................................................27

*Weinberger v. Kendrick*,
　　698 F.2d 61 (2d. Cir. 1982), *cert. denied*, 464 U.S. 818 (1983)..................................10, 18

*Zapata Corp. v. Maldonado*,
　　430 A.2d 779 (Del. 1981) ............................................................................19

Proposed intervenor Dennis Palkon ("Proposed Intervenor"), by and through his undersigned counsel, in coordination with plaintiffs Ryan Merholz, Melvyn Klein and/or his personal representative or Estate, Nicholas Jimenez, Rodney Nordstrom, Daniel Kooi, City of Pontiac Police and Fire Retirement System, Jesse Rezendes (collectively "Federal Plaintiffs" or "Plaintiffs"), and the Delaware plaintiffs Amer Dastgir, Bernard Leavy, and Robert Lowinger ("Delaware Plaintiffs"), respectfully submits this Motion for Final Approval of Settlement (the "Motion") of the stockholder derivative actions (the "Actions") brought on behalf of nominal defendant Word Wrestling Entertainment, Inc. ("WWE" or the "Company") against certain of its current and former directors and officers (the "Individual Defendants" and, together with WWE, the "Defendants").[1]  All capitalized terms not defined herein shall have the same meaning as set forth in the Stipulation and Agreement of Settlement dated as of September 17, 2021 (the "Stipulation" or "Stip.").[2]

## I.    INTRODUCTION

When a public corporation suffers a significant trauma that could have been prevented but for internal governance failures, a stockholder derivative suit settlement that addresses and corrects the very missteps and reporting flaws that triggered the problem in the first place is fair and reasonable and should be supported and approved.  Achieving those corporate benefits in the face of meaningful hurdles to achieving comparable success through litigation makes the settlement all the more meaningful.

---

[1] Proposed Intervenor, Federal Plaintiffs, and Delaware Plaintiffs shall be collectively referred to as "Stockholders" or "Stockholder Plaintiffs."

[2] The Stipulation is attached as Exhibit A to the Declaration of William H. Narwold in Support of Shareholders' Unopposed Motion for Preliminary Approval of Settlement filed with the Court on September 20, 2021 (ECF No. 108).

This is one such case.  Significant governance lapses at WWE triggered a wide range of investor lawsuits in a multitude of jurisdictions.  Some of those actions were dismissed by this Court, and it was unclear whether any of the actions in any jurisdiction would get the traction to enjoy a different fate.  In came Proposed Intervenor, who filed a strong complaint and strong briefs in support of intervention, defending the claims pleaded therein.  Proposed Intervenor's counsel made clear to Defendants their preparedness to fight the case to trial or longer.  Proposed Intervenor and his counsel then deliberately navigated a complex labyrinth of negotiating with Defendants while getting the whole group of stockholders in all cases to support this resolution.

These Actions allege breaches of fiduciary duty by the Company's controlling stockholder and board of directors (the "Board") regarding: (1) the failure by management to report timely to the Board and thereafter disclose to WWE's public stockholders the termination of one of the Company's material media content and production contracts in the Middle East and North Africa ("MENA") region; and (2) the sale by the controller and other insiders of their personally held WWE stock before the disclosure of the material contract termination.  By the summer of 2020, numerous stockholder derivative suits had been filed.  After receiving an extensive production of corporate books and records following an inspection demand under 8 *Del. C.* §220 ("Section 220"), Proposed Intervenor, having received filed a motion to intervene with a detailed and compelling proposed complaint in intervention in October 2020.

Beginning in January 2021, Proposed Intervenor engaged in potential settlement discussions with Defendants, ultimately culminating in the proposed Settlement described herein.  The proposed Settlement directly addresses the key governance failures at the heart of the Actions.  In particular, the Modified Corporate Governance and Oversight Functions (as detailed in the attachments to the Stipulation and summarized below) ensure that in the future, the Board receives

timely and accurate notification of issues with material contracts, which in turn will ensure appropriate disclosure to the public. In addition, the Company agreed to adopt the Amended and Restated Insider Trading Policy, which sets forth a best-in-class insider trading policy. WWE has agreed to maintain the Modified Corporate Governance and Oversight Functions and Amended and Restated Insider Trading Policy (together, the "Governance Reforms") for a period of at least seven years. Notably, the Company's independent directors, in the good faith exercise of their business judgement, agree that the Governance Reforms confer substantial benefits on WWE and the Settlement is in the best interests of WWE and its stockholders.[3]

Accordingly, Proposed Intervenor and all of the other WWE stockholders who filed actions across various jurisdictions, and who participated in and support the Settlement, respectfully submit that the Settlement is a sound and valuable resolution of this complex derivative litigation and merits final approval in all respects. Further, in light of the valuable governance benefits to WWE through the Settlement and the extensive efforts by counsel in each of the pending actions to be resolved therefrom, Proposed Intervenor seeks approval of an award of attorneys' fees and expenses equal to $3.65 million, which will be paid by the insurers of WWE and the Individual Defendants, and which no party opposes.

## II.     OVERVIEW OF THE LITIGATION

### A.     Factual Summary

Before the Court are stockholder derivative actions brought for the benefit of WWE, against certain of its officers and directors, seeking to remedy alleged claims of breach of fiduciary

---

[3] After the material substantive terms of the Settlement were determined and agreed upon, Stockholders' counsel and counsel for Defendants (including the demand review committee ("DRC")) separately negotiated the attorneys' fees and expenses in the amount of $3.65 million to be paid to Stockholder Plaintiffs' counsel in recognition of the substantial benefits conferred on the Company.

duties, waste of corporate assets, and unjust enrichment, that occurred between February 7, 2019 and February 7, 2020 (the "Relevant Period") and have caused substantial harm to the Company.

The relevant allegations concern the Defendants' internal reporting and public statements about (1) the Company's dealings with Orbit Showcase Network ("OSN"); (2) WWE's attempts to secure a new media distribution rights deal; and (3) the Company's vital business in the MENA region. Specifically, WWE had been party to two critical agreements in the MENA region. The first agreement was a five-year arrangement with OSN, a Kuwaiti-controlled direct-broadcast satellite provider, that gave OSN exclusive rights of WWE's content for its region. The second relevant agreement entered WWE into a ten-year partnership with the Ministry of Sports of Saudi Arabia (a Saudi government body previously known as, and referenced herein, as the "General Sports Authority") to host live events in Saudi Arabia. The OSN deal was set to expire at the end of 2019. These two contracts were at the heart of WWE's publicly announced growth plans.

In November 2018, however, OSN told WWE that their relationship would be terminated, as OSN was closing its sports channels. The Company and OSN thereafter negotiated a separation agreement, which was signed on December 18, 2018, and became effective as of March 31, 2019. While WWE thus lacked a distribution rights agreement for the crucial and growing MENA market, the Company did not publicly disclose such information at this time.

Despite learning of the OSN termination, Defendants allegedly made false and misleading statements (and improperly concealed certain matters) concerning WWE's ability to expand its operations in the MENA region and renew the crucial media rights distribution deal—both of which were necessary for the Company to meet its financial guidance. As the Company disseminated false and misleading statements beginning at the end of November 2018, and throughout 2019 and into 2020, certain of the Individual Defendants, including defendant Vincent

K. McMahon, the Company's cofounder, Chairman, and Chief Executive Officer ("CEO"), sold nearly 4 million shares of his personally held WWE stock.

**B.      Procedural History**

Plaintiffs Merholz, Klein, Kooi, and Nordstrom initiated the Actions starting in April of 2020.  (*Merholz and Klein*, *Kooi*, and *Nordstrom*, ECF Nos. 1, respectively).  Each of these Plaintiffs amended their respective complaints at least once.  (*Merholz and Klein*, ECF Nos. 7 and 39; *Kooi*, ECF No. 36; *Nordstrom*, ECF No. 45).  On August 28, 2020, Defendants moved to dismiss with prejudice Plaintiffs' state and federal claims under Rule 23.1 (demand futility) and Rule 12(b)(6) (failure to state a claim).  (*Merholz and Klein*, ECF No. 57; *Kooi*, ECF No. 67; *Nordstrom*, ECF No. 59).

After reviewing the Company's internal books and records pursuant to Section 220, on October 23, 2020, Proposed Intervenor then filed a motion to intervene and attached a proposed complaint in intervention.

On November 6, 2020, this Court issued its Ruling and Order on the motions to dismiss. (*See Merholz and Klein*, ECF No. 82; *Kooi*, ECF No. 95; *Nordstrom*, ECF No. 87).  This Court granted the Defendants' motions to dismiss all of the claims in each of the *Nordstrom*, *Kooi*, and *Merholz* lawsuits.  In dismissing the actions, the Court held that nothing in the "conclusory allegations in any of the three Complaints suggest[ed] that any of these outside directors 'had actual or constructive knowledge that their conduct was legally improper.'"  *Merholz v. McMahon*, No. 3:20-CV-00557-VAB, 2020 WL 6546007, at *8 (D. Conn. Nov. 6, 2020).[4]

However, "[b]ecause of the pending motion to intervene filed by Intervenor Plaintiff

---

[4] Here, as throughout, all emphasis is added and citations and footnotes are omitted unless otherwise noted.

Dennis Palkon ... the Court [decided to] await resolution of that motion and its underlying claims before deciding whether the dismissal [of the three cases would be] with prejudice," and therefore binding on and preclusive to all WWE stockholders, or whether the dismissal could "be remedied by seeking leave to file an amended pleading." *Id.*at *1, *13. Thereafter, Defendants opposed Proposed Intervenor's motion and Proposed Intervenor filed a reply in support of his motion.

While the motion to intervene remained pending, at least six other WWE stockholders initiated stockholder derivative actions or made formal demands on the Board in this Court and other jurisdictions.[5]

### C.    The Parties' Settlement Negotiations

With the intervention motion fully briefed and a mutual understanding of the arguments for and against the Actions proceeding, Proposed Intervenor and Defendants began settlement negotiations in January 2021. Over time, each of the Plaintiffs agreed to participate in and support the discussions, as Defendants had demanded. After extensive, arm's-length negotiations, the Parties reached an agreement in principle to settle the Claims, which the Parties memorialized in a Settlement Term Sheet executed on August 16, 2021. Among other things, the Settlement Term Sheet set forth the Parties' agreement to resolve the Claims in exchange for the Modified Corporate Governance and Oversight Functions, as now set forth in the Settlement.

---

[5] The following additional derivative actions were filed in, or removed to, the United States District Court for the District of Connecticut: *Merholz, et al. v. McMahon, et al.*, Case No. 3:21-cv-00789-VAB; *Rezendes v. McMahon, et al.*, Case No. 3:21-cv-00793-VAB; and *City of Pontiac Police and Fire Retirement System v. McMahon, et al.*, Case No. 3:21-cv-00930-VAB.

The following additional derivative actions were filed in the Court of Chancery for the State of Delaware: *Dastgir v. McMahon, et al.*, Case No. 2021-0513-LWW; and *Lowinger v. McMahon, et al.*, Case No. 2021-0656-LWW.

- 6 -

In connection with settlement discussions and negotiations leading to the proposed Settlement set forth in this Stipulation, counsel for the Parties did not discuss the amount of any application by Stockholders' counsel for an award of attorneys' fees and expenses until the Parties negotiated at arm's-length and agreed upon the substantive terms of the Settlement. Upon reaching an agreement on the substantive terms of the Settlement, the Parties then negotiated an award of attorneys' fees and expenses in the amount of $3,650,000.

D.   **Recommendation by Independent Directors and Approval of Settlement by WWE**

In response to certain of the Stockholders' demands to initiate litigation on WWE's behalf, the Board of WWE formed the DRC made up of independent, outside directors. After an independent review of the evidence and analysis of the Parties' negotiations, the DRC recommended to WWE's Board that it should approve the proposed Settlement on the terms and conditions set forth in this Stipulation because the Settlement is fair, reasonable, and adequate to WWE and its stockholders. The DRC made its recommendation based on their conclusion that the substantive terms of the Settlement are in the best interests of the Company and its stockholders given the likely costs and rewards of litigation. Acting through its independent directors, WWE then reviewed the allegations and the Settlement terms, and, in a good faith exercise of business judgment, determined that the terms of the Settlement confer substantial benefits on and are in the best interests of WWE and its stockholders.

III.   **THE SETTLEMENT TERMS**

The proposed Settlement is a strong resolution to the Actions, which the Parties reached after extensive, arm's-length negotiations. In consideration for the Settlement and release of all Released Shareholders' Claims against the Released Defendants' Persons, WWE shall implement the Modified Corporate Governance and Oversight Functions as set forth in Exhibit A to the

Stipulation for at least a period of seven years.  The Stockholder Plaintiffs tailored the Modified Corporate Governance and Oversight Functions to address the specific issues raised in the litigation, including the weaknesses that this Court identified when it dismissed the initial actions.

First, these enhancements require WWE management to report immediately to the Board any cancellation or overt threatened breach of any material contract.  Second, these enhancements require the Company's management to provide a report to the Board, on at least a quarterly basis, with the following information: (1) key issues with the performances or potential performances of Material Contracts; (2) any notices of defaults, any payment delays over 30 days, any nonpayment of a Material Contract; and (3) any written requests or agreements to materially modify the payments terms or structure of any Material Contract.

As a result of these reforms, the members of the Board would receive notifications about the issues with the contracts in the MENA region that formed the heart of the Actions.  *See Merholz*, 2020 WL 6546007, at *2-4.  In other words, to the extent the failure to publicly disclose the Company's problems in the MENA region in a timely fashion was due to an internal failure by management to keep the Board apprised, the Settlement cures the precise defect giving rise to the Actions.

In addition, WWE agreed to adopt the "Amended and Restated Insider Trading Policy" (the "Insider Trading Policy").  Again, Stockholder Plaintiffs were able to secure reforms that directly address and attempt to prevent the wrongdoing alleged in these Actions.  Among other things, the Insider Trading Policy prohibits trading by directors, officers, or employees while they are in possession of nonpublic information.  The Insider Trading Policy also prohibits the sharing of such material information, including information about material contracts concerning the television rights to WWE broadcasts.  The Insider Trading Policy requires that the Company's

Chief Legal Officer or Deputy General Counsel pre-clear *each* transaction involving the Company's securities to be executed by any Company director, executive officer, or person who has a title of Executive Vice President or higher.

The Insider Trading Policy explicitly states the compliance officer is "under no obligation to approve a trade or other transaction submitted for pre-clearance and may determine not to permit the trade or other transaction."  This pre-clearance gives the Company an additional level to prevent trading based on insider information, whether done innocently or with malicious purpose. The Insider Trading Policy then builds on these controls by prohibiting trading during "blackout" periods surrounding earnings results and other event specific material events.  The Insider Trading Policy also details the potential penalties for noncompliance, including: (1) termination; (2) disgorgement of profits; and (3) reimbursements for fines, fees, or expenses that the Company incurs as a result of such trading.

The Settlement requires that WWE maintain the Governance Reforms for a period of at least seven years from the date of implementation.

WWE acknowledges that the pendency, prosecution, and settlement of the Actions and the litigation efforts of the Stockholder Plaintiffs and their counsel were the primary factors in the Company's decision to adopt, implement, and maintain the Governance Reforms.  WWE, acting through its independent directors, acknowledges that the Governance Reforms confer a substantial benefit upon the Company.  (*See* Stip. at 7).

## IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL

### A.     Legal Standards Governing Final Approval

Whether to approve a stockholder derivative settlement is in the Court's discretion.  *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003).

"The central question … is whether the compromise is fair, reasonable and adequate." *In re Metro. Life Derivative Litig.*, 935 F. Supp. 286, 291 (S.D.N.Y. 1996) (omission in original) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d. Cir. 1982), *cert. denied*, 464 U.S. 818 (1983)).  Final approval typically is warranted if "the compromise 'fairly and adequately serves the interests of the corporation on whose behalf the derivative action was instituted.'" *In re AOL Time Warner S'holder Derivative Litig.*, No. 02 CIV. 6302(SWK), 2006 WL 2572114, at *2 (S.D.N.Y. Sept. 6, 2006).

Public policy strongly favors settlements of complex litigation, and in particular derivative litigation, because it is "notoriously difficult and unpredictable." *Id.* at *3; *see also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977) (same); *Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y. 1973) (same).

The Court should not try open issues or decide the merits of the case.  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974) (hereinafter, "*Grinnell*"), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) (A "settlement hearing must not be turned into a trial or a rehearsal of the trial").  To the contrary, there is a "strong initial presumption" that a proposed settlement negotiated at arm's-length is fair and reasonable.  *Strougo*, 258 F. Supp. 2d at 257.

As detailed below, the Parties and their experienced counsel negotiated the Settlement in good faith and at arm's-length, and the Settlement will result in material benefits for nominal defendant WWE.  Given the complexities of and challenges to the successful prosecution of the Actions, including that the Court has already dismissed three of the derivative actions once, and the uncertainties inherent in stockholder derivative litigation generally, the proposed Settlement eliminates the risk that WWE might not otherwise obtain any benefit or might obtain a lesser

benefit.  Settlement at this stage in the litigation will also limit the expense of risky and prolonged litigation, which is in the best interests of all of the Parties, most notably the Company.   The adversarial negotiation process and the substantive terms of the Settlement support a finding that it is fair, reasonable, and adequate, as set forth below.  *See* Declaration of Brian J. Robbins in Support of Plaintiffs' Motion for Final Approval of Settlement ("Robbins Decl.") filed concurrently herewith, ¶31.

### B.    Relevant *Grinnell* Factors Demonstrates the Fairness, Reasonableness, and Adequacy of the Settlement

While the Second Circuit's opinion in *Grinnell* sets out the factors the Court should consider in evaluating class action settlements, courts have evaluated derivative settlements under *Grinnell*.  *See AOL*, 2006 WL 2572114, at \*3-6 (applying select *Grinnell* factors to proposed settlement of stockholder derivative action); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (same).   In those instances, the Court considers: (i) the reasonableness of the recovery in light of the risks of establishing liability and damages, and the ability of the defendants to withstand a greater judgment; (ii) the complexity, expense, and likely duration of the litigation; (iii) the stage of the proceedings and discovery; and (iv) the reaction of stockholders to the proposed settlement. *Id*.  These factors weigh in favor of final approval of the Settlement.

### 1.    The Settlement Confers Substantial Benefits on WWE

In determining whether to approve a stockholder derivative settlement, "[t]he principal factor ... is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) (omission in original).  Weighed against the substantial risk that continued litigation would yield no benefit while imposing substantial costs on WWE the recovery here is plainly fair, reasonable, and adequate. *See Grinnell*, 495 F.2d at 462.

"[S]trong corporate governance is fundamental to the economic well-being and success of a corporation"; accordingly, courts have long "recognized that corporate governance reforms such as those achieved here provide valuable benefits [for] public companies." *In re NVIDIA Corp. Derivative Litig*, No. C-06-06110-SBA (JCS), 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2018); *see also Mills v. Elec. Auto-Lite Co*., 396 U.S. 375, 395 (1970) ("[A] corporation may receive a 'substantial benefit' from a derivative suit ... regardless of whether the benefit is pecuniary in nature.").

Courts recognize the value of consideration in the form of corporate governance reforms "specifically designed to minimize the probability of violations of fiduciary duties and federal securities laws[.]" *Cohn v. Nelson*, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005). Among other benefits, such reforms make it "far less likely [that the corporation will] become subject to long and costly securities litigation in the future, as well as prosecution or investigation by regulators or prosecutors." *Id*.; *see also In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 342 (S.D.N.Y. 2011) (approving settlement of stockholder derivative action where the corporate benefits included "a significantly improved institutional structure for detecting and rectifying the types of wrongdoing that have, in recent years, caused extensive harm to the company"); *Unite Nat'l Ret. Fund v. Watts*, No. 04CV3603DMC, 2005 WL 2877899, at *2 (D.N.J. Oct. 28, 2005) (non-monetary benefits support settlement where "the relief is intended to prevent future harm"). The Governance Reforms guaranteed by the Settlement confer this sort of substantial benefit here.

The Settlement provides for, *inter alia*, enhancements to the Board's corporate governance and oversight functions for WWE. These enhancements are targeted directly to the alleged wrongdoing here. For instance, Stockholders secured new reporting requirements that require management to report to the Board concerning the termination or **threatened** termination of

material contracts.  Stip., Ex. A.  In addition, management is required to report at least quarterly on any defaults, delays, non-payments, or requests to modify payment terms of any material contracts.  As the Court noted in its order, one of the key difficulties in the Actions was demonstrating Defendants' knowledge of the termination of the OSN contract.  *See, e.g.*, *Merholz*, 2020 WL 6546007, at *8.  Through the Settlement, Proposed Intervenor has ensured, on a going forward basis, that any such termination will reach the Board immediately and prompt proper responsive action, including disclosure when appropriate.

Proposed Intervenor also drafted and the Company agreed to adopt a substantially overhauled insider trading policy.  The revised Insider Trading Policy enshrines best practices concerning director and officer and employee trading in the Company's stock, including: (a) pre-review by the legal department of 10b5-1 trading plans; (b) a prohibition on short selling by Designated Persons; (c) a prohibition on standing and limit orders by Designated Person, except pursuant to ta 10b5-1 trading plan; and (d) a prohibition on Designated Persons purchasing the Company's securities on margin.  The Insider Trading Policy also sets forth what is material insider information, what it means to trade on insider information, and the prohibitions on sharing such material insider information, in easy to understand language for WWE's employees.  The Company is further required to provide the insider trading policy to all directors, officers, and employees, who are then required to certify in writing that they have read and understand the policy.

Taken together, the Governance Reforms will (1) substantially enhance WWE's internal controls and Board oversight; (2) help ensure timely and accurate public statements and legal compliance moving forward; and (3) help prevent a recurrence of the type of alleged failures at issue in this case.  The Settlement is an excellent resolution for WWE and its stockholders, and the Settlement positions the Company to reap the long-term benefits of strong corporate

- 13 -

governance enhancements that will protect and prevent the Company from the type of harm alleged in this case in the future.  WWE and the Individual Defendants acknowledge and agree that the Governance Reforms confer substantial benefits upon WWE and its stockholders.  Stip. at 7.

Showing an exceptional commitment to allowing the benefits of the Settlement become engrained in the Company's culture, WWE has agreed to maintain all of these governance measures for a minimum of seven years—a substantial amount of time intended to ensure the Governance Reforms become embedded in the Company's policies, practices, and corporate culture, thus protecting against discontinuation of these Governance Reforms following the seven-year period.  Stip., Ex. A; *see also*, *e.g.*, *Cohn*, 375 F. Supp. 2d at 850 (corporate governance measures in place for no less than three years will "provide meaningful ways of avoiding the problems [the company] experienced in the recent past").

## 2.    Continued Litigation Would Be Risky, Costly, and Time-Consuming

The Settlement guarantees the foregoing substantial benefits, and avoids the uncertainty, risks, costs, and delays in attempting to improve upon the result through further litigation.  *See Velez v. Novartis Pharm. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852, at *14 (S.D.N.Y. Nov. 30, 2010) ("As federal courts in this Circuit have consistently recognized, litigation inherently involves risks, and the purpose of settlement is to avoid uncertainty.").  Unless a proposed settlement is clearly inadequate, final approval is preferable to the pursuit of complex, costly, time-consuming litigation with uncertain results.  *See Grinnell*, 495 F.2d at 455 ("The proposed settlement cannot be judged without reference to the strength of plaintiffs' claims.  'The most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'"); *Metro. Life*, 935 F. Supp. at 294 ("In view of the effort and expense that would be required to take this case to and through trial, settlement would undoubtedly

be in the best interest of all the parties and the policyholders."); *State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("no matter how confident one may be of the outcome of [the] litigation, such confidence is often misplaced").

These concerns are particularly significant in complex stockholder derivative litigation. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("the odds of winning [a] derivative lawsuit [a]re extremely small"); *AOL*, 2006 WL 2572114, at *3 ("'[B]ecause shareholder derivative actions are 'notoriously difficult and unpredictable, ... settlements are favored.'"") (omission in original); *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973) (same); *Cohn*, 375 F. Supp. 2d at 852 (same). This action is particularly risky, as the Court has already dismissed three of the Actions once. *Merholz*, 2020 WL 6546007, at *13.

While Plaintiffs believe that the claims alleged in the Actions are meritorious, continued litigation of the Actions would be complex, costly, and of substantial duration, and significant risks would remain. Robbins Decl., ¶32. Specifically, Proposed Intervenor would need to be permitted to intervene. Defendants vigorously opposed this intervention, arguing that the intervention was futile because Proposed Intervenor's complaint failed to cure the deficiencies in certain of the Plaintiffs' complaints. They also argued that the Proposed Intervenor's complaint failed to state a viable claim against the Individual Defendants. Proposed Intervenor would have to convince the Court that the internal documents he was able to secure from the Company demonstrated that demand was indeed futile on the Board. If successful on the intervention motion, Defendants would likely move to dismiss again.

The Stockholders that made litigation demands also faced a daunting task. They would need to argue that their demands were wrongfully rejected, even though the Board formed the DRC, which was advised by its own independent counsel.

If Proposed Intervenor or the Stockholders overcame those hurdles, litigation would still be extremely complex, costly, and of substantial duration.  Besides complex document and deposition discovery (which may have required taking international discovery), the expert discovery process would be particularly arduous.  Also, hanging over every derivative action is the possibility that the Board could form a special litigation committee ("SLC") made up of truly independent directors, and that such SLC usually vote to dismiss litigation.

The Defendants' expected motions for summary judgment would have to be briefed and argued and a trial would have to be held.  Even if liability was established, the amount of recoverable damages would still have posed significant issues—including the fact that, here, the money used to settle the related Securities Class Action was paid by WWE's insurers, not the Company itself—and would have been subject to further litigation.[6]  *See In re Lloyd's Am. Tr. Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 WL 31663577, at *21 (S.D.N.Y. Nov. 26, 2002) ("The determination of damages ... is a complicated and uncertain process, typically involving conflicting expert opinions.").  Moreover, a victory at trial is no guarantee that the judgment would ultimately be sustained on appeal or by the trial court.  *See, e.g.*, *In re Apollo Grp., Inc. Sec. Litig.*, No. CV04-2147-PHX-JAT, 2008 WL 3072731, at *6 (D. Ariz. Aug. 4, 2008), *rev'd & remanded*, No. 08-6971, 2010 WL 5927988 (9th Cir. June 23, 2010) (holding evidence insufficient to support jury verdict for stockholders of $277 million).

The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several more years of litigation, while providing the Company and

---

[6] *City of Warren Police and Fire Retirement System v. World Wrestling Entertainment, Inc., et al.*, Case No. 1:20-cv-02031-JSR (S.D.N.Y.) (the "Securities Class Action").

its stockholders substantial benefits. *Metro. Life*, 935 F. Supp. at 294 (unless proposed settlement clearly inadequate, approval preferable to lengthy and expensive litigation with uncertain results).

An evaluation of the benefits of settlement must be tempered by the recognition that any compromise involves concessions by all settling Parties. Indeed, "inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y. 1972). As described in section III *supra*, the Settlement provides substantial benefits to WWE and its stockholders directed at the very wrongdoing challenged in this litigation, including the failure to disclose information to the public, adequately informing the Board of material events, and insider trading by company fiduciaries, while also eliminating numerous risks, costs, and burdens of litigation for all concerned, including the Company. Robbins Decl., ¶32. Balanced against the delays, costs, and particularly the risks of attempting to secure additional benefits through further litigation and trial, the substantial benefits of the Settlement warrant final approval. *See Pfizer Inc.*, 780 F. Supp. 2d at 340.

### 3.    The Reaction of Stockholders Further Supports Settlement Approval

The "reaction of the class to the settlement" can support approval. *Grinnell*, 495 F.2d at 463. Notice was disseminated to WWE stockholders in strict accordance with the procedures set out in the Preliminary Approval Order. The Notice informed WWE stockholders that the deadline to object to the proposed Settlement is December 1, 2021. To date, counsel has not heard from any stockholders indicating that they are not satisfied with the Settlement. Robbins Decl., ¶44. This is significant, especially considering that WWE is owned by thousands of stockholders, including a number of sophisticated institutions (*e.g.*, BlackRock, Inc., The Vanguard Group, Inc., and Pzena Investment Management, Inc.). *See In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 156 (S.D.N.Y. 2013) (stockholder reaction supported settlement where "not one of the objections

or requests for exclusion was submitted by an institutional investor"); *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) ("small number of objections … strongly favor[s] the Settlement" where "not a single institutional Class Member objected to the Settlement").

### C.  That the Settlement Is the Product of Arm's-Length Negotiations by Experienced and Well-Informed Counsel Also Supports Approval

Courts considering a settlement also consider whether the settlement was reached through good faith bargaining at arm's-length without collusion. *Weinberger*, 698 F.2d at 74. Here, the Settlement was negotiated between and among experienced and sophisticated counsel and provides substantial benefits to the Company while eliminating the expense, risk, and delay inherent in such complex litigation, including the very real risk of no recovery. As the court observed in *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015), an "initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations.…" *Id.*; *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) ("a strong presumption of fairness" attaches to settlements negotiated at arm's-length by experienced counsel).[7] "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Clark v. Ecolab Inc.*, No. 04CIV.4488PAC, 2010 WL 1948198, at *4 (S.D.N.Y. May

---

[7] *See also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ("'[G]reat weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts."); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato* (same); *Metro. Life*, 935 F. Supp. at 294 (same); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 369 (S.D.N.Y. 2005) (same).

11, 2010) (alterations in original); *In re Advanced Battery Techs., Inc. Secs. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) (same).

The presumption of fairness applies here because the Settlement is the product of extensive arm's-length negotiations by well-informed, skilled, and experienced counsel.  Robbins Decl., ¶32.  ***First***, Proposed Intervenor and his counsel acted on an informed basis in negotiating the Settlement.  *Id.*, ¶¶34-35.  Proposed Intervenor's counsel conducted an extensive investigation relating to the claims and the underlying events alleged in the Actions, including analyzing nonpublic documents produced to Proposed Intervenor by WWE in response to his Section 220 demand that went directly to the alleged wrongdoing and the Company's internal controls.  *Id.*, ¶35.  Accordingly, Proposed Intervenor's counsel has unique insight into the legal and factual issues presented here, the strengths and weaknesses of the case, the challenges to establishing and recovering damages, and the benefits conferred in the form of the corporate governance and internal control reforms.  *Id.*, ¶36; *see In re NeuStar, Inc. Sec. Litig.*, No. 1:14cv885 (JCC/TRJ), 2015 WL 8484438, at *4 (E.D. Va. Dec. 8, 2015) (where, as here, Plaintiffs' counsel are "nationally recognized members of the securities litigation bar," the Court "may pay heed to [Plaintiffs'] Counsel's judgment in approving, negotiating, and entering into a putative settlement").

***Second***, exercise of independent business judgment by directors is traditionally afforded significant deference by courts.  *See Zapata Corp. v. Maldonado*, 430 A.2d 779, 782 (Del. 1981); *Brooks v. Am. Exp. Indus., Inc.*, No 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313, at *10 (S.D.N.Y. Feb. 17, 1977) ("The Court is of the view that in this case, the decision of the AEI board to approve this settlement is appropriately afforded certain deference; it is a business judgment with presumptive validity.").  Here, the WWE Board, including each of its independent, non-defendant directors, agrees that the Settlement is fair, reasonable, and adequate, and confers substantial

benefits upon WWE and its stockholders and has approved the Settlement and each of the Settlement terms as being in the best interests of WWE and its stockholders. Stip., ¶¶P-Q; Robbins Decl., ¶37.  In addition, the DRC, consisting of independent, outside directors, has also recommended the approval of the Settlement as fair, reasonable, and adequate to WWE.

Significant weight also should be attributed to the belief of experienced counsel that settlement is in the best interest of those affected by the settlement.  *Elan*, 385 F. Supp. 2d at 369 (finding a presumption of fairness where "the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation") (quoting *Austrian*, 80 F. Supp. 2d at 173-74).  Here, Proposed Intervenor's counsel have vast experience in stockholder derivative litigation.  *See* Robbins Decl., Ex. A; *id.*, Ex B at Ex. A; *id.*, Ex. C at Ex. A; *id.*, Ex. D at Ex. A; *id.*, Ex. E at Ex. A; *id.*, Ex. F at Ex. A; *id.*, Ex. G at Ex. A; *id.*, Ex. H at Ex. A; *id.*, Ex. I at Ex. A; *id.*, Ex. J at Ex. A; *id.*, Ex. K at Ex. A; *id.*, Ex. L at Ex. A; *id.*, Ex. M at Ex. A.  Defendants, in turn, were vigorously represented by Paul, Weiss, Rifkind, Wharton & Garrison LLP, and the DRC had its own independent counsel, Simpson Thacher & Bartlett LLP, two of the world's preeminent corporate defense firms.

While Proposed Intervenor believes the claims asserted in the Actions are important and meritorious, all of the Plaintiffs recognize and acknowledge the significant risk, expense, and length of continued proceedings necessary to prosecute the Actions through trial and appeal.  Stip., ¶S; Robbins Decl., ¶32.  Proposed Intervenor and Proposed Intervenor's counsel are also mindful of the inherent problems of proving the violations asserted in the Actions.

In particular, the claim against the Board (rather ironically) suffers from the depth of the governance flaw that created the problem in the first place:  as the Court inferred in the original dismissal Order, the Board would have a strong argument that it really was not aware of the

termination of the MENA contracts in a timely manner.  While discovery efforts to prove recklessness or knowledge would be contested, the Settlement cures the problem at its root— improving reporting of material events to the Board.

Similarly, while the amount of alleged inside trading by certain senior executives was significant, linking the decision to sell to specific negative and undisclosed news about the MENA region problems would be a tremendous hurdle.  And, proving the damages or appropriate remedy for such "voided losses" would raise complexities and almost inevitably require a trial several years in the future.

In all events, after weighing the risks of continued litigation, Proposed Intervenor and Proposed Intervenor's counsel determined that it is in the best interests of WWE and its stockholders that the Actions be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation, which confer substantial benefits upon WWE and WWE stockholders.  Stip., ¶S;Robbins Decl., ¶36.

In sum, Proposed Intervenor, by and through Proposed Intervenor's counsel, and the Defendants, by and through their counsel, and exercising their business judgment and mindful of their duties to stockholders, have independently considered the Settlement and all agree that it is in the best interest of WWE and its stockholders.  Stip., ¶¶S-T; Robbins Decl., ¶37.  This weighs in favor of final approval of the Settlement.

## V.    THE NEGOTIATED FEE AND EXPENSE AWARD IS REASONABLE

Pursuant to the "substantial benefit" doctrine, counsel who prosecute a stockholder derivative action that generates substantial benefits for the corporation are entitled to an award of reasonable attorneys' fees and expenses commensurate with the benefits' value and the risks of proceeding on a contingency basis.  *See Mills*, 396 U.S. at 394-96.  "[A] corporation may receive

a 'substantial benefit' from a [stockholder's action], justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature....  [P]rivate stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders[.]" *Id*. at 396; *see also In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1445-50 (N.D. Cal. 1994) (changes in governance or operating procedures likely to produce monetary benefits or cost avoidance are "fund creating actions" meriting award of attorneys' fees and expenses) (quoting *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164-65 (Del. 1989)).

As a result of Plaintiffs' counsel's efforts, WWE will enjoy long-term benefits flowing from the Governance Reforms secured by the Settlement.   Robbins Decl., ¶46.   The Governance Reforms will help to prevent a recurrence of similar wrongdoing in the future, improve the Company's internal controls, and lay the foundation for restoring investor confidence. *See* section III *supra*.   The Fee and Expense Award of $3,650,000, which resulted from arm's-length negotiations after the substantive terms of the Settlement were set and in which WWE (or its insurers) had every incentive to push for the smallest fee, is fair and reasonable in relation to the range of value of the Governance Reforms, and the complexity of the matter, the litigation risks, and the time and expenses Plaintiffs' counsel devoted on a fully contingent basis. Robbins Decl., ¶46.

### A.    Legal Standards Governing Attorneys' Fees and Expenses

In fashioning fee awards, courts in this Circuit consider: (i) the value of the benefit or recovery in relation to the amount of the fee; (ii) the magnitude and complexity of the litigation; (iii) the litigation risk (*i.e.*, the contingent nature of the fee); (iv) the quality of representation; (v) public policy considerations; and (vi) time and expenses incurred. *Goldberger*, 209 F.3d at 50; *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 423 (2d Cir. 2010).

Where the parties reach agreement on the award through arm's-length negotiations conducted after the material substantive terms of the settlement have been agreed upon, the Court should give "substantial weight" to the negotiated fee amount. *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001). *See Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666, at *25 (S.D.N.Y. Mar. 24, 2014) ("That the Attorneys' Fee Payment was later separately negotiated weighs in favor of its reasonableness."); *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (fact that requested fee was product of negotiations supports approval). Indeed, the United States Supreme Court has endorsed the determination of attorneys' fees through agreement as the ideal to which litigants should strive. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally ... litigants will settle the amount of a fee.").

The Parties' agreement and the Board's approval of the Fee and Expense Award merit substantial deference. WWE and its insurers are by all counts sophisticated parties with every incentive to negotiate the lowest reasonable fee for the services rendered by Plaintiffs' counsel. They were represented in the fee negotiations by skilled and experienced counsel. The negotiations were conducted at arm's-length after the material substantive terms of the Settlement had been determined. Robbins Decl., ¶48. Unlike in class actions, where the diverging interests of class counsel and absent class members at the fee stage warrant close judicial scrutiny, in this stockholder derivative matter, WWE participated in the negotiations, was represented by counsel, and had every incentive to negotiate the lowest reasonable fee for the services rendered by Plaintiffs' counsel. *Id*. Accordingly, the Parties' conclusion that the agreed Fee and Expense Award is fair and reasonable is entitled to substantial deference.

**B.**    **The *Goldberger* Factors Confirm the Reasonableness of the Negotiated Fee and Expense Award**

**1.**    **The Fee and Expense Award Is Reasonable in Light of the Benefits Conferred**

Counsel responsible for a corporation's decision to adopt corporate governance enhancements that address the deficiencies alleged to have permitted the wrongdoing and designed to prevent recurrence of the same or similar wrongdoing are entitled to a fee award reflecting the significant economic value conferred.  *See Mills*, 396 U.S. at 396 ("'corporate therapeutics' … furnish a benefit to all shareholders" warranting fee award); *Maher v. Zapata Corp.*, 714 F.2d 436, 461 & n.43 (5th Cir. 1983) (improvements in "the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor.…  The evaluation of such an economic impact is necessarily judgmental and imprecise and normally does not lend itself to meaningful quantification," but that does not "obviate[] the desirability of an express range of recovery analysis" for purposes of awarding fees); *Oracle*, 852 F. Supp. at 1445-50 (similar).

As discussed in detail in section III *supra*, the Settlement directly addresses the alleged wrongdoing, targeting areas that are at the heart of Plaintiffs' claims: ensuring timely and accurate public disclosures and an adequate system of disclosure, reporting, compliance, and other internal controls.  The Governance Reforms will not only help prevent the future occurrence of the alleged wrongdoing, they will improve the Company's policies and procedures for ensuring the accuracy of the Company's public disclosures and legal compliance and will help restore investor confidence.  Robbins Decl., ¶51.  The cumulative value of the Governance Reforms easily justifies the negotiated Fee and Expense Award.  *See, e.g.*, *In re Schering-Plough Corp. S'holders Derivative Litig.*, No. 01-1412, 2008 WL 185809, at *1, *5 (D.N.J. Jan. 14, 2008) (awarding $9.5 million fee based on benefits conferred by governance reforms) ("The adoption of the corporate

governance and compliance mechanisms required by the settlement can prevent breakdowns in oversight that would otherwise subject the company to the risk of regulatory action, or uncover and remedy a problem at the early stages before it becomes the subject of a government investigation.  Effective corporate governance can also affect stock price by bolstering investor confidence and improving consumer perceptions."); *Unite Nat'l*, 2005 WL 2877899, at *5 (awarding $9.2 million fee for governance reforms) ("[T]he great benefit conferred … as a result of the new corporate governance principles provided for in the settlement agreement … will serve to prevent and protect [the company] from the reoccurrence of certain alleged wrongdoings.").

2. **The Skill Demonstrated by Plaintiffs' Counsel Supports the Agreed Fee and Expense Award**

Courts reward counsel who bring complex matters to a successful resolution while also serving the interests of efficiency and judicial economy.  *See, e.g.*, *In re Ashanti Goldfields Sec. Litig.*, No. CV-00-717 (DGT), 2005 WL 3050284, at *4 (E.D.N.Y. Nov. 15, 2005) ("The 'quality of representation' factor is designed to reward 'particularly resourceful' legal work that 'secures a substantial benefit … with a minimum of time invested.'") (omission in original); *Int'l Distrib. Ctrs, Inc. v. Walsh Trucking Co., Inc.*, 62 B.R. 723, 737 (S.D.N.Y. 1986) (same).  "The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *Grinnell*, 495 F.2d at 471 (same).  As discussed, this was a complex matter, involving many difficult factual and legal issues.  Plaintiffs' counsel demonstrated significant skill in negotiating a strong package of valuable corporate therapeutics despite the real challenges facing Plaintiffs' ability to recover anything for the Company in this derivative litigation, all while avoiding any unnecessary expenditure of resources by WWE, the real party in interests in this litigation.

Defendants were well-represented by pre-eminent corporate defense firms, whose lawyers zealously defended their clients' interests.  Robbins Decl., ¶52.

### 3.     The Contingency Risk Borne by Plaintiffs' Counsel Supports the Agreed Fee and Expense Award

The Fee and Expense Award is particularly reasonable in light of Plaintiffs' counsel's risk of non-payment.  *See Goldberger*, 209 F.3d at 54 (risk of non-payment important factor in determining attorneys' fees); *Grinnell*, 495 F.2d at 471 ("Perhaps the foremost of [the less objective] factors is the attorney's 'risk of litigation,' *i.e.*, the fact that, despite the most vigorous and competent of efforts, success is never guaranteed.").  Had Plaintiffs' counsel failed to secure a substantial benefit for WWE, they would have recovered nothing for their time and expenses invested in this complex and risky litigation.  Robbins Decl., ¶53.  As discussed, Plaintiffs' counsel faced tremendous litigation risks in pursuing the Actions.  *Id.*  These risks and the benefits secured for the Company and its stockholders fully justify the approval of the Fee and Expense Award.  *See, e.g.*, *Cohn*, 375 F. Supp. 2d at 865-66 ("[I]t is imperative that the filing of contingent class action and derivative lawsuits not be chilled by the failure to award attorneys' fees or by the imposition of fee awards that fail to adequately compensate counsel for the risks of pursuing such litigation.…  [B]ecause of the complexity and societal importance of stockholder and derivative litigation, the most able counsel should be obtained.  The attorneys' fees awarded should reflect this goal.") (citing *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985)).

### 4.     The Time and Expense Devoted to the Litigation Supports the Agreed Fee and Expense Award

Plaintiffs' counsel devoted a total of 3,171.50 hours to the litigation.  Robbins Decl., ¶¶54-61.  This time was spent on tasks that led directly to the recovery, including: (i) analyzing the Company's filings with the SEC; (ii) analyzing, news reports and other information concerning the underlying matters alleged in the complaint; (iii) analyzing the pleadings and other papers filed in

the Securities Class Action, including the court's order on the motion to dismiss in that case; (iv) researching the applicable law with respect with the claims asserted in the Actions and the potential defenses thereto; (v) analyzing nonpublic documents produced to certain Stockholders by WWE in response to their Section 220 demands that went directly to the alleged wrongdoing and the Company's internal controls; and (vi) researching the Company's corporate governance structures and developing and negotiating the governance and oversight reform package.  Robbins Decl., ¶54.

Plaintiffs' counsel incurred $29,727.82 in expenses performing these tasks. *Id.*, ¶58.  These expenses were necessary to effectively prosecute and resolve the case on favorable terms, would have been billed in non-contingency matters, and are properly reimbursed. *Id.*; *see Novartis Pharm.*, 2010 WL 4877852, at *24 ("'It is well-established that counsel who create a common fund … are entitled to the reimbursement of [all reasonable] litigation costs and expenses.'") (omission and alteration in original).

A lodestar cross-check is unnecessary because the agreed Fee and Expense Award would not confer a windfall. *Goldberger*, 209 F.3d at 48-50.  Regardless, a cross-check further confirms the reasonableness of the agreed fee amount.  Plaintiffs' counsel report a total lodestar of $2,142,302.16.  Robbins Decl., ¶61.  The negotiated $3.65 million Fee and Expense Award represents a lodestar multiplier of 1.72—well below the range deemed reasonable in this type of litigation. *See Wal-Mart Stores, Inc.  v. Visa U.S.A. Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (affirming multiplier of 3.5); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-cv-00738-RNC, 2014 WL 3778211, at *7 (D. Conn. July 31, 2014) ("Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825 (NGG)(RER), 2010 WL 2653354, at *5 (E.D.N.Y. June 24,

2010) (awarding fee representing 2.78 multiplier) (counsel who litigate "complex case under a contingency fee arrangement … are entitled to a fee in excess of the lodestar"); *Novartis Pharm.*, 2010 WL 4877852, at *23 (awarding multiplier of 2.4, which "falls well within (indeed, at the lower end) of the range of multipliers accepted within the Second Circuit") (collecting cases approving multipliers from 2.09 to 5.5); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354 (S.D.N.Y. 2005) (awarding multiplier of 4); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding 3.97 multiplier and noting multipliers between 3 and 4.5 are common); *Lloyd's Am. Tr.*, 2002 WL 31663577, at *27 ("multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit").

### 5.    Public Policy Supports the Agreed Fee and Expense Award

Derivative actions play an important role in "protect[ing] the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'"  *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991); *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371 (1966) (derivative suits play "important role in protecting shareholders of corporations from the designing schemes and wiles of insiders"); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548 (1949) (derivative action is "the chief regulator of corporate management … without it there would be little practical check on [management] abuses").  This would not be possible absent appropriate fee incentives to attract skilled and experienced counsel.  *See In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302 (CM), 2010 WL 363113, at *23 (S.D.N.Y. Feb. 1, 2010) (fee award should incentivize "future counsel to devise remedies as an alternative to money, strengthening corporate America in the long run through innovation and prophylaxis").

## VI.    CONCLUSION

The Settlement is fair, reasonable, and adequate and should be approved in all respects.

Dated: November 17, 2021

**ROBBINS LLP**

/s/ *Brian J. Robbins*
Brian J. Robbins (CT 417036)
Gregory E. Del Gaizo
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsllp.com
      gdelgaizo@robbinsllp.com

**MOTLEY RICE LLC**
William H. Narwold (CT 00133)
One Corporate Center
Hartford, CT 06103
Telephone: (860) 882-1681
Facsimile: (860) 882-1682
E-mail: bnarwold@motleyrice.com

**BERNSTEIN LITOWITZ BERGER**
**  & GROSSMANN LLP**
Mark Lebovitch
Daniel Meyer
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1519
Facsimile: (212) 554-1444
E-mail: markl@blbglaw.com
      daniel.meyer@blbglaw.com

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Dr., Ste. 300
Berwyn, PA 19312
Telephone (484) 324-6800
Facsimile: (484) 631-1305
E-mail: rmaniskas@rmclasslaw.com

*Counsel for Proposed Intervenor Dennis*
*Palkon*

**GAINEY McKENNA & EGLESTON**
Gregory M. Egleston (CT 19709)
Thomas J. McKenna
501 Fifth Avenue, 19th Floor

New York, NY 10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
E-mail: gegleston@gme-law.com
      tjmckenna@gme-law.com

*Counsel for plaintiffs Ryan Merholz, Melvyn Klein, Nicholas Jimenez, Rodney Nordstrom, and City of Pontiac Police and Fire Retirement System*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Travis E. Downs III
Benny C. Goodman III
Erik W. Luedeke
655 West Broadway,
Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
Facsimile: 619/231-7423
E-mail: travisd@rgrdlaw.com
      bennyg@rgrdlaw.com
      eluedeke@rgrdlaw.com

*Additional Counsel for plaintiff City of Pontiac Police and Fire Retirement System*

**AETON LAW PARTNERS LLP**
Jonathan M. Shapiro ct24075
101 Centerpoint Road, Suite 105
Middletown, CT 06475
Telephone: (860) 724-2160
Facsimile: (860) 724-2161
JURIS # 433168
E-mail: jms@aetonlaw.com

**THE WEISER LAW FIRM, P.C.**
Robert B. Weiser
James M. Ficaro
22 Cassatt Avenue
Berwyn, PA 19312
Telephone: (610) 225-2677
E-mail: rw@weiserlawfirm.com
      jmf@weiserlawfirm.com

*Counsel for plaintiff Daniel Kooi*

**MOORE KUEHN, PLLC**
Fletcher W. Moore
Justin A. Kuehn (*pro hac vice*)
30 Wall Street, 8th Floor
New York, NY 10005
Telephone:(212) 709-8245
E-mail: fmoore@moorekuehn.com

*Counsel for plaintiff Rodney Nordstrom*

**LEVI & KORSINSKY, LLP**
Gregory M. Potrepka (CT30056)
1111 Summer Street
Stamford, CT 06905
Telephone: (203) 992-4523
Facsimile: (212) 363-7171
E-mail: gpotrepka@zlk.com

**LEVI & KORSINSKY, LLP**
Gregory M. Nespole
Daniel Tepper
Ryan Messina
55 Broadway, 10th Floor
New York, NY 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
E-mail: gnespole@zlk.com
        dtepper@zlk.com
        rmessina@zlk.com

*Counsel for plaintiff Jesse Rezendes*

**DELEEUW LAW LLC**
P. Bradford deLeeuw
1301 Walnut Green Road
Wilmington, DE 19807
Telephone: (302) 274-2180
E-mail: brad@deleeuwlaw.com

*Counsel for joinder, in part, Bernard Leavy*

**SCHUBERT JONCKHEER**
  **& KOLBE LLP**
Robert C. Schubert

Dustin L. Schubert
Three Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (415) 788-4220

*Of Counsel for joinder, in part, Bernard Leavy*

**RIGRODSKY LAW, P.A.**
Seth D. Rigrodsky
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310

*Counsel for joinder, in part, Amer Dastgir*

**ABRAHAM, FRUCHTER & TWERSKY LLP**
Jeffrey S. Abraham
Michael J. Klein
450 Seventh Avenue, 38th Floor
New York, NY 10123
Telephone: (212) 279-5050
E-mail: JAbraham@aftlaw.com
        MKlein@aftlaw.com

*Counsel for joinder, in part, Robert Lowinger*

1547942

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 17, 2021, a copy of foregoing Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Settlement was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

**ROBBINS LLP**

/s/ *Brian J. Robbins*
Brian J. Robbins (CT 417036)
040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsllp.com