## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| RYAN MERHOLZ and MELVYN KLEIN, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC., | Case No.: 3:20-cv-00557-VAB |
| Plaintiffs, | |
| v. | |
| VINCENT K. MCMAHON, STEPHANIE MCMAHON, PAUL LEVESQUE, FRANK A. RIDDICK, III, STUART U. GOLDFARB, LAUREEN ONG, ROBYN W. PETERSON, MAN JIT SINGH, JEFFREY R. SPEED, ALAN M. WEXLER, GEORGE A. BARRIOS, and MICHELLE D. WILSON, | |
| Defendants, | |
| - and- | |
| WORLD WRESTLING ENTERTAINMENT, INC., | |
| Nominal Defendant. | |
| DANIEL KOOI, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC., | Case No.: 3:20-cv-00743-VAB |
| Plaintiff, | |
| v. | |
| VINCENT K. MCMAHON, FRANK A. RIDDICK, III, JEFFREY R. SPEED, PATRICIA A. GOTTESMAN, STUART U. GOLDFARB, LAUREEN ONG, PAUL LEVESQUE, ROBYN W. PETERSON, STEPHANIE MCMAHON, MAN JIT SINGH, ALAN M. WEXLER, GEORGE A. | |

[Caption Continued on Next Page]

BARRIOS, and MICHELLE D. WILSON,

                       Defendants,

     -and-

WORLD WRESTLING ENTERTAINMENT, INC.,

                       Nominal Defendant.

---

RODNEY NORDSTROM, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC.,

                       Plaintiff,

     v.

VINCENT K. MCMAHON, GEORGE A. BARRIOS, MICHELLE D. WILSON, STEPHANIE MCMAHON, PAUL LEVESQUE, FRANK A. RIDDICK III, STUART U. GOLDFARB, LAUREEN ONG, ROBYN W. PETERSON, MAN JIT SINGH, JEFFREY R. SPEED, ALAN M. WEXLER, and PATRICIA A. GOTTESMAN,

                       Defendants,

     -and-

WORLD WRESTLING ENTERTAINMENT, INC.,

                       Nominal Defendant.

Case No. 3:20-cv-00904-VAB

[Caption Continued on Next Page]

| | |
|---|---|
| RYAN B. MERHOLZ and NICHOLAS JIMENEZ, Derivatively on behalf Of WORLD WRESTLING ENTERTAINMENT, INC., | Case No. 3:21-cv-00789-VAB |

<div style="padding-left: 2em;">Plaintiffs,</div>

<div style="padding-left: 2em;">v.</div>

VINCENT K. MCMAHON, STEPHANIE MCMAHON, PAUL LEVESQUE, FRANK A. RIDDICK, III, STUART U. GOLDFARB, LAUREEN ONG, ROBYN W. PETERSON, MAN JIT SINGH, JEFFREY R. SPEED, ALAN M. WEXLER, GEORGE A. BARRIOS, and MICHELLE D. WILSON,

<div style="padding-left: 2em;">Defendants,</div>

<div style="padding-left: 2em;">-and-</div>

WORLD WRESTLING ENTERTAINMENT, INC.,

<div style="padding-left: 2em;">Nominal Defendant.</div>

| | |
|---|---|
| JESSE REZENDES, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC., | Case No. 3:21-cv-00793-VAB |

<div style="padding-left: 2em;">Plaintiff,</div>

<div style="padding-left: 2em;">v.</div>

VINCENT K. MCMAHON, GEORGE A. BARRIOS, and MICHELLE D. WILSON,

<div style="padding-left: 2em;">Defendants,</div>

<div style="padding-left: 2em;">-and-</div>

WORLD WRESTLING ENTERTAINMENT, INC.,

<div style="padding-left: 2em;">Nominal Defendant.</div>

[Caption Continued on Next Page]

| | |
|---|---|
| CITY OF PONTIAC POLICE AND FIRE RETIREMENT SYSTEM, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC., | Case No. 3:21-cv-00930-VAB |
| Plaintiff, | |
| v. | |
| VINCENT K. MCMAHON, GEORGE A. BARRIOS, and MICHELLE D. WILSON, | |
| Defendants, | |
| -and- | |
| WORLD WRESTLING ENTERTAINMENT, INC., | |
| Nominal Defendant. | |

## ORDER AND FINAL JUDGMENT APPROVING
## SETTLEMENT OF DERIVATIVE ACTIONS

The stockholder derivative actions captioned *Merholz, et al. v. McMahon, et al.*, Case No. 3:20-cv-00557-VAB, *Kooi v. McMahon, et al.*, Case No. 3:20-cv-00743-VAB, *Nordstrom v. McMahon, et al.*, Case No. 3:20-cv-00904-VAB, *Merholz, et al. v. McMahon, et al.*,Case No. 3:21-cv-00789-VAB, *Rezendes v. McMahon, et al.*, Case No. 3:21-cv-00793-VAB, and *City of Pontiac Police and Fire Retirement System v. McMahon, et al.*, Case No. 3:21-cv-00930-VAB (the "Federal Actions")[1] are pending in this Court. Stockholder derivative and books-and-record actions captioned *Leavy v. World Wrestling Entertainment, Inc.*, Case No. 2020-0907-KSJM, *Dastgir v. McMahon, et al.*, Case No. 2021-0513-LWW, and *Lowinger v. McMahon, et al.*, Case No. 2021-0656-LWW (the "Delaware Actions" and, together with the Federal Actions, the

---

[1] Unless otherwise defined in this Judgment, the capitalized terms herein shall have the same meaning as they have in the Stipulation.

"Actions"), are also pending in the Court of Chancery of the State of Delaware (the "Delaware Court").

Plaintiffs in the Federal Actions and Delaware Actions: Ryan Merholz, Melvyn Klein and/or his personal representative or Estate, Nicholas Jimenez, Rodney Nordstrom,Daniel Kooi, City of Pontiac Police and Fire Retirement System ("Pontiac Police & Fire"), Jesse Rezendes, Amer Dastgir, Bernard Leavy (who filed a books-and-records action), Robert Lowinger,and Proposed Intervenor Dennis Palkon (collectively, "Shareholders"), on behalf of nominal defendant World Wrestling Entertainment, Inc. ("WWE" or the "Company"); defendants in the Federal Actions and Delaware Actions: Vincent K. McMahon, Stephanie McMahon, Paul Levesque, Frank A. Riddick, III, Stuart U. Goldfarb, Laureen Ong, Robyn W. Peterson, Man Jit Singh, Jeffrey R. Speed, Alan M. Wexler, George A. Barrios, Michelle D. Wilson, Patricia A. Gottesman, and nominal defendant WWE (collectively, "Defendants"); and the demand review committee (the "DRC") established by the independent members of WWE's board of directors (the "Board") to review the pre-suit litigation demands submitted to the Board by Robert Lowinger, Rodney Nordstrom, Ryan Merholz, Nicholas Jimenez, Jesse Rezendes, and Pontiac Police & Fire (the "Litigation Demands") (Shareholders, Defendants, and the DRC, collectively, the "Parties"), have determined to settle the Federal Actions, the Delaware Actions, and the Litigation Demands (collectively, the "Claims") on the terms and conditions set forth in the Stipulation and Agreement of Settlement dated September 17, 2021 (the "Stipulation"), subject to approval of this Court (the "Settlement"). Pls.' Notice of Mot. and Mot. for Final Approval of Settlement, ECF No. 111 (Nov. 17, 2021).

The proposed Settlement includes WWE implementing Modified Corporate Governance and Oversight Functions, that address the specific issues raised in the litigation, for a period of

at least seven years. Mem. of Law in Support of Pls.' Mot. for Final Approval of Settlement at 7-8, ECF No. 111-1 (Nov. 17, 2021) ("Pls.' Mem."). In addition, under the proposed Settlement, WWE agrees to adopt the Amended and Restated Insider Trading Policy ("Insider Trading Policy"), which, among other things, prohibits trading by directors, officers, or employees while they are in possession of nonpublic information and also prohibits the sharing of such material. *Id*. at 8. The Insider Trading Policy sets out preclearance requirements for transactions involving WWE's securities by any person with a title of Executive Vice President or higher and also details penalties for noncompliance. *Id*. at 8-9. The Settlement likewise requires WWE to maintain the Insider Trading Policy for a period of at least seven years from the date of implementation. *Id*. at 9.

Shareholders additionally seek approval of an award of attorneys' fees and expenses equal to $3.65 million, which will be paid by the insurers of WWE and the Individual Defendants, and which no party opposes. Pls.' Mem. at 13.

Upon reviewing the Stipulation, all papers filed and proceedings held herein in connection with the Settlement, all oral and written comments received regarding the Settlement, and the record in the Federal Actions, and after conducting a fairness hearing on December 22, 2021, the Court **GRANTS** Plaintiffs' motion, and the Court **FINDS**, **CONCLUDES**, and **ORDERS** as follows.

## I.       BACKGROUND

Shareholders brought these Actions for the benefit of WWE, against certain of its officers and directors, alleging claims of breach of fiduciary duties, waste of corporate assets, and unjust enrichment between February 7, 2019 and February 7, 2020. *See* Pls. Mem. at 4.

The allegations concern Defendants' internal reporting and public statements about "(1)

the Company's dealings with Orbit Showcase Network ("OSN"); (2) WWE's attempts to secure a new media distribution rights deal; and (3) the Company's vital business in the [Middle East and North Africa ("MENA")] region." *Id*. According to Shareholders, Defendants learned that WWE would lose its relationship with OSN, which was one of WWE's "critical agreements in the MENA region," and yet Defendants "allegedly made false and misleading statements (and improperly concealed certain matters) concerning WWE's ability to expand" *Id*. Additionally, as these statements were made, "certain of the Individual Defendants, including defendant Vincent K. McMahon, the Company's cofounder, Chairman, and Chief Executive Officer [ ], sold nearly 4 million shares of his personally held WWE stock." *Id*. at 4-5.

On October 20, 2021, the Court: (i) preliminarily approved the proposed Settlement, as embodied in the Stipulation, subject to further consideration at the Settlement Hearing to be conducted before the Court; (ii) ordered that notice of the proposed Settlement be provided to holders of WWE common stock as of the date of entry of the Preliminary Approval Order ("Current WWE Shareholders"); (iii) provided Current WWE Shareholders with the opportunity to object to the proposed Settlement and Shareholders' Counsel's application for an award of attorneys' fees and litigation expenses; and (iv) scheduled a hearing regarding final approval of the Settlement.

Due and adequate notice has been given to Current WWE Shareholders.  Pls.' Notice of Non-Objection in Supp. of Mot. for Final Approval of Settlement at 1-2, ECF No. 113 (Dec. 8, 2021).

On December 22, 2021, the Court conducted a hearing (the "Settlement Hearing), to consider, among other things: (i) whether the terms and conditions of the Settlement are fair, reasonable, and adequate to the WWE and its shareholders, and should therefore be finally

approved by the Court; (ii) whether a judgment should be entered dismissing the Federal Actions with prejudice; and (iii) whether the application by Shareholders' Counsel for an award of attorneys' fees and litigation expenses should be approved.

This Judgment incorporates and makes a part hereof: (a) the Stipulation filed with the Court on September 20, 2021; and (b) the Notice and Summary Notice, which were filed with the Court on September 20, 2021.

## II.     STANDARD OF REVIEW

"Before approving the settlement of a derivative action, the Court must be satisfied that the compromise 'fairly, and adequately serves the interests of the corporation on whose behalf the derivative action was instituted.'" *Mathes v. Roberts*, 85 F.R.D. 710, 713 (S.D.N.Y. 1980) (quoting *Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977)); *see also In re Metropolitan Life Derivative Litigation*, 935 F. Supp. 286, 292 (S.D.N.Y. July 16, 1996) [hereinafter *Metro. Life*] ("'The central question [in deciding whether to approve the proposed settlement] is whether the compromise is fair, reasonable, and adequate.'" (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982)). In deciding whether or not the compromise is fair, reasonable, and adequate, the Court must consider both "the substantive terms of the settlement" and whether "the negotiating process by which the settlement was reached" shows that "the compromise [is] the result of arm's-length negotiations." *Weinberger*, 698 F.2d at 74.

Specifically, the Court must consider a subsection of the factors set forth in *Detroit v. Grinnell Corp* 495 F.2d 448, 463 (2d Cir. 1974). These factors are: "(a) the benefits achieved by the [p]roposed Settlement; (b) the likelihood of success if the case were to be litigated; (c) the potential recovery; (d) the likely duration and cost of continued litigation; (e) the quality of the negotiating process and the views of counsel; and (f) the objections." *Metro. Life*, 935 F. Supp.

at 292; *see also In re AOL Time Warner S'holder Derivative Litig.*, No. 02 CIV 6302 (SWK),
2006 WL 2572114, at *2 (S.D.N.Y. Sept. 6, 2006) (also considering a subset of *Grinnell* factors
to determine the fairness, reasonableness, and adequacy of a proposed settlement in a
shareholder derivative litigation).

      With respect to attorney's fees awards, courts in the Second Circuit use one of two
different methods to analyze their reasonableness. *Goldberger v. Integrated Res.*, 209 F.3d 43,
50 (2d Cir. 2000) ("In sum, we hold that both the lodestar and the percentage of the fund
methods are available to district judges in calculating attorneys' fees in common fund cases.");
*see also McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) ("[I]t remains the
law in this Circuit that courts may award attorneys' fees in common fund cases under either the
'lodestar' method or the 'percentage of the fund' method.") (internal quotation marks omitted).
The Second Circuit has also recognized the use of the lodestar "as a baseline even if the
percentage method is eventually chosen" and "encourage[d] the practice of requiring
documentation of hours as a 'cross check' on the reasonableness of the requested percentage."
*Goldberger*, 209 F.3d at 50 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods.
Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995)); *see also In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) ("The lodestar cross-check works best as a sanity
check to ensure that an otherwise reasonable percentage fee would not lead to a windfall.").
"Irrespective of which method is used, the '*Goldberger* factors' ultimately determine the
reasonableness" of an attorney's fee award in a class action settlement. *Wal-Mart Stores, Inc. v.
Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). The six factors include: "(1) the time and
labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of
the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the

settlement; and (6) public policy considerations." *Id.* (citing *Goldberger*, 209 F.3d at 50).

## III.    DISCUSSION

The Court begins by noting that it has jurisdiction over the subject matter of the

Federal Actions, and all matters relating to the Settlement, as well as personal jurisdiction over

the Parties and all WWE shareholders. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v.*

*Manning*, 578 U.S. 374, 380 (2016) ("Like the Third Circuit, we read § 27 as conferring

exclusive federal jurisdiction of the same suits as "aris[e] under" the Exchange Act pursuant to

the general federal question statute." (citing 28 U.S.C. § 1331)); *In re Bristol-Myers Squibb*

*Derivative Litigation*, No. 02 Civ. 8571(LAP), 2007 WL 959081, at *6 (S.D.N.Y. Mar. 30, 2007)

("[D]efendant [ ] is subject to personal jurisdiction in this District based on its substantial

operations within this District."); *Messinger v. United Canso Oil and Gas Ltd.*, 80 F.R.D. 730,

734 (D. Conn. 1978) ("Unlike the truly adverse claims stated against 'real' defendants . . . the

naming of the derivative corporation as a party defendant raises no potentially harmful

consequences for the corporation, because plaintiff is acting solely for the corporation's benefit.

Due process is therefore satisfied so long as the corporation has notice of the suit.").

The Court also finds that the form and manner of providing the Notice:  (i) was

implemented in accordance with the Preliminary Approval Order; (ii) constituted notice that

was reasonably calculated, under the circumstances, to apprise Current WWE Shareholders of

the pendency of the Claims, of the effect of the proposed Settlement (including the Releases to

be provided thereunder), of Shareholders' Counsel's motion for an award of attorneys' fees and

litigation expenses, of their right to object to the Settlement and/or Shareholders' Counsel's

motion for attorneys' fees and litigation expenses, and of their right to appear at the Settlement

Hearing; (iii) constituted due, adequate, and sufficient notice to all persons and entities entitled

to receive notice of the proposed Settlement; and (iv) satisfied the requirements of Rule 23.1 of

the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process

Clause), and all other applicable law and rules. *See Papilsky v. Berndt*, 466 F.2d 251, 257 (2d

Cir. 1972) ("In general, notice of a proposed dismissal of a derivative suit must be given to

nonparty stockholders when the corporate claim had not been adjudicated upon the merits.");

*Milliken on behalf of Hospitality Investors Trust, Inc. v. American Realty Capital Hospitality*

*Advisors, LLC*, No. 18-cv-1757 (VEC), 2020 WL 3402816, at *3 (S.D.N.Y. 2020) (finding that

proper notice of the settlement was provided to stockholders where notice was similar to the

notice provided in the instant case); *Bernstein v. Mediobanca Banca di Credito Finanziario-*

*Societa Per Azioni*, 78 F.R.D. 1, 3 (S.D.N.Y. 1978) ("Rule 23.1 provides that the notice of

settlement shall be given in such manner as the court directs.").

## A.  Final Approval of the Terms of the Settlement

Under,  and  in accordance with, Rule 23.1 of the Federal Rules of Civil Procedure, this

Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects

(including, without limitation: the Settlement consideration, the Releases provided for therein,

and the dismissal withprejudice of the claims asserted in the Federal Actions), and finds that the

Settlement is, in all respects, fair, reasonable, and adequate to WWE and its shareholders.

The Court concludes that the balance of the *Grinnell* factors set forth in *Detroit v.*

*Grinnell Corp*, and considered by other courts in this Circuit in similar stockholder derivative

actions, weigh in favor of approving the Settlement Agreement. *Grinnell*, 495 F.2d at 463;

*Metro. Life*, 935 F. Supp. at 292; *see also In re AOL Time Warner S'holder Derivative Litig.*,

2006 WL 2572114, at *2.

### 1.  Benefits Achieved by the Proposed Settlement

The first factor, which requires the Court to consider the benefits achieved by the proposed settlement considering the risks of litigation, weighs in favor of approval in light of the corporate governance reforms that will be implemented while simultaneously avoiding the costs of protracted litigation. *See Metro. Life*, 935 F. Supp. at 292 ("Likewise, the other improvements in MetLife's sales compliance practices, some already adopted, will surely help prevent recurrence of the sales practices that led to the regulatory actions and ultimately this lawsuit."); *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 342 (S.D.N.Y. 2011) (approving settlement of stockholder derivative action where the corporate benefits included "a significantly improved institutional structure for detecting and rectifying the types of wrongdoing that have, in recent years, caused extensive harm to the company").

### 2.  Likelihood of Success

"One of the Court's central inquiries when appraising a settlement is the likelihood that the class would prevail at trial in the face of the risks presented by further litigation." *In re AOL Time Warner*, No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006). In determining the risks of establishing liability and damages, courts need not "adjudicate the disputed issues or decide unsettled questions; rather, [courts] need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y 2004) (citing *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000)).

The complexities and challenges of the litigation weigh in favor of approving settlement. "Litigation inherently involves risk." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y.), *aff'd*., 117 F.3d 721 (2d Cir. 1997) (per curiam); *see also Velez v. Novartis*

*Pharm. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852, at *14 (S.D.N.Y. Nov. 30, 2010) ("As federal courts in this Circuit have consistently recognized, litigation inherently involves risks, and the purpose of settlement is to avoid uncertainty."). The Court also notes that it has already dismissed three of the derivative actions.

### 3.  Potential Recovery

The Court concludes that this factor "standing alone, does not suggest that the settlement is unfair," especially where the "other *Grinnell* factors weigh heavily in favor of settlement[.]" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001). Therefore, given the application of the other *Grinnell* factors in this case, the Court need not determine whether Defendants could have withstood a larger judgment, and may still approve the settlement agreement. *Accord Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-cv-1113 (VAB), 2016 WL 6542707, at *10 (D. Conn. Nov. 3, 2016) ("Thus, even if the Defendants here could afford to pay more than the $107 million Settlement Amount, this does not prevent the Court from approving this Settlement as fair and reasonable.").

### 4.  Likely Duration and Cost of Continued Litigation

The Court finds that litigation would be complex, expensive, and extensive because the parties would still have to litigate intervention, tentative motions to dismiss, tentative summary judgment motions, and the merits of the case, at trial and potentially on appeal. *See Metro. Life*, 935 F. Supp. at 294 ("In view of the effort and expense that would be required to take this case to and through trial, settlement would undoubtedly be in the best interest of all the parties and policyholders."); *Velez*, 2010 WL 4877852, at *14 ("As federal courts in this Circuit have consistently recognized, litigation inherently involves risks, and the purpose of settlement is to avoid uncertainty."). The outcome of litigation would be uncertain. *In re PaineWebber Ltd.*

*P'ships Litig.*, 171 F.R.D. at 126 ("Litigation inherently involves risk.").

### 5.  Quality of the Negotiating Process

"A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Visa U.S.A.*, 396 F.3d at 116 (quoting MANUAL FOR COMPLEX LITIGATION, THIRD § 30.42 (1995)). The Court is satisfied that the proposed Settlement is the product of arm's-length negotiation and therefore concludes that the presumption of fairness applies. This factor therefore weighs in favor of approval.

### 6.  Objections

As to the final *Grinnell* factor considered in shareholder derivative actions, the Court finds it notable that no WWE stockholder voiced disapproval in response to the Notice disseminated in accordance with the procedures set out in the Preliminary Approval Order. Pls.' Notice of Non-Objection in Supp. of Mot. for Final Approval of Settlement at 1-2, ECF No. 113 (Dec. 8, 2021).

Accordingly, the *Grinnell* factors weigh in favor of approval of this Settlement.

## B.  Attorneys' Fees and Costs

The factors for determining the fairness and reasonableness of an attorney's fee award are: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Visa U.S.A., Inc.*, 396 F.3d at 121 (citing *Goldberger*, 209 F.3d at 50).

The Court finds that the first four factors weigh in favor of awarding the requested attorneys' fees and litigation expenses for the reasons discussed above and in the

Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Settlement. Pls.' Mem. at 24-28. As to the fifth factor, the Court finds that the requested amount does not confer on the attorneys an "unwarranted windfall." *Goldberger*, 209 F.3d at 49 ("The express goal of the *Grinnell* opinions was to prevent unwarranted windfalls for attorneys.").

In any event, the Court has reviewed the lodestar crosscheck of the fees and expenses award requested. *Id*. at 50 ("Indeed, we encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995)); *see also Colgate-Palmolive*, 36 F. Supp. 3d at 353 ("The lodestar cross-check works best as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall."). Having reviewed the lodestar crosscheck calculation, the Court concludes that a 1.72 lodestar multiplier is reasonable. *See Visa U.S.A. Inc.*, 396 F.3d at 123 (affirming a multiplier of 3.5); *Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-cv-00738-RNC, 2014 WL 3778211, at *7 (D. Conn. July 31, 2014) (collecting cases that have approved awards with a lodestar multiplier of up to eight times the lodestar).

The Court also finds that public policy favors this award because it will continue to incentivize shareholder derivative actions that "protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'" *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (quoting *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541 (1949)); *see also In re Fab Universal Corp. S'holder Derivative Litig.*, 148 F. Supp. 3d at 284 (holding that an "[a]ward of attorney's fees in excess of a 1.0 lodestar multiplier incentivizes counsel to take [shareholder derivative] matters on contingency, further promoting compliance with commercial law by increasing the likelihood of enforcement"); *In re AOL Time Warner*

*S'holder Derivative Litig.*, No. 02 Civ. 6302(CM), 2010 WL 363113, at *23 (S.D.N.Y. Feb. 1, 2010) (fee awards incentivize "future counsel to devise remedies as an alternative to money, strengthening corporate America in the long run through innovation and prophylaxis").

Accordingly, Shareholders' Counsel are hereby awarded attorneys' fees and litigation expenses in the total amount of $3,650,000 (the "Fee and Expense Award"), a fair and reasonable sum after considering the factors outlined in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). WWE shall cause its insurers to pay the full amount of the Fee and Expense Award in accordance with the terms of the Stipulation.

No proceedings or court order with respect to the award of attorneys' fees and litigation expenses to Shareholders' Counsel, shall in any way disturb or affect this Judgment (including precluding this Judgment from being Final or otherwise being entitled to preclusive effect), and any such proceedings or court order shall be considered separate from this Judgment.

## IV.     CONCLUSION

Accordingly, the Parties are directed to implement, perform, and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation. The terms of the Stipulation and of this Judgment shall be forever binding on the Parties and WWE shareholders, as well as their respective successors and assigns.

The Federal Actions are hereby dismissed with prejudice. The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

The Releases set forth in paragraphs 4 and 5 of the Stipulation, together with the definitions contained in paragraph 1 of the Stipulation relating thereto, are expressly incorporated herein in all respects. The Releases are effective as of the Effective Date. Accordingly, this Court orders that:

(i)     Without further action by anyone, upon the Effective Date of the Settlement, Shareholders on behalf of themselves and, by operation of law, representatively on behalf of WWE and all of its shareholders in their capacity as shareholders (together with Shareholders, "Shareholders' Releasors") shall release, and Shareholders' Releasors shall forever be barred and enjoined from prosecuting, any and all Released Shareholders' Claims against the Released Defendants' Persons.

(ii)    Without further action by anyone, upon the Effective Date of the Settlement, Defendants and the DRC, on behalf of themselves and, by operation of law, representatively on behalf of the other Released Defendants' Persons (together with Defendants and the DRC, "Defendants' Releasors") shall release, and Defendants' Releasors shall forever be barred and enjoined from prosecuting, any and all Released Defendants' Claims against the Released Shareholders' Persons.

Notwithstanding the above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Judgment. The  Court also finds  and  concludes  that  the  Shareholders, Defendants, and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Actions.

Neither this Judgment, the Term Sheet, the Stipulation (whether or not consummated), including the exhibits thereto, the negotiations leading to the execution of the Term Sheet and the Stipulation, nor any proceedings taken pursuant to or in connection with this Judgment, the Term Sheet, the Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith):

(iii)     shall be offered against any of the Released Defendants' Persons as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Defendants' Persons with respect to the truth of any fact alleged by Shareholders or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in the Claims or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Released Defendants' Persons or in any way referred to for any other reason as against any of the Released Defendants' Persons, in any civil, criminal, or administrative action or proceeding, other than suchproceedings as may be necessary to effectuate the Settlement; or

(iv)     shall be offered against any of the Released Shareholders' Persons as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Shareholders' Persons that any of their claims are without merit, that any of the Released Defendants' Persons had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement consideration or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Released Shareholders' Persons, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the Settlement; *provided, however*, that the Parties, the Released Persons, and their respective counsel may refer to this Judgment and the Stipulation to effectuate the protections from liability granted under this Judgment and the Stipulation or otherwise to enforce the terms of the Settlement.

Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over the Parties and WWE shareholders for purposes of the

administration, interpretation, implementation, and enforcement of the Settlement.

Without further approval from the Court, the Parties are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (i) are not materially inconsistent with this Judgment; and (ii) do not materially limit the rights of WWE or its shareholders in connection with the Settlement. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any provisions of the Settlement.

If the Settlement is terminated as provided in the Stipulation, this Judgment shall be vacated and rendered null and void, and shall be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of the Parties or WWE shareholders, and Shareholders, Defendants, and the DRC shall revert to their respective positions in the Claims as of immediately prior to the execution of the Term Sheet on August 16, 2021, as provided in the Stipulation.

The Clerk of Court is respectfully directed to enter judgment, consistent with this Ruling and Order, and to close this case.

SO ORDERED at Bridgeport, Connecticut, this 23rd day of December, 2021.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE